EXHIBIT 1



(http://eepurl.com/CVHYP)
Sign up today to receive FREE daily patent litigation alerts!                                                    ×

NETWORK
EDGE (/EDGE)
BRANDS (HTTPS://WWW.UNIFIEDBRANDS.US)
CONSULTING (HTTPS://WWW.UNIFIED-CONSULTING.COM)
ALIUM (HTTPS://WWW.ALIUM-LLC.COM)
PATENTS (HTTPS://WWW.UNIFIEDPATENTS.COM)
PORTAL (HTTPS://PORTAL.UNIFIEDPATENTS.COM)
PATROLL (HTTPS://PATROLL.UNIFIEDPATENTS.COM/)
ZONES
NPE (/NPE)
SEP (/SEP)
ANALYTICS
OPAL - LANDSCAPE (HTTPS://PORTAL.UNIFIEDPATENTS.COM/STANDARDS/OPAL/HEVC)
OPEN - STANDARDS SUBMISSIONS (HTTPS://PORTAL.UNIFIEDPATENTS.COM/STANDARDS/OPEN/HEVC)
ISIX - BEST LAW FIRMS (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PTAB/ANALYTICS/CASE-LEVEL/ISIX?SORT=-FILING_DATE)
PVIX - PATENT VALUE (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PATENTS/PORTFOLIO)
DATA
UP DAILY (/DOCKET)
PTAB (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PTAB/CASELIST?SORT=-FILING_DATE)
LITIGATION (HTTPS://PORTAL.UNIFIEDPATENTS.COM/LITIGATION/CASELIST)
EXAMINER (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PATENTS/EXAMINER)
PATENTS (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PATENTS/SEARCH)
REEXAM (HTTPS://PORTAL.UNIFIEDPATENTS.COM/EXPARTE/SEARCH?REQUESTER=UNIFIED%20PATENTS%
20LLC&REQUESTER=UNIFIED%20PATENTS%2C%20LLC)
NEWS
NEWS & VIEWS (/INSIGHTS)
RPI (/RPI)
OPEN COVID PLEDGE (/OPEN-COVID-PLEDGE)
INSIGHTS WEBINAR (/INSIGHTS-WEBINAR)
ABOUT
FAQ (/FAQ)
SUCCESS (/SUCCESS)
EVENTS (/EVENTS)
OFFICES (/OFFICES)
MEMBERS (/MEMBERS)
TEAM (/TEAM)
JOBS (/JOBS)

JOIN (/JOIN)

March 19, 2021 (/insights/2021/3/18/a-year-of-wsou-craig-etchegoyens-post-uniloc-npe-
files-nearly-200-cases)

# A Year of WSOU: Craig Etchegoyen's Post-Uniloc NPE Files Nearly 200 Cases (/insights/2021/3/18/a-year-of-wsou-craig-etchegoyens-post-uniloc-npe-files-nearly-200-cases)

Search

Archive                    ∨

March 2022
(/insights?month=03-
2022)
February 2022
(/insights?month=02-
2022)
January 2022
(/insights?month=01-
2022)
December 2021
(/insights?month=12-
2021)

SFDC01017944

For most U.S. businesses, the pandemic forced temporary (and sometimes permanent) closures, bankruptcies, and credit crunches. Many were forced to adapt to working remotely, deal with border closures and shortages, or address outbreaks. But for at least one kind of entity, 2020 was a banner year. Patent Assertion Entities (PAEs), entities that exist to acquire and enforce patent assets, filed upwards of 3,744 (https://www.unifiedpatents.com/insights/2020-patent-dispute-report-year-in-review) suits, up more than 12% over 2019 (https://www.unifiedpatents.com/insights/2020-patent-dispute-report-year-in-review)—the vast majority of patent cases filed.  For patent lawyers, at least, business has been booming.

One particularly prolific NPE filed almost 200 suits since March 2020 (https://portal.unifiedpatents.com/litigation/caselist?filed_date=2020-03-01--2021-03-18&plaintiff=Wsou+Investments%2C+LLC+Dba+Brazos+Licensing+And+Development&plaintiff=Wsou+Investments%2C+LLC&plaintiff=Wsou+Investments%2C+LLC+Aka+Brazos+Licensing+And+Development&sort=-filed_date), representing 1 out of every 20 district court cases nationwide: WSOU Investments LLC, d/b/a Brazos Licensing (https://www.brazoslicensing.com) (i.e., "we-sue"). WSOU is a new kind of patent troll in terms of scale—but it's one built on an old file-and-settle model and run by the now-infamous Craig Etchegoyen (https://www.linkedin.com/in/craig-etchegoyen-aa8a07199/) (the guy behind the litigious NPE Uniloc), he's gone from 600 patents being asserted through Uniloc (https://portal.unifiedpatents.com/litigation/caselist?plaintiff=Uniloc&plaintiff=Uniloc+USA%2C+Inc.&plaintiff=Uniloc+Luxembourg+Sa&plaintiff=Uniloc+2017+LLC&plaintiff=Uniloc+Licensing+USA%2C+LLC&plaintiff=Uniloc+Singapore+Private%2C+Ltd.&plaintiff=Uniloc+2017&sort=-filed_date) to a web of over 15,000 Nokia and Alcatel-Lucent patents and applications from over 4,500 patent families. Most of the patents in the portfolio (and most of the patents asserted) relate to telecommunications and digital data processing and transmission, although they cover a range of fields, including wireless networks, video games, and image processing and communication. Over 5,000 of these patents are US Patents (https://portal.unifiedpatents.com/patents/search?assignee_current=Wsou+Investments+LLC):



Patents by Country

November 2021 (/insights?month=11-2021)
October 2O21 (/insights?month=10-2021)
September 2021 (/insights?month=09-2021)
August 2021 (/insights?month=08-2021)
July 2021 (/insights?month=07-2021)
June 2021 (/insights?month=06-2021)
May 2021 (/insights?month=05-2021)
April 2021 (/insights?month=04-2021)
March 2021 (/insights?month=03-2021)
February 2021 (/insights?month=02-2021)
January 2021 (/insights?month=01-2021)
December 2020 (/insights?month=12-2020)
November 2020 (/insights?month=11-2020)
October 2020 (/insights?month=10-2020)
September 2020 (/insights?month=09-2020)
August 2020 (/insights?month=08-2020)
July 2020 (/insights?month=07-2020)
June 2020 (/insights?month=06-2020)
May 2020 (/insights?month=05-2020)
April 2020 (/insights?month=04-2020)
March 2020 (/insights?month=03-2020)
February 2020 (/insights?month=02-2020)

SFDC01017945

WSOU takes a "darken-the-skies" approach to litigation that forces operating companies to either settle or fight, on average, eight lawsuits at once. One defendant, Huawei (https://www.huawei.com/us/), has the unrelished honor of finding itself defending against 20 of these patents in dozens of suits, with Google (https://www.google.com) close behind at 15.



Rather than assert a few related patents against similar accused products or make any attempt to consolidate or streamline matters for the courts, WSOU instead clogs them, running up court costs and concerns with multiple single-patent cases against a wide variety of different accused products, relying on patents from different families for each defendant. Indeed, when accounting for transfers, 98% of the patents asserted come from unique families.

WSOU appears to be picking defendants off in a way that prevents any sort of joint defense, common interest, or other means of defending themselves, and then seeking to license the whole shebang seriatim, keeping all discussions separate and isolated. To wit, WSOU has not asserted the same patent twice against different defendants.

It isn't hard to see WSOU's play here. By filing individual suits involving different patents, WSOU makes it expensive to perform prior art searches and develop non-infringement and invalidity contentions for each case. Accounting for refilings and transfers (which are often involuntary), WSOU has filed over 90% of its cases in the Western District of Texas (https://portal.unifiedpatents.com/litigation/caselist?court=Texas+Western+District+Court&plaintiff=WSOU&sort=-filed_date), a known hotbed for PAEs ever since a particular Waco judge has created a reputation of hoarding patent cases with promises of fast resolution, even despite repeated admonitions (http://www.cafc.uscourts.gov/sites/default/files/opinions-orders/20-135.ORDER.11-9-2020_1682410.pdf) from the Federal Circuit (http://www.cafc.uscourts.gov/sites/default/files/opinions-orders/21-118.ORDER.3-8-2021_1744827.pdf).



January 2020 (/insights?month=01-2020)
December 2019 (/insights?month=12-2019)
November 2019 (/insights?month=11-2019)
October 2019 (/insights?month=10-2019)
September 2019 (/insights?month=09-2019)
August 2019 (/insights?month=08-2019)
July 2019 (/insights?month=07-2019)
June 2019 (/insights?month=06-2019)
May 2019 (/insights?month=05-2019)
April 2019 (/insights?month=04-2019)
March 2019 (/insights?month=03-2019)
February 2019 (/insights?month=02-2019)
January 2019 (/insights?month=01-2019)
December 2018 (/insights?month=12-2018)
November 2018 (/insights?month=11-2018)
October 2018 (/insights?month=10-2018)
September 2018 (/insights?month=09-2018)
August 2018 (/insights?month=08-2018)
July 2018 (/insights?month=07-2018)
June 2018 (/insights?month=06-2018)
May 2018 (/insights?month=05-2018)
April 2018 (/insights?month=04-2018)
March 2018 (/insights?month=03-2018)

SFDC01017946



February 2018 (/insights?month=02-2018)

January 2018 (/insights?month=01-2018)

December 2017 (/insights?month=12-2017)

November 2017 (/insights?month=11-2017)

October 2017 (/insights?month=10-2017)

September 2017 (/insights?month=09-2017)

August 2017 (/insights?month=08-2017)

July 2017 (/insights?month=07-2017)

June 2017 (/insights?month=06-2017)

May 2017 (/insights?month=05-2017)

April 2017 (/insights?month=04-2017)

March 2017 (/insights?month=03-2017)

February 2017 (/insights?month=02-2017)

January 2017 (/insights?month=01-2017)

December 2016 (/insights?month=12-2016)

November 2016 (/insights?month=11-2016)

October 2016 (/insights?month=10-2016)

September 2016 (/insights?month=09-2016)

August 2016 (/insights?month=08-2016)

July 2016 (/insights?month=07-2016)

June 2016 (/insights?month=06-2016)

May 2016 (/insights?month=05-2016)

By litigating in well-known "rocket dockets" where it can, WSOU makes it difficult for defendants to meet the statutory requirements for filing IPRs, and filing all of those IPRs would not only be expensive (the filing fees alone, not including the cost of attorneys and experts, would cost about $250,000 for the average campaign per defendant, assuming one IPR per patent), but also somewhat superfluous when the presiding judge over almost all of the cases has a avowed policy of refusing to stay (https://www.patentprogress.org/2021/03/15/one-case-all-the-problems-vlsi-v-intel-exemplifies-current-issues-in-patent-litigation/) a case unless the defendant somehow manages to petition for *inter partes* review before they are even sued.

While the effectiveness of this boil-the-ocean approach is questionable, it certainly was foreseeable. With a one-year statutory bar to file any kind of expensive defensive challenge (a year being pretty generous under *Apple v. Fintiv* (https://www.unifiedpatents.com/insights/2020-ptab-discretionary-denials-report)), and no obligation for patent owners to forewarn defendants about their patent portfolios, a patent owner would almost be foolish *not* to quietly build up a line of cases to spring on defendants all at once, and use the filing as a sort of ransoming starting point for negotiations once companies are staring down the barrel of millions of dollars in court costs. When the cost of defense can be upwards of $4,000,000 (https://www.aipla.org/detail/news/2019/09/12/the-2019-report-of-the-economic-survey-is-here!) over three years, while it's still hard to comprehend, defendants can at least budget ahead for the defense.  When the cost is multiplied by a dozen and sprung upon you on questionable patents, it can be a little harder to justify defending oneself.

Theoretically, this strategy should also be relatively expensive for a plaintiff. But WSOU has this down to a science. Using a firm that does work almost exclusively for Uniloc and WSOU, his hope is that the high costs of defense force defendants to surrender to settlement early.  This is particularly true given WSOU's relationship with RPX (https://www.rpxcorp.com/). For an additional subscription, RPX (https://www.rpxcorp.com/) (it appears) offers settlements for WSOU's entire portfolio, creating a cycle of monetization that is antithetical to patent assertion deterrence.

WSOU is managed by Craig Etchegoyen (https://www.linkedin.com/in/craig-etchegoyen-aa8a07199/), surfing-prodigy (https://www.latimes.com/archives/la-xpm-1989-07-20-sp-5262-story.html)-turned-PAE-manager. Etchegoyen is the former CEO of Uniloc (http://www.uniloc.com/), another prolific PAE. In December 2020, it was discovered that based on a contract clause that gave a litigation financier a right to take ownership of patents if certain revenue targets were not met, Uniloc did not have standing to assert its patents (https://casetext.com/case/uniloc-usa-inc-v-apple-inc-10). WSOU may be subject to similar contract clauses, and discovery into ownership and chain of title is already in process. A defendant would be wise to pore through assignment and financing agreements to catch any chink in the chain of ownership—the assignment frames on record with the USPTO (https://assignment.uspto.gov/patent/index.html#/patent/search/result?id=WSOU&type=patAssigneeName) do not, for instance, show a clear (https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=6721554&type=patNum) chain of title (https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=8958358&type=patNum) for many

SFDC01017947

(https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?
id=6763068&type=patNum) of the WSOU patents. Rumor has it that he tried and failed
to find a buyer for the portfolio, bringing unreasonable demands to the table. It's likely
that his current demands are equally unreasonable, but he's leveraging the cost of
litigation as far as it can be leveraged in an attempt to avoid any sort of honest look at
the value of his portfolio.

It is too early to tell if WSOU's strategy will pan out, but most defendants have not yet
taken advantage of the *inter partes* review process, presumably because the costs
there would extend into the millions just to file, and with the substantial uncertainty
surrounding Fintiv and other USPTO flexes of discretion, it's unclear if even meritorious
challenges will be given the time of day. Of the 140+ patents asserted, so far just 12
PTAB challenges have been filed (https://portal.unifiedpatents.com/ptab/caselist?
patent_owners=WSOU&patent_owners=Wsou+Investments%2C+LLC+D%2Fb%
2Fa+Brazos+Licensing+And+Development&patent_owners=Wsou+Investments%
2C+LLC&sort=-filing_date), including one IPR by Unified Patents
(https://portal.unifiedpatents.com/ptab/case/IPR2021-00378) against a video codec
patent. Unified (http://www.unifiedpatents.com) has also posted a number of PATROLL
(https://patroll.unifiedpatents.com/contests) contests (US8209411
(https://patroll.unifiedpatents.com/contests/sGbFPwTZRxLdHmQnk), US7409715
(https://patroll.unifiedpatents.com/contests/YTKC6tWGkRRnJckc9)) and continues to
monitor WSOU's monetization activities.

Tagged: WSOU (/insights?tag=WSOU), Reports (/insights?
tag=Reports), NPE (/insights?tag=NPE)

♥ 2 Likes   ⟨ Share

Newer Post
$2,500 for prior art on mCom IP
(/insights/2021/3/23/2500-for-prior-art-
on-mcom-ip)

Older Post
FireNet Technologies patent held
unpatentable (/insights/2021/3/18/firenet-
technologies-patent-held-unpatentable)

April 2016 (/insights?
month=04-2016)
March 2016 (/insights?
month=03-2016)
February 2016
(/insights?month=02-
2016)
January 2016
(/insights?month=01-
2016)
December 2015
(/insights?month=12-
2015)
November 2015
(/insights?month=11-
2015)
October 2015
(/insights?month=10-
2015)
September 2015
(/insights?month=09-
2015)
August 2015
(/insights?month=08-
2015)
July 2015 (/insights?
month=07-2015)
June 2015 (/insights?
month=06-2015)
May 2015 (/insights?
month=05-2015)
April 2015 (/insights?
month=04-2015)
March 2015 (/insights?
month=03-2015)
February 2015
(/insights?month=02-
2015)
January 2015
(/insights?month=01-
2015)
December 2014
(/insights?month=12-
2014)
November 2014
(/insights?month=11-
2014)
September 2014
(/insights?month=09-
2014)

Email Address

SUBSCRIBE

SFDC01017948

Or Subscribe to Our RSS
(http://www.unifiedpatents.com/insights?
format=rss)

HOME (/HOME)
SOLUTION (/NPE)
NEWS (/NEWS)
ABOUT (/ABOUT)
JOIN (/JOIN)

(650) 999-0889   INFO@UNIFIEDPATENTS.COM (MAILTO:INFO@UNIFIEDPATENTS.COM)

Copyright © 2021 Unified Patents, LLC.  All rights reserved.
Legal (/term-of-services) | Privacy Policy (/privacy-policy) | DMCA (http://unifiedpatents.com/dmca)



SFDC01017949

EXHIBIT 2

EXHIBIT 3

# EXHIBIT 4

Case 1:23-mc-00027-CFC Document 10 Filed 01/24/2021 Page 34 of 567 PageID #: 682

Electronically Filed by Superior Court of California, County of Orange, 10/28/2022 04:38:00 PM.
30-2022-01287254-CU-BC-CJC - ROA # 20 - DAVID H. YAMASAKI, Clerk of the Court By S. Suarez, Deputy Clerk.

1    Ekwan E. Rhow (State Bar No. 174604)
     erhow@birdmarella.com
2    Jong-min Choi (State Bar No. 329474)
     jmchoi@birdmarella.com
3
   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
4    DROOKS, LINCENBERG & RHOW, P.C.
   1875 Century Park East, 23rd Floor
5    Los Angeles, California 90067-2561
   Telephone: (310) 201-2100
6    Facsimile: (310) 201-2110
7
8    Attorneys for Plaintiffs Uniloc Licensing
   USA LLC and Craig Etchegoyen
9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11          COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

12

13    UNILOC LICENSING USA LLC, a      CASE NO. 30-2022-01287254-CU-BC-
   Delaware limited liability company;      CJC    Judge Deborah Servino
14    CRAIG ETCHEGOYEN, an individual;

15            ASSIGNED FOR ALL PURPOSES TO:
       Plaintiffs,            DEBORAH SERVINO
16

17        vs.          **[REDACTED] COMPLAINT FOR**
         **DAMAGES:**
18    UNILOC 2017 LLC, a Delaware limited
   liability company; FORTRESS
19    INVESTMENT GROUP LLC, a Delaware    **1) BREACH OF CONTRACT;**
   limited liability company;      **2) PROMISSORY ESTOPPEL; AND**
20        **3) PROMISSORY FRAUD**

21        Defendants.

22            **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

3829522.1

## INTRODUCTION

1.     This case is about Fortress Investment Group and its broken promises to Craig Etchegoyen.

2.     Fortress Investment Group ("Fortress"), one of the world's leading investment firms, and Craig Etchegoyen ("Etchegoyen"), agreed to work together to monetize a valuable patent portfolio that Etchegoyen had built. In exchange for Etchegoyen's help, Fortress made promises of significant compensation to Etchegoyen.

3.     Etchegoyen held up his part of the bargain, and as a result, Fortress has profited handsomely from this relationship. Yet, after having so profited, its promises have come up empty.

4.     Etchegoyen, and his corporate entity Uniloc Licensing USA LLC ("Uniloc Licensing"), bring this action to hold Fortress to its word.

## THE PARTIES

5.     Uniloc Licensing is a Delaware limited liability company with its principal place of business in Plano, Texas.

6.     Fortress is a Delaware limited liability company with its principal place of business in New York, New York.

7.     Uniloc 2017 ("Uniloc") is a Delaware limited liability company with its principal place of business in Newport Beach, California, in the County of Orange.

8.     Craig Etchegoyen is an individual who resides in California and Texas.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court because Defendant Uniloc has its principal place of business in Orange County, California, and the main events giving rise to this action occurred in Orange County, California. Venue is proper in this judicial district for the same reason.

## FACTUAL ALLEGATIONS

### Craig Etchegoyen Builds, And Then Sells, A Patent Monetization Powerhouse

10.     Etchegoyen founded "Uniloc" (the "Original Uniloc") in 2003, and over

1  time, grew it into a successful patent monetization entity through the strategic acquisition

2  of patent portfolios and the skillful assertion of those patent rights.

3      11.     By 2017, Original Uniloc had grown to a global network of various

4  companies covering key patent jurisdictions, operating across the world. Original Uniloc

5  was also one of the most active filers of patent lawsuits, acting as plaintiff in hundreds of

6  patent cases in the United States alone.

7      12.     In 2017, Fortress approached Etchegoyen, expressing interest in purchasing

8  Original Uniloc.

9      13.     Fortress formed and established Uniloc 2017 LLC ("Uniloc") as a special

10  purpose entity for the purpose of the transaction. Uniloc was to be, and did end up being,

11  Fortress's vehicle for entering into the patent monetization business with Etchegoyen.

12      14.     Fortress, by itself or through entities it owned and controlled, owned the

13  controlling interest in Uniloc. In addition, Fortress employees also composed a

14  supermajority on Uniloc's Board of Managers. Simply put, Uniloc was a Fortress entity.

15      15.     In a transaction structured as an Asset Purchase Agreement, between Uniloc

16  on the one hand for Fortress and Uniloc Luxembourg S.A. on the other for Etchegoyen,

17  Uniloc acquired substantially all of Original Uniloc's patent portfolios and any interest

18  connected with them.

19      16.     As a part of the transaction, Uniloc Licensing, which remained Etchegoyen's

20  entity, entered into a series of agreements with Uniloc, the Fortress-owned entity created

21  for the transaction.

22      17.     The series of agreements included a License Agreement between Uniloc and

23  Uniloc Licensing, which contemplated that Uniloc Licensing would assert Uniloc's

24  patents, and then transfer the proceeds of such efforts back to Uniloc in exchange for a

25  service fee to be separately negotiated. A copy of the License Agreement is attached hereto

26  as *Exhibit 1*.

27      18.     The transaction closed in October 2018.

28      19.     After the transaction, Uniloc separately employed Etchegoyen to serve as the

1  Chief Executive Officer of Uniloc.

2  **Fortress Establishes and Maintains Close Control of Uniloc**

3      20.    Fortress established firm control over Uniloc, treating it in effect as a

4  division of Fortress.

5      21.    Uniloc's Board of Managers, other than Craig Etchegoyen, were selected

6  entirely by Fortress, and were all individuals employed and controlled by Fortress.

7      22.    Patrick Diaz, the newly installed Chief Financial Officer of Uniloc, was

8  employed by Fortress during all relevant time, received compensation from Fortress while

9  receiving only nominal compensation from Uniloc, and acted at all times at Fortress's

10  direction.

11      23.    On information and belief, Fortress directed its employees who sat on

12  Uniloc's Board to protect and promote Fortress' interests ahead of Uniloc's, including by

13  funneling money obtained by Uniloc to Fortress. Fortress accomplished this by directing

14  Uniloc to structure settlement agreements so that the accused infringer defendants would

15  make payments to *Fortress*, not Uniloc, in consideration of Uniloc dismissing its patent

16  infringement complaints.

17      24.    An illustrative example of Fortress' complete control over Uniloc was its

18  settlement with ███████████ which terms provided that ███████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  **Fortress and Uniloc Promise Uniloc Licensing a Bonus Payment—And Then Confirm**
**The Promise Multiple Times**

22      25.    On February 12, 2019, Erez Levy, a member of Uniloc's Board of Managers

23  as well as a Fortress employee, had a verbal conversation with Etchegoyen by phone,

24  calling Etchegoyen from Uniloc's Newport Beach office.

25      26.    During that conversation, Levy promised Etchegoyen that to ensure that

26  Uniloc Licensing would use its best efforts to retain and hire key employees, Fortress

27  would pay Uniloc Licensing a bonus amounting to ten percent of the patent monetization

28

1  revenue that Licensing collected on behalf of Uniloc, so that Uniloc Licensing would have
2  a "bonus pool" for Etchegoyen and his key employees, payable upon a revenue event.

3      27.    For Uniloc, a "revenue event" meant either a settlement payment by a patent
4  infringement defendant to Uniloc or an affiliated entity, or a judgment collected from a
5  patent infringement action in Uniloc's favor.

6      28.    Levy promised that Fortress would accomplish this by directing and causing
7  Uniloc to establish a bonus pool, which would be comprised of ten percent of the patent
8  monetization revenue that Uniloc Licensing collected on behalf of Uniloc, separate and
9  apart from any service fee under the License Agreement, for as long as the License
10 Agreement remained in place.

11     29.    In the same conversation, Levy further promised Etchegoyen that Uniloc's
12 Board would, in the near future, adopt a resolution memorializing Uniloc's commitment to
13 the bonus pool.

14     30.    Levy, who also occupied a seat in Uniloc's Board of Managers, told
15 Etchegoyen that Fortress's promise meant that the decision by the Uniloc's Board of
16 Managers would be a foregone conclusion, because Fortress had total control over Uniloc,
17 even if a nominal board approval would be required for payment.

18     31.    Etchegoyen expressed his agreement, stating that Uniloc Licensing would
19 use its best efforts to retain and hire its key employees, and motivate Uniloc Licensing's
20 employees by informing them of the ten percent bonus.

21     32.    The next day, on February 13, 2019, Etchegoyen confirmed this promise
22 with Levy in a text message. In response to Etchegoyen's reference to "the 10% pool we
23 agreed to yesterday," Erez said enthusiastically: "Great agree."

24     33.    Two days later, on February 15, 2019, Patrick Diaz confirmed once again
25 that Uniloc would pay the bonus, emailing a spreadsheet to Etchegoyen that showed a
26 forecast of Uniloc's cashflow, and the amount of the bonus pool.

27     34.    Etchegoyen communicated Fortress and Uniloc's promise to the key
28 employees at Uniloc Licensing.

35.    On March 11, 2019, Uniloc's Board adopted a resolution acknowledging Uniloc Licensing's proposal to establish a bonus pool, and authorizing Uniloc to pay the ten percent bonus to Uniloc Licensing whenever the Board directed it to do so.

36.    On the same day, members of Uniloc's Board, including Levy, assured Etchegoyen that the resolution was a necessary preparatory step to commit to the ten percent bonus, and that at Fortress's direction, Uniloc's Board would authorize Uniloc to pay the ten percent bonus to Uniloc Licensing upon a revenue event as promised. As Levy and other Fortress representatives put it, the approval by Uniloc's Board would be a mere ministerial formality with a foregone outcome.

37.    In or about April 2019, Patrick Diaz, Uniloc's CFO and *also* a Fortress employee, once again assured Etchegoyen that Fortress would direct and cause Uniloc to pay the ten percent bonus, sending Etchegoyen a spreadsheet showing the projected amount of the bonus under various hypotheticals, including one that, upon collection of an additional $100 million from that date, would have entitled Uniloc Licensing, after various deductions, to a bonus of $11,036,998.

38.    In May 2019, Eran Zur, head of Fortress's intellectual property monetization group and another member of Uniloc's Board of Managers, gave another reassurance to Etchegoyen that Fortress would ensure Uniloc Licensing's bonus would be paid:



[REDACTED] COMPLAINT

39. By December 16, 2019, the bonus pool had grown to $1,197,000, which remained unpaid despite being collected. In a meeting of the Board on the same date, Etchegoyen confirmed with the rest of the Board members (who were also employees of Fortress) that the payable bonus pool had grown to that amount. The Board members acknowledged that the amount was due to Uniloc Licensing.

40. In another Board Meeting on July 31, 2020, Etchegoyen once again informed Uniloc's Board, composed of Fortress representatives, that the Board had agreed to pay the ten percent bonus, which had now grown to $3.7 million, and which remained unpaid.

41. The Board members agreed that the bonus pool had grown to $3.7 million, and acknowledged that the amount was due to Uniloc Licensing.

42. In the same Board meeting, Etchegoyen also reiterated to the Board that Uniloc Licensing's key employees had relied on the bonus pool in, at least, continuing to work for Uniloc Licensing. Similarly, Uniloc Licensing had relied on the bonus pool, electing to continue the License Agreement, and refraining from seeking higher service fees under the agreement.

43. The Board members acknowledged the statement and never expressed disagreement that Uniloc Licensing and its key employees had justifiably relied on Uniloc's promise to pay into the ten percent bonus pool.

**The ██████ Settlement**

44. Independently of Uniloc Licensing, Fortress made and then broke another promise—this time one made to Etchegoyen personally.

45. In late 2018, Uniloc was involved in litigation against ██████ ("██████ one of the world's largest companies, asserting Uniloc's patent rights.

46. Etchegoyen, as the then-CEO of Uniloc, played an important role in the settlement negotiations with ██████ including by negotiating with ██████

47. In ██████ 2018, ██████ requested that Etchegoyen ***personally*** sign a proposed settlement agreement ("██████ Settlement Agreement") between Uniloc and ██████ and assume certain obligations, including a covenant to not advise, assist, or

1   otherwise support any patent action against ███████ within a defined scope of the

2   settlement agreement.

3       48.    ███████ representatives indicated to Uniloc and Fortress that it would refuse

4   to execute the settlement agreement without Etchegoyen.

5       49.    The proposed settlement agreement did not provide any direct benefit to

6   Etchegoyen personally. ███████ offered no payment to Etchegoyen personally; only

7   Uniloc stood to receive any money.

8       50.    Eran Zur asked for a personal meeting with Etchegoyen at Uniloc's offices in

9   Newport Beach, California.

10      51.    That meeting took place in January 2019. At that meeting, Eran Zur made

11  the offer to Etchegoyen: if Etchegoyen personally signed the ███████ Settlement

12  Agreement, Fortress would pay Etchegoyen $4 million, separate and apart from any

13  payment otherwise owed to Etchegoyen or any entity controlled by him.

14      52.    Etchegoyen agreed. Later, he personally signed the ███████ Settlement

15  Agreement, assuming certain obligations under that agreement.

16      53.    Fortress and Uniloc partially kept their promise: at Fortress's direction,

17  Uniloc paid $1.3 million to Etchegoyen. However, Fortress and Uniloc have refused, and

18  continue to refuse, to pay the remaining $2.7 million.

19  **Uniloc Fires Etchegoyen, And Refuses To Pay For Uniloc Licensing's Success**

20      54.    Meanwhile, Uniloc Licensing and its employees (including Etchegoyen)

21  continued to rely on Uniloc's promise to pay the bonus.

22      55.    Uniloc Licensing, in reliance of Uniloc's promises, assured its key

23  employees that the bonus would be paid, and used its best efforts to retain those

24  employees.

25      56.    By early 2021, Uniloc Licensing's efforts had brought success greater than

26  even Fortress's and Uniloc's most optimistic predictions.

27      57.    Despite this success, on February 16, 2021, at Fortress's direction, Uniloc's

28  Board terminated Etchegoyen's employment as Uniloc's CEO.

58.     In ▮▮ of 2021, Uniloc Licensing secured another significant settlement against ▮▮▮ At Fortress' direction, however, Uniloc negotiated and executed a settlement agreement in which ████████████████████ ████████████████████████████ ████████████████

59.     Fortress assured Etchegoyen that the payment to Fortress, instead of Uniloc, would have no impact on any payments due to Uniloc Licensing, and that Fortress would duly record the payment as Uniloc's.

60.     On information and belief, Fortress failed to transfer any of the settlement money to Uniloc; the Fortress employees who populate Uniloc's board made this decision because it would increase their own bonuses within Fortress, while any harm to Uniloc would have no impact on them given that their compensations were coming from Fortress.

61.     As of June 2021, the amount of patent monetization revenue subject to the ten percent bonus pool that Uniloc Licensing had collected on behalf of Uniloc totaled $195 million. Accordingly, Uniloc Licensing would be entitled to a bonus payment of $19.5 million from Uniloc.

62.     Uniloc Licensing has requested that Uniloc pay the ten percent bonus.

63.     Uniloc has refused, and continues to refuse, to pay the promised bonus.

64.     Uniloc Licensing has requested that Fortress cause Uniloc to pay the ten percent bonus.

65.     Fortress has refused, and continues to refuse, to pay the promised bonus.

### FIRST CAUSE OF ACTION

### (Breach of Contract (against all Defendants) By Uniloc Licensing)

66.     The foregoing paragraphs are incorporated by reference.

67.     Uniloc, Fortress, and Uniloc Licensing entered into a contract, requiring Fortress to cause Uniloc to pay, and for Uniloc to pay, ten percent of Uniloc Licensing's collections as a bonus, and requiring Uniloc Licensing to use its best efforts to retain and incentivize its key employees.

68.     Uniloc Licensing performed its obligations by using its best efforts to retain and incentivize its key employees, including by informing them of the "bonus pool" out of which they could expect greater bonuses.

69.     In the alternative, Uniloc Licensing was excused from having to use the bonus pool to retain and incentivize its key employees, because of Fortress and Uniloc's failure to pay any bonus.

70.     Fortress and Uniloc failed to pay the ten percent bonus.

71.     As a direct and proximate result of Fortress and Uniloc's failure to pay the bonus, Uniloc Licensing has suffered, and continues to suffer, harm in an amount to be proven at trial, but in no event less than $19.5 million.

## SECOND CAUSE OF ACTION

### (Promissory Estoppel (against all Defendants) By Uniloc Licensing)

72.     The foregoing paragraphs are incorporated by reference.

73.     Uniloc and Fortress made a clear promise that Uniloc would pay ten percent of Uniloc Licensing's collections on behalf of Uniloc as a bonus.

74.     The promise was intended to, and did, induce reliance from Uniloc Licensing.

75.     Uniloc Licensing suffered substantial detriment by foregoing other opportunities, making other efforts to retain and incentivize its key employees, and accepting a lower service fee than it would have if no bonus pool had existed.

76.     As a direct and proximate result of Fortress and Uniloc's failure to pay the bonus, Uniloc Licensing has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Promissory Fraud (against all Defendants) By Uniloc Licensing)

77.     The foregoing paragraphs are incorporated by reference.

78.     Fortress and Uniloc made a promise to Uniloc Licensing to pay ten percent of Uniloc Licensing's collections as a bonus to Uniloc Licensing.

79.     At the time Fortress and Uniloc made the promise, Uniloc did not intend to

perform this promise.

80.   Fortress and Uniloc intended that Uniloc Licensing rely on this promise.

81.   Uniloc Licensing reasonably relied on this promise.

82.   Fortress did not cause Uniloc to pay, and Uniloc did not pay, the ten percent bonus that had been promised.

83.   As a direct and proximate result of Uniloc Licensing's reliance on Fortress and Uniloc's false promise, Uniloc Licensing has been harmed in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

### (Breach of Contract (against all Defendants) By Etchegoyen)

84.   The foregoing paragraphs are incorporated by reference.

85.   Uniloc, Fortress, and Etchegoyen entered into a contract, requiring Etchegoyen to personally sign the ███████ Settlement Agreement, and requiring Fortress and/or Uniloc to pay him $4 million in exchange.

86.   Etchegoyen performed his obligations under the contract, including by personally signing the ███████ Settlement Agreement.

87.   Uniloc has paid $1.3 million to Etchegoyen but has failed to pay the balance.

88.   Fortress has also failed to pay the balance.

89.   As a direct and proximate result of Fortress and Uniloc's failure to pay the promised amount, Etchegoyen has suffered, and continues to suffer, harm in an amount to be proven at trial, but in no event less than $2.7 million.

### FIFTH CAUSE OF ACTION

### (Promissory Fraud (against all Defendants) By Etchegoyen)

90.   The foregoing paragraphs are incorporated by reference.

91.   Uniloc and Fortress made a promise to Etchegoyen to pay $4 million in exchange for his signature on the ███████ Settlement Agreement.

92.   At the time Uniloc and Fortress made the promise, they did not intend to perform this promise.

93.     Uniloc and Fortress intended that Etchegoyen rely on this promise.

94.     Etchegoyen reasonably relied on this promise and signed the █████ Settlement Agreement.

95.     Uniloc never paid, and Fortress, despite having the ability, never instructed Uniloc to pay, the full $4 million. Instead, they paid only $1.3 million.

96.     As a direct and proximate result of Uniloc Licensing's reliance on Uniloc's false promise, Etchegoyen has been harmed in an amount to be proven at trial, but no less than $2.7 million.

### SIXTH CAUSE OF ACTION

### (Promissory Estoppel (against all Defendants) By Etchegoyen)

97.     The foregoing paragraphs are incorporated by reference.

98.     Uniloc and Fortress made a promise to Etchegoyen to pay $4 million in exchange for personally entering into the █████ Settlement Agreement.

99.     The promise was intended to, and did, induce reliance from Uniloc Licensing.

100.    Etchegoyen suffered substantial detriment by assuming personal obligations under the █████ Settlement Agreement, which required him to forego other potential opportunities to collect further patent monetization revenues against █████.

101.    As a direct and proximate result of Uniloc's failure to pay the bonus, Uniloc Licensing has been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

Accordingly, Plaintiffs pray for judgment against Uniloc and Fortress as follows.

1.     An award of **compensatory damages** in an amount to be proven at trial;

2.     An award of **consequential damages** in an amount to be proven at trial;

3.     An award of **exemplary damages** in an amount to be proven at trial;

4.     Interest, expenses, costs of suit, and attorneys' fees to the extent permitted by law; and,

1    5.    Any other relief the Court may deem just and proper.

2

3    DATED:  October 28, 2022         Ekwan E. Rhow

4                                     Jong-min Choi
                                      Bird, Marella, Boxer, Wolpert, Nessim,
5                                     Drooks, Lincenberg & Rhow, P.C.

6

7                                     By: _____

8                                              Ekwan E. Rhow
                                          Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a jury trial for all issues so triable.

3

4   DATED:  October 28, 2022             Ekwan E. Rhow

5                                        Jong-min Choi
                                         Bird, Marella, Boxer, Wolpert, Nessim,
6                                        Drooks, Lincenberg & Rhow, P.C.

7

8                                        By:  _____

9                                              Ekwan E. Rhow

10                                          Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

### *Uniloc Licensing USA, et al. v. Uniloc 2017, et al.*
### Case No. 30-2022-01287254-CU-BC-CJC

3

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4

5

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.

6

7

On October 28, 2022, I served the following document(s) described as **[REDACTED] COMPLAINT FOR DAMAGES** on the interested parties in this action as follows:

8

### SEE ATTACHED SERVICE LIST

9

10

**BY ELECTRONIC SERVICE:**  I served the document(s) on the person listed in the Service List by submitting an electronic version of the document(s) to First Legal, through the user interface at www.firstlegal.com.

11

12

**BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

13

14

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

15

16

Executed on October 28, 2022, at Los Angeles, California.

17

18

/s/ Bora Lee

19

Bora Lee

20

21

22

23

24

25

26

27

28

15

[REDACTED] COMPLAINT

1

2

**SERVICE LIST**
***Uniloc Licensing USA, et al. v. Uniloc 2017, et al.***
**Case No. 30-2022-01287254-CU-BC-CJC**

3   Kathryn "Kate" Gusmer Cole
    Moore & Van Allen
4   100 North Tryon Street
    Suite 4700
5   Charlotte, NC  28202-4003
    Telephone: 704.331.1045
6   Email: katecole@mvalaw.com
    **Counsel for Defendant Uniloc 2017 LLC**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[REDACTED] COMPLAINT

# EXHIBIT 5

# EXHIBIT 6

# EXHIBIT 7





**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

# Articles of Incorporation
(PURSUANT TO NRS CHAPTER 78)

| Filed in the Office of | Business Number |
|---|---|
| *Barbara K. Cegavske* | E0208572017-0 |
| | Filing Number |
| | 20170190318-12 |
| Secretary of State | Filed On |
| State Of Nevada | 05/01/2017 |
| | Number of Pages |
| | 4 |

{This document was filed electronically.}

USE BLACK INK ONLY - DO NOT HIGHLIGHT                          ABOVE SPACE IS FOR OFFICE USE ONLY

| **1. Name of Corporation:** | ORANGE HOLDINGS |
|---|---|

**2. Registered Agent for Service of Process:** (check only one box)

[X] Commercial Registered Agent: **CORPORATE SERVICES OF NEVADA**
Name

[ ] Noncommercial Registered Agent (name and address below) **OR**   [ ] Office or Position with Entity (name and address below)

Name of Noncommercial Registered Agent   **OR**   Name of Title of Office or Other Position with Entity

| | Nevada | |
|---|---|---|
| Street Address | City | Zip Code |
| | Nevada | |
| Mailing Address (if different from street address) | City | Zip Code |

**3. Authorized Stock:** (number of shares corporation is authorized to issue)

| Number of shares with par value: | 100000 | Par value per share: $ | 0.01 | Number of shares without par value: | 0 |
|---|---|---|---|---|---|

**4. Names and Addresses of the Board of Directors/Trustees:** (each Director/Trustee must be a natural person at least 18 years of age; attach additional page if more than two directors/trustees)

1) **CRAIG S ETCHEGOYEN**
Name

| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

2)
Name

| | | | |
|---|---|---|---|
| Street Address | City | State | Zip Code |

**5. Purpose:** (optional; required only if Benefit Corporation status selected)

The purpose of the corporation shall be:
ANY LEGAL PURPOSE

**6. Benefit Corporation:** (see instructions)   [ ] Yes

**7. Name, Address and Signature of Incorporator:** (attach additional page if more than one incorporator)

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

| DON HARMER | X DON HARMER |
|---|---|
| Name | Incorporator Signature |
| 502 NORTH DIVISION STREET | CARSON CITY | NV | 89703 |
| Address | City | State | Zip Code |

**8. Certificate of Acceptance of Appointment of Registered Agent:**

I hereby accept appointment as Registered Agent for the above named Entity.

X CORPORATE SERVICES OF NEVADA                     5/1/2017

Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity      Date

This form must be accompanied by appropriate fees.

Nevada Secretary of State NRS 78 Articles
Revised: 1-5-15

*ARTICLES OF INCORPORATION*

OF

# ORANGE HOLDINGS

A Nevada Corporation

### KNOW ALL MEN BY THESE PRESENTS:

THE UNDERSIGNED, FOR THE PURPOSE OF FORMING A CORPORATION UNDER THE LAWS OF THE STATE OF NEVADA, RELATING TO THE GENERAL CORPORATION LAW,

### I DO HEREBY CERTIFY THAT:

*FIRST:* THE NAME OF THE CORPORATION SHALL BE:

## ORANGE HOLDINGS

*SECOND:* THE CORPORATION IS AUTHORIZED TO CARRY ON ANY LAWFUL BUSINESS OR ENTERPRISE FOR WHICH CORPORATIONS MAY BE INCORPORATED UNDER THE LAWS OF THE STATE OF NEVADA. THE CORPORATION SHALL HAVE THE SAME POWERS AS AN INDIVIDUAL TO DO ALL THINGS NECESSARY OR CONVENIENT TO CARRY OUT ITS BUSINESS AND AFFAIRS, SUBJECT TO ANY LIMITATIONS OR RESTRICTIONS IMPOSED BY APPLICABLE LAW OR THESE ARTICLES. THE CORPORATION MAY CONDUCT ALL OR ANY PART OF ITS BUSINESS, AND MAY HOLD, PURCHASE, MORTGAGE, LEASE AND CONVEY REAL AND/OR PERSONAL PROPERTY, ANYWHERE IN THE WORLD.

*THIRD:* THE CORPORATION IS AUTHORIZED TO ISSUE A SINGLE CLASS OF "COMMON STOCK" WITH ALL RELATIVE RIGHTS AND RESTRICTIONS, AS CONTAINED IN THE BYLAWS OF THE CORPORATION, BEING EQUAL. THE TOTAL NUMBER OF SHARES THAT THE CORPORATION HAS AUTHORITY TO ISSUE IS ONE HUNDRED THOUSAND (100,000) SHARES WITH EACH SHARE HAVING A PAR VALUE OF ONE CENT ($.01). SAID SHARES SHALL BE FULLY PAID AND NON-ASSESSABLE UPON RECEIPT BY THE CORPORATION OF APPOSITE CONSIDERATION.

*FOURTH:* THE ADDRESS OF THE REGISTERED OFFICE OF THE CORPORATION IS 204 WEST SPEAR STREET #3692, CARSON CITY, NEVADA 89703. THE COMMERCIAL REGISTERED AGENT OF THE CORPORATION IS TO BE *CORPORATE SERVICES OF NEVADA*, LOCATED AT 502 NORTH DIVISION STREET, CARSON CITY, NEVADA 89703.

*FIFTH:* THE MEMBERS OF THE GOVERNING BOARD OF THIS CORPORATION SHALL BE STYLED, AS DIRECTORS OVER THE AGE OF EIGHTEEN (18) AND THEIR NUMBER SHALL BE NOT LESS THAN ONE. THE NUMBER OF DIRECTORS OF THE CORPORATION MAY BE FIXED FROM TIME TO TIME IN ACCORDANCE WITH THE BY-LAWS OF THE CORPORATION. THE INITIAL DIRECTOR OF THIS CORPORATION SHALL BE ONE, AND THE NAME AND ADDRESS OF THE INITIAL DIRECTOR IS:

CRAIG S. ETCHEGOYEN
C/O 204 WEST SPEAR STREET #3692
CARSON CITY, NV. 89703

*SIXTH:* THE NAME AND ADDRESS OF THE INCORPORATOR IS AS FOLLOWS:

DON HARMER
502 NORTH DIVISION ST.
CARSON CITY, NV. 89703

*SEVENTH:* THE PERIOD OF EXISTENCE OF THIS CORPORATION SHALL BE PERPETUAL.

*EIGHTH:* NO DIRECTOR, OFFICER OR SHAREHOLDER OF THIS CORPORATION SHALL HAVE PERSONAL LIABILITY FOR DAMAGES FOR BREACH OF ANY FIDUCIARY DUTY AS A DIRECTOR OR OFFICER TO THE CORPORATION, ITS SHAREHOLDERS OR ANY OTHER PERSON EXCEPT FOR:

(A) ACTS OR OMISSIONS WHICH INVOLVE INTENTIONAL

MISCONDUCT, FRAUD OR A KNOWING VIOLATION OF LAW;

OR

(B) THE PAYMENT OF DIVIDENDS IN VIOLATION OF NRS 78.300

ANY AMENDMENT, MODIFICATION OR REPEAL OF THE FOREGOING SHALL NOT ADVERSELY AFFECT ANY RIGHT OR PROTECTION OF A DIRECTOR OF THE CORPORATION HEREUNDER IN RESPECT OF ANY ACT OR OMISSION OCCURRING PRIOR TO THE TIME OF SUCH AMENDMENT, MODIFICATION OR REPEAL.

*NINETH:* THE CORPORATION MAY AMEND THESE ARTICLES OF INCORPORATION AT ANY TIME TO ADD OR CHANGE A PROVISION THAT IS REQUIRED OR PERMITTED TO BE IN THE ARTICLES OF INCORPORATION OR TO DELETE A PROVISION NOT REQUIRED TO BE IN THE ARTICLES OF INCORPORATION. WHETHER A PROVISION IS REQUIRED OR PERMITTED TO BE IN THE ARTICLES OF INCORPORATION IS DETERMINED AS OF THE EFFECTIVE DATE OF THE AMENDMENT.

THE UNDERSIGNED, FOR THE PURPOSE OF FORMING A CORPORATION UNDER THE LAWS OF THE STATE OF NEVADA, DO MAKE, FILE AND RECORD THIS CERTIFICATE, AND DO CERTIFY THAT THE FACTS HEREIN STATED ARE TRUE AND I HAVE ACCORDINGLY HEREUNTO SET MY HAND AND SEAL THIS DAY; MONDAY, MAY 01, 2017.

DON HARMER

STATE OF NEVADA      }
                     : SS.
CARSON CITY          }

ON THIS 1ST DAY OF MAY 2017 PERSONALLY APPEARED BEFORE ME C. M. BLACKWOOD, A NOTARY PUBLIC, DON HARMER, WHO ACKNOWLEDGED THAT HE EXECUTED THE ABOVE INSTRUMENT.

C. M. Blackwood
NOTARY PUBLIC
STATE OF NEVADA
APPT No. 13-11700-3
MY APPT EXPIRES SEPTEMBER 17, 2017

C M Blackwood
NOTARY PUBLIC

# EXHIBIT 8

# (PROFIT) INITIAL ANNUAL LIST OF OFFICERS, DIRECTORS AND STATE BUSINESS LICENSE APPLICATION OF:

ENTITY NUMBER

**ORANGE HOLDINGS**

E0208572017-0

NAME OF CORPORATION

FOR THE FILING PERIOD OF **MAY, 2017** TO **MAY, 2018**

*100103*

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

_IMPORTANT:_ Read instructions before completing and returning this form.

| Filed in the Office of | Business Number |
| | E0208572017-0 |
| _Barbara K. Cegavske_ | Filing Number |
| | 20170190319-23 |
| Secretary of State | Filed On |
| State Of Nevada | 05/01/2017 |
| | Number of Pages |
| | 1 |

1. Print or type names and addresses, either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors must be named. There must be at least one director. An **Officer** must sign the form. _FORM WILL BE RETURNED IF UNSIGNED._

2. If there are additional officers, attach a list of them to this form.

3. Return the completed form with the filing fee. Annual list fee is based upon the current total authorized stock as explained in the Annual List Fee Schedule For Profit Corporations. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

(This document was filed electronically.)
**ABOVE SPACE IS FOR OFFICE USE ONLY**

4. State business license fee is $500.00/$200.00 for Professional Corporations filed pursuant to NRS Chapter 89. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: ☐
**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

☐ This corporation is a publicly traded corporation. The Central Index Key number is:

☐ This publicly traded corporation is not required to have a Central Index Key number.

**NRS 76.020 Exemption Codes**

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | TITLE(S) |
| CRAIG S ETCHEGOYEN | **PRESIDENT** (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

| NAME | TITLE(S) |
| CRAIG S ETCHEGOYEN | **SECRETARY** (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

| NAME | TITLE(S) |
| CRAIG S ETCHEGOYEN | **TREASURER** (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

| NAME | TITLE(S) |
| CRAIG S ETCHEGOYEN | **DIRECTOR** |

| ADDRESS | CITY | STATE | ZIP CODE |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

None of the officers or directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** DON HARMER

**Signature of Officer or Other Authorized Signature**

| Title | Date |
| INCORPORATOR | 5/1/2017 12:24:15 PM |

Nevada Secretary of State List Profit
Revised: 7-1-15

# EXHIBIT 9

## FILING HISTORY

### ENTITY INFORMATION

**Entity Name:**

ORANGE HOLDINGS

**Entity Number:**

E0208572017-0

**Entity Type:**

Domestic Corporation (78)

**Entity Status:**

Active

**Formation Date:**

05/01/2017

**NV Business ID:**

NV20171281021

**Termination Date:**

Perpetual

**Annual Report Due Date:**

5/31/2023

### FILING HISTORY DETAILS

| File Date | Effective Date | Filing Number | Document Type | Amendment Type | Source | View |
|-----------|---------------|---------------|---------------|----------------|--------|------|
| 06/21/2022 | 06/21/2022 | 20222411112 | Certificate of Reinstatement | | External | 📷 |
| 06/01/2020 | 06/01/2020 | 20200698463 | Annual List | | External | 📷 |

| File Date | Effective Date | Filing Number | Document Type | Amendment Type | Source | View |
|-----------|----------------|---------------|---------------|----------------|--------|------|
| 05/29/2019 | 05/29/2019 | 20190230729-85 | Annual List | | External | 📷 |
| 05/09/2019 | 05/09/2019 | 20190204112-82 | Annual List | | External | 📷 |
| 05/01/2017 | 05/01/2017 | 20170190319-23 | Initial List | | External | 📷 |
| 05/01/2017 | 05/01/2017 | 20170190318-12 | Articles of Incorporation | | External | 📷 |

**Page 1 of 1, records 1 to 6 of 6**

---

### FILING DATE SNAPSHOT AS OF: 06/01/2020

| Business Details | Name Changes | Principal Office | Registered Agent |
|---|---|---|---|

| Officer Information | Shares |
|---|---|

| Date | Title | Name | Attention | Address1/Address2/City/State/Zip/Country |
|------|-------|------|-----------|------------------------------------------|
| 05/29/2019 | President | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |
| 05/29/2019 | Secretary | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |
| 05/29/2019 | Treasurer | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |
| 05/29/2019 | Director | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |

**Page 1 of 1, records 1 to 4 of 4**

Back      Return to Search      Return to Results

# Exhibit 10

---

## ENTITY INFORMATION

### ENTITY INFORMATION

**Entity Name:**

ORANGE HOLDINGS

**Entity Number:**

E0208572017-0

**Entity Type:**

Domestic Corporation (78)

**Entity Status:**

Active

**Formation Date:**

05/01/2017

**NV Business ID:**

NV20171281021

**Termination Date:**

Perpetual

**Annual Report Due Date:**

5/31/2023

### REGISTERED AGENT INFORMATION

**Name of Individual or Legal Entity:**

CORPORATE SERVICES OF NEVADA

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

NEVADA

**Street Address:**

502 NORTH DIVISION STREET, CARSON CITY, NV, 89703, USA

**Mailing Address:**

**Individual with Authority to Act:**

DON HARMER

**Fictitious Website or Domain Name:**

## OFFICER INFORMATION

☐ VIEW HISTORICAL DATA

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| President | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |
| Secretary | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |
| Treasurer | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |
| Director | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |

Page 1 of 1, records 1 to 4 of 4

## CURRENT SHARES

| Class/Series | Type | Share Number | Value |
|---|---|---|---|
| | Authorized | 100,000 | 0.010000000000 |

**Page 1 of 1, records 1 to 1 of 1**

Number of No Par Value Shares:

**0**

Total Authorized Capital:

**1,000**

Filing History        Name History        Mergers/Conversions

Return to Search        Return to Results

Exhibit 11

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
**www.nvsilverflume.gov**

| | |
|---|---|
| *Barbara K. Cegavske* | E0208572017-0 |
| Secretary of State | **Filing Number** |
| State Of Nevada | **20222411112** |
| | Filed On |
| | **06/21/2022 11:10:40 AM** |
| | Number of Pages |
| | **4** |

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89
☑ Reinstatement          ☐ Revival

| | |
|---|---|
| **1. Entity information:** | Name of entity as on file with the Nevada Secretary of State: <br><br>**ORANGE HOLDINGS** <br><br> Entity or Nevada Business Identification Number (NVID):  **NV20171281021** |
| **2. Registered Agent for Service of Process:** (check only one box) | ☑ Commercial Registered Agent (name only below)  ☐ Noncommercial Registered Agent (name and address below)  ☐ Office or position with Entity (title and address below) <br><br> **CORPORATE SERVICES OF NEVADA** <br> Name of Registered Agent **OR** Title of Office or Position with Entity |
| **2a. Certificate of Acceptance of Appointment of Registered Agent:** (Include "Registered Agent Acceptance/ Statement of Change" form if needed for signature) | **502 NORTH DIVISION STREET**   **Carson City**   Nevada **89703** <br> Street Address                  City                    Zip Code <br><br>                           Nevada <br> Mailing Address (If different from street address)   City   Zip Code <br><br> *I hereby accept appointment as Registered Agent for the above named Entity. If the registered agent is unable to sign the Articles of Incorporation, submit a separate signed Registered Agent Acceptance form.* <br><br> **X** _____ <br> Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity       Date |
| **3. Date When Revival is to Commence:** | Date when revival of charter is to commence or be effective, which may be before the date of the certificate: |
| **4. Duration of Revival:** (A date is required for entities under NRS 88) | Indicate whether or not the revival is to be perpetual, and, if not perpetual, the time for which the revival is to continue. Limited Partnership under NRS 88 must indicate a date. <br> The corporation's existence shall be: PERPETUAL or |
| **5.Current List :** <br><br> Reinstatements: List of Officers, Managers, Managing Members, General Partners, Managing Partners,Trustee or Subscribers <br><br> Revivals: List of Officers, Managers, Managing Members, General Partners, Managing Partners or Trustee | CORPORATION, INDICATE THE <u>PRESIDENT</u>, OR EQUIVALENT OF:   Title: **PRESIDENT** <br> **CRAIG S ETCHEGOYEN**            **USA** <br> Name                          Country <br> **c/o 204 WEST SPEAR STREET #3692**  **Carson City**  **NV** **89703** <br> Address                City        State  Zip/Postal Code <br><br> CORPORATION, INDICATE THE <u>TREASURER</u>, OR EQUIVALENT OF:   Title: **TREASURER** <br> **CRAIG S ETCHEGOYEN**            **USA** <br> Name                          Country <br> **c/o 204 WEST SPEAR STREET #3692**  **Carson City**  **NV** **89703** <br> Address                City        State  Zip/Postal Code <br><br> CORPORATION, INDICATE THE <u>DIRECTOR</u>, OR EQUIVALENT OF:   Title: **DIRECTOR** <br> **CRAIG S ETCHEGOYEN**            **USA** <br> Name                          Country <br> **c/o 204 WEST SPEAR STREET #3692**  **Carson City**  **NV** **89703** <br> Address                City        State  Zip/Postal Code |

*This form must be accompanied by appropriate fees.*

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
            **www.nvsilverflume.gov**

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89

☑ Reinstatement             ☐ Revival

| CORPORATION, INDICATE THE <u>SECRETARY,</u> OR EQUIVALENT OF: | Title: | **SECRETARY** |
| --- | --- | --- |
| **CRAIG S ETCHEGOYEN** | | **USA** |
| Name | | Country |

| **c/o 204 WEST SPEAR STREET #3692** | **Carson City** | **NV** | **89703** |
| --- | --- | --- | --- |
| Address | City | State | Zip/Postal Code |

*This form must be accompanied by appropriate fees.*

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
**www.nvsilverflume.gov**

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89

☑ Reinstatement          ☐ Revival

| | |
|---|---|
| **6. Statement of Fact:** <br> (Revivals only, select one. Entities under NRS 84 cannot revive) | ☐   Revival pursuant to 78.730 or 81.010: (check one) <br><br> The undersigned declare that the corporation desires to revive its corporate charter and is, or has been, organized and carrying on the business authorized by its existing or original charter and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapters 78 and/or 81. <br><br> ☐  The undersigned declare that they have obtained written consent of the stockholders of the corporation holding at least a majority of the voting power and that this consent was secured; furthermore, that they are the person(s) designated or appointed by the stockholders of the corporation to revive the corporation. <br><br> ☐  The undersigned declare that they are the person(s) who have been designated by a majority of the directors in office to sign this certificate and that no stock has been issued. Membership approval not required under NRS 81.010(2). |
| | ☐   Revival pursuant to 80: <br><br> The undersigned declare that the corporation desires to revive its qualification to do business and is, or has been, organized and carrying on the business authorized by its existing or original qualification and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 80. <br><br> ☐  The undersigned declare that they have obtained written consent of the stockholders of the corporation holding at least a majority of the voting power and that this consent was secured; furthermore, that they are the person(s) designated or appointed by the stockholders of the corporation to revive the qualification. <br><br> ☐  The undersigned declare that they are the person(s) who have been designated by a majority of the directors in office to sign this certificate and that no stock has been issued. |
| | ☐   Revival pursuant to 82: <br><br> The undersigned declare that the corporation desires to revive its corporate charter and is, or has been, organized and carrying on the business authorized by its existing or original charter and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapters 81 and 82. <br><br> This certificate must be executed by the President or Vice President **AND** Secretary or Assistant Secretary. <br><br> The undersigned declare that the execution and filing of this certificate has been approved unanimously by the last-appointed surviving directors of the corporation and the unanimous consent has been secured: |

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website: www.nvsos.gov**
**www.nvsilverflume.gov**

---

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89
☑ Reinstatement ☐ Revival

---

| **6. Statement of Fact:** (Revivals only, select one. Entities under NRS 84 cannot revive) | | |
|---|---|---|
| | ☐ | **Revival pursuant to 86.580:** The undersigned declare that the limited-liability company desires to revive its charter and is, or has been, organized and carrying on the business authorized by its existing or original charter and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 86. The undersigned declares that he has been designated or appointed by the members to sign this certificate. Furthermore, the execution and filing of this certificate has been approved and secured by the written consent of a majority of the members. |
| | ☐ | **Revival pursuant to 86:** The undersigned declare that the foreign limited-liability company desires to revive its registration and is, or has been, organized and carrying on the business authorized by its existing or original registration and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of NRS 86.5467. The undersigned declares that he/she has obtained approval by written consent of the majority in interest and that this consent was secured. |
| | ☐ | **Revival pursuant to 87, 87A, 88 or 88A:** The undersigned declare that the limited partnership, limited-liability partnership, limited-liability limited partnership or business trust desires to revive its certificate and is, or has been, organized and carrying on the business authorized by its existing or original certificate and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 87, 87A, 88 or 88A The undersigned declares that he/she has been designated or appointed by the general partners, managing partners or trustees to sign this certificate. Furthermore, the execution and filing of this certificate has been approved and secured by the written consent of the general partners or managing partners holding at least a majority of the voting powers. |
| | ☐ | **Revival pursuant to 89:** The undersigned declare that the professional association desires to revive its articles of association and is, or has been, organized and carrying on the business authorized by its existing or original articles of association and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 89. The undersigned declares that he/she has been designated or appointed by the members to sign this certificate. Furthermore, the execution and filing of this certificate has been approved and secured by the written consent of the holders of a membership interest in the professional association holding at least a majority of voting power. |

| **7. Signatures:** (Required) | I declare under the penalty of perjury that the reinstatement/revival has been authorized by a court of competent jurisdiction or by the duly selected manager or managers of the entity or if the entity has no managers, its managing members. |
|---|---|
| | I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State. |

**X** **DON HARMER** | **Authorized Signer** | **06/21/2022**

Signature of Officer, Manager, Managing Member, General Partner, Managing Partner, Trustee, or Authorized Signer

Title             Date

*FORM WILL BE RETURNED IF UNSIGNED.*

---

*This form must be accompanied by appropriate fees.*

# EXHIBIT 12

# EXHIBIT 13

# EXHIBIT 14

EXHIBIT 15

# EXHIBIT 16

# EXHIBIT 17

2022 WL 584322 (Del.Ch.) (Trial Pleading)
Chancery Court of Delaware.

BP TERRIER JV, LLC, ABN Investments LLC, and ABN Investments II LLC, Plaintiffs,
v.
Stuart SHANUS and Public Version Wsou Capital Partners, LLC, Defendants;
and
Wsou Holdings, LLC, Nominal Defendant.

No. 2021-0624-MTZ.
February 22, 2022.

**Amended Verified Complaint**

Young Conaway Stargatt & Taylor, LLP, C. Barr Flinn (#4092), Alberto E. Chávez (#6395), Rodney Square, 1000 North King Street, Wilmington, DE 19801, (302) 571-6600, Of Counsel: Sigmund S. Wissner-Gross, Seth D. Fiur, Brown Rudnick LLP, Seven Times Square, New York, NY 10036, (212) 209-4800, for plaintiffs.

Plaintiffs BP Terrier JV, LLC ("BP Terrier"), ABN Investments LLC ("ABN") andABN Investments II LLC ("ABN II") (collectively "Plaintiffs"), by and through their undersigned counsel, hereby file this Amended Verified Complaint against Stuart Shanus ("Shanus") and WSOU Capital Partners, LLC ("Capital Partners" and, together with Shanus, the "Defendants"), as well as nominal Defendant WSOU Holdings, LLC (the "Company"). In support hereof, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1. This case arises from a scheme by Defendants, Company insiders, to defraud Plaintiffs in an effort to deprive them of their significant minority contractual protections under the Company's operating agreement (the "2019 Operating Agreement") and misappropriate and subordinate ABN II's valuable membership interests. Defendants' fraud was perpetrated on the Company's primary benefactors: Plaintiffs and their affiliates had provided over [Text redacted in copy] of funding to the Company, representing virtually all capital invested in the Company since its inception in 2019. Indeed, in two instances over the last 18 months, Plaintiffs invested [Text redacted in copy] Yet, in May 2021, upon locating a new financial partner, Defendants used their insider positions to induce Plaintiffs into forgoing their minority protections and consenting to a limited release by executing an amended operating agreement (the "2021 Operating Agreement"), while concealing that they intended to declare a purported default and reallocation of ABN II's membership interests (for the benefit of Defendants) as soon as the 2021 Operating Agreement was executed. As set forth herein, Defendants' manufactured default and reallocation assertions have no grounding in either the 2019 Operating Agreement or 2021 Operating Agreement, and their fraudulent conduct warrants voiding in its entirety the illicitly obtained 2021 Operating Agreement, removal of Defendants from their control position, and the other injunctive and declaratory relief sought herein.

2. Shanus, who was appointed as the Company's manager by Capital Partners, had exclusive control over management of the Company. To protect their significant economic investment, Plaintiffs secured material minority protections under the 2019 Operating Agreement, including the right to remove Shanus as manager and appoint his replacement in the event of a breach. In May 2021, Shanus, as manager, and on behalf of Capital Partners (of which Shanus also was manager), represented to Plaintiffs that the status quo with respect to the parties' economic interests would be preserved in the 2021 Operating Agreement, and the parties negotiated and entered into the 2021 Operating Agreement on that basis. Despite such assurances and executed documentation, Defendants concealed their intent to cause the Company to declare an immediate default and reallocation of ABN II's membership interests literally minutes after the 2021 Operating Agreement was executed.

3. Defendants' scheme to defraud Plaintiffs began no later than May 13, 2021 when Shanus, as manager, emailed Plaintiffs inquiring as to whether any additional amounts remained to be funded by "one of the ABN entities" with respect to the "Super Preferred *[sic]* Units" [1] and requesting, if any such amount did remain, to "please" pay it to the Company. Plaintiffs in good faith undertook the requested investigation and determined the amount Plaintiffs believed remained to be funded (which was less than the amount Shanus suggested might be outstanding) and paid that amount in full [Text redacted in copy] on May 28, 2021 (11 business days after Shanus' inquiry).

4. On the same day payment was made, and literally within minutes of execution of the 2021 Operating Agreement, Defendants caused the Company to deliver a default notice, which clearly had been planned and prepared prior to execution of the 2021 Operating Agreement, baselessly claiming a payment default by ABN II (even though the payment had already been made) and reallocation to Capital Partners of ABN II's Super Priority Units and another class of membership interests called "Capital Redemption Units." Defendants' notice also claimed that ABN II's Capital Redemption Units were subject to unwritten subordination terms that relieved Defendants' membership interests of express subordination terms. Defendants delivered their purported default notice well aware that had they declared the purported payment default (or disclosed their plans to declare such a purported default) prior to execution of the 2021 Operating Agreement (which, under Defendants' theory, they could have done at any point during the preceding several months), Plaintiffs would never have agreed to execute the 2021 Operating Agreement and thereby relinquish their minority protections and grant Defendants a limited release. Instead, Defendants chose to mislead Plaintiffs and conceal their fraudulent plans until they secured execution of the 2021 Operating Agreement.

5. While Defendants fraudulently concealed their claims of payment default, reallocation and subordination as alleged herein, such claims lack any merit even when viewed independently of Defendants' fraud. The Super Priority Units were issued pursuant to Section 3.2 (Issuance of Units) of the 2019 Operating Agreement. Section 3.2 did not mandate the terms of subscription or funding for any newly offered units; rather, Section 3.2 provided only that units could be issued on such terms and conditions as were determined by unanimous consent of the members. Nor did Section 3.2 provide for a reallocation or other remedy in the event of a default under any such terms established by the members.

6. In the case of the Super Priority Units, the members agreed to satisfy their capital contribution funding obligations over time as and when Shanus, as manager, called for those contributions. The members did not establish any other funding terms or provide for remedies in the event of a funding default.

7. At no time prior to his May 13 inquiry (wherein Shanus inquired: "if [any Super Priority contributions remained to be funded,] can you please make that contribution?"), did Shanus request the alleged amount be funded by ABN II, and at no time (including in his May 13 email) did Shanus communicate to Plaintiffs a date by which funding must be made to avoid any claimed default. ABN II funded the requested amount on May 28 (after investigating whether any amount remained to be funded by "one of the ABN entities"). In short, no payment default ever occurred.

8. Defendants' May 28, 2021 bogus default notice also purported to reallocate to Defendants, without explanation or grounding in any of the operating agreements, an entirely separate class of membership interest owned by ABN II - the Capital Redemption Units. The Capital Redemption Units were purchased by ABN II for [Text redacted in copy] and paid for in full on January 5, 2021. Defendants' notice not only asserted that ABN II's Capital Redemption Units are subject to reallocation in favor of Defendants, but the notice also asserted, without explanation or grounding in any of the operating agreements, that ABN II's Capital Redemption Units are subject to unwritten terms that subordinate ABN II's entitlement to distributions on account of such units for the benefit of Defendants.

9. Plaintiffs, who represent all of the membership interests in the Company other than those held by Defendants, accordingly bring this action seeking (i) a declaration that the 2021 Operating Agreement was procured by fraud, and is therefore null and void *ab initio,* thus reinstating as controlling the 2019 Operating Agreement; (ii) a declaration that, upon reinstatement of the 2019 Operating Agreement, BP Terrier has grounds to exercise its right to immediately remove Shanus from his position as

manager of the Company, and appoint a replacement manager in accordance with the terms of the 2019 Operating Agreement; (iii) a declaration that Defendants' May 28 notice of default, reallocation and subordination is null and void *ab initio,* that any reallocation or offering by Defendants of ABN II's membership interests is null and void *ab initio,* and that ABN II is the proper owner of all of the subject Super Priority Units and Capital Redemption Units (and any interests or proceeds into which such units may have been converted); (iv) a declaration that the Capital Redemption Units are not subject to any subordination or other impairment not expressly set forth in the 2019 Operating Agreement or, to the extent it remains in effect, the 2021 Operating Agreement; and (v) an injunction barring Defendants from taking any further steps attempting to deprive Plaintiffs of their membership interests and rights in the Company that existed immediately prior to the purported adoption of the 2021 Operating Agreement, and to require Defendants to immediately provide to Plaintiffs the financial, tax and other information required to be provided to Plaintiffs under the Company's operating agreement and applicable law.

## **THE PARTIES**

10. Plaintiff BP Terrier JV, LLC is a Delaware limited liability company, and a minority member of the Company, WSOU Holdings, LLC.

11. Plaintiff ABN Investments LLC is a Delaware limited liability company, and a minority member of the Company, WSOU Holdings, LLC.

12. Plaintiff ABN Investments II LLC is a Delaware limited liability company, and a minority member of the Company, WSOU Holdings, LLC.

13. Defendant Stuart Shanus is a resident of California, who served as the manager of WSOU Holdings, LLC [Text redacted in copy]

14. Defendant WSOU Capital Partners, LLC is a Delaware limited liability company, [Text redacted in copy]

15. Nominal Defendant WSOU Holdings, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California. [Text redacted in copy]

## **RELEVANT NON-PARTIES**

16. WSOU Investments, LLC ("Investments") is a Delaware limited liability company. Investments is controlled by the Company, WSOU Holdings, LLC. Investments owns a portfolio of patents that it seeks to monetize through litigation and licensing.

17. Craig Etchegoyen is Shanus' business partner and, upon information and belief, serves in a managerial capacity of Capital Partners and as President of [Text redacted in copy] Upon information and belief, Etchegoyen is a resident of California. [2]

18. [Text redacted in copy]

19. [Text redacted in copy] is a Nevada limited liability corporation,

## **JURISDICTION**

20. The Court has jurisdiction over this matter pursuant to 6 *Del. C.* § 18-111, which provides that the Court of Chancery may hear "[a]ny action to interpret, apply or enforce the provisions of a limited liability company agreement ... or the duties, obligations or liability among the members or managers," 10 *Del. C.* § 341, which provides this Court with jurisdiction over

"all matters and causes in equity," *10 Del. C.* § 6501 *et seq.,* which provides that the Court "shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed," and *6 Del. C.* § 18-110, which provides that "the Court of Chancery may hear and determine the validity of any admission, election, appointment, removal or resignation of a manager of a limited liability company, and the right of any person to become or continue to be a manager of a limited liability company."

21. This Court further has personal jurisdiction over Capital Partners and the Company as Delaware entities. The Court has personal jurisdiction over Shanus pursuant to *6 Del. C.* § 18-109, which states that a manager or member of a limited liability company participating materially in the company's management, consents to jurisdiction in "all civil actions or proceedings brought in the State of Delaware involving or relating to the business" of the company or a violation "of a duty to the limited liability company" or any member thereof.

## FACTUAL ALLEGATIONS

### A. Plaintiffs Capitalize the Company.

22. At the time of the Company's formation in May 2019, Plaintiff BP Terrier and its affiliate agreed to provide approximately [Text redacted in copy] of financing to the Company consisting of a [Text redacted in copy] preferred equity investment by BP Terrier and a [Text redacted in copy] loan by BP Funding Trust, Series SPL-VI. [3] The preferred equity acquired by BP Terrier carried a [Text redacted in copy] coupon and a [Text redacted in copy] distribution priority over other Company membership interests.

23. In conjunction with formation and capitalization of the Company in May 2019, the Company's two members, BP Terrier and Capital Partners, entered into the 2019 Operating Agreement with BP Terrier designated therein as the "Minority Member" and Capital Partners designated therein as the "Majority Member."

24. The 2019 Operating Agreement provided for management of the Company by a "manager" within the meaning of the Delaware Limited Liability Company Act. In accordance with its rights under the 2019 Operating Agreement, Capital Partners appointed Shanus as the Company's manager.

### B. The Parties' Rights and Responsibilities Under the 2019 Operating Agreement.

25. Shanus, as manager, was responsible for managing the day-to-day business and affairs of the Company and, except where "Member Approval" [4] was required, had exclusive control over the management of the Company. *Id.* at § 6.1(a).

26. The 2019 Operating Agreement provided BP Terrier, as the Minority Member, with several material contractual protections, including the right to remove Shanus as manager and appoint a replacement manager upon the occurrence of "Cause Event." [5] *Id.* at § 6.1(b).

27. Section 3.2 of the 2019 Operating Agreement governed the issuance of additional membership interests (units) and the admission of new members. New unit issuances were subject to the members' preemptive rights in Section 8.1. *See id.* at§ 3.2.

28. Section 3.2 of the 2019 Operating Agreement did not mandate the terms of subscription or funding for any newly offered units, such as any time periods in which such interests needed to be funded, or provide for remedies in the event that any such funding was not made. Rather, Section 3.2 provided only that units could be issued on such terms and conditions as shall be determined with Member Approval.

29. Section 4.2 of the 2019 Operating Agreement governed additional capital contributions of the members in respect of their existing membership interests. Under Section 4.2, subject to Member Approval and other restrictions, the manager was authorized to request additional capital from members of a particular class of units on a *pro rata* basis according to their relative ownership of units of such class. *Id.* at § 4.2. Member participation in capital calls was optional, rather than mandatory. In the event a member chose not to fully subscribe for its *pro rata* share of the amount requested by the manager, the manager was authorized to offer, on a *pro rata* basis, the unsubscribed for amount to Members of such class who had elected to fully subscribe. *Id.* Section 4.2 required the Manager to provide at least 10 days' notice of any such optional capital call pursuant to Section 4.2, but Section 4.2 did not mandate the terms of payment or provide for remedies in the event of a default under any such terms established by the manager or members.

30. Section 6.2(a) of the 2019 Operating Agreement set forth various actions the manager could not take or authorize without Member Approval. Those transactions included incurring any obligation, extending any indebtedness, issuing any membership interests or engaging in transactions with affiliates. [6]

31. Section 6.4(a) of the 2019 Operating Agreement provided that a manager of the Company could be liable for acts involving fraud, willful misconduct or bad faith, and any transaction from which such manager derived a personal benefit in violation of the 2019 Operating Agreement.

32. Section 6.5 of the 2019 Operating Agreement provided for indemnification of the members and the manager. Section 6.5 expressly prohibited indemnification if the member or manager was determined by a court to have engaged in acts or omissions giving rise to liability that "constituted fraud, gross negligence or a knowing violation of law."

33. Section 7.1 of the 2019 Operating Agreement set forth certain responsibilities of the manager. Specifically, Section 7.1(b) required the manager to provide to each member, as soon as reasonably practical after the end of each fiscal year, a Schedule K-1 of federal Form 1065 reporting the member's allocable share of net income, net loss and other items of income, gain, deductions or loss for such fiscal year. To date, no Schedule K-1 has been delivered to Plaintiffs for the fiscal year ended December 31, 2020. Section 7.1(c) also required that the manager provide the members with the Company's audited financial statements each year within 120 days of the end of the fiscal year, unaudited statements on a quarterly basis, and monthly unaudited statements within 20 days of the end of each month. Plaintiffs have yet to receive said financial statements.

34. Section 8.1 of the 2019 Operating Agreement established the pre-emptive right of the members to purchase their *pro rata* share of any new units being issued by the Company pursuant to Section 3.2. Section 8.1 did not mandate the terms of subscription or funding for any newly offered units or provide for remedies in the event of a default under any such terms established by the manager or members.

## C. The August 2020 and December 2020 Capital Raises.

35. Fifteen months after Plaintiffs capitalized the Company and the parties signed the 2019 Operating Agreement, [Text redacted in copy]

### 1. *The August 2020 Capital Raise: Class C Units.*

36. In August 2020, Defendants sought to raise [Text redacted in copy] of additional capital for Investments. To avoid dilution of its membership interest in Investments, the Company needed to fund its *pro rata* share [Text redacted in copy] of that [Text redacted in copy] or Defendants sought to raise that capital through the issuance of a new class of preferred membership interest in the Company, designated as "Class C Units," which carried an [Text redacted in copy] per annum coupon that began to accrue one year after the capital under the Class C commitments was called by the manager and contributed to the Company by the Class C Unitholder

37. The Class C Units, as required by Section 3.2 of the 2019 Operating Agreement, were offered to the members on a *pro rata* basis in accordance with Section 8.1 of the 2019 Operating Agreement. BP Terrier subscribed for its full *pro rata* share of the Class C Units, which carried a [Text redacted in copy] capital commitment.

38. Capital Partners, which was allocated [Text redacted in copy] of the Class C Units (which carried a [Text redacted in copy] capital commitment), only subscribed for Class C Units which carried a [Text redacted in copy] capital commitment, of its allocation. [Text redacted in copy] in accordance with Section 8.1 of the 2019 Operating Agreement, ABN elected to subscribe for the balance of Capital Partners' allocation of Class C Units (which carried a [Text redacted in copy] capital commitment). These "excess" Class C Units acquired by ABN carried a coupon of [Text redacted in copy] per annum and ABN was entitled to receive amounts otherwise distributable to Capital Partners until ABN received a return of its [Text redacted in copy] plus accrued coupon.

39. As additional consideration for funding [Text redacted in copy], the Company issued ABN a [Text redacted in copy] common membership interest in the Company and the common membership interest of Capital Partners was correspondingly reduced. As a result of its failure to fully participate in the August capital raise, Capital Partners' economic interest in the Company was diluted and subordinated to the newly issued preferred Class C Units. [7]

40. Consistent with the terms of their coupon accrual, the Class C Unit commitments were to be funded over time as and when called by Shanus. This periodic funding approach, which was agreed to by the members, enabled Shanus to minimize the Company's cost of capital as he managed the Company's cash needs. The terms of the Class C Units were memorialized in the August 10, 2020 First Amendment to the 2019 Operating Agreement (the "First Amendment"). The First Amendment did not include any specific timing for funding of the Class C Unit commitments or provide for remedies in the event of a default under any such terms established by the manager or members. Rather, the members funded their Class C Unit commitments over the succeeding months in accordance with requests made by Shanus. BP Terrier and ABN timely funded every request for funding made by Shanus.

### *2. The December 2020 Capital Raise: Super Priority Units.*

41. Just a few months later, in December 2020, the parties went through the same exercise again. Shanus notified the Company's members that [Text redacted in copy] and that the Company once again needed additional capital to meet its obligations.

42. This time, Defendants sought to raise [Text redacted in copy] of additional capital for Investments, [Text redacted in copy] of which [Text redacted in copy] the Company needed to fund to avoid dilution of its membership interest in Investments. Defendants sought to raise that capital through the issuance of yet another new class of preferred membership interests in the Company, designated as "Super Priority Units," which carried a coupon of [Text redacted in copy] per annum that began to accrue as and when the capital under the Super Priority commitments was called by the manager and contributed to the Company by the Super Priority Unitholder.

43. The Super Priority Units, as required by Section 3.2 of the 2019 Operating Agreement, were offered to the members on *apro rata* basis in accordance with Section 8.1 of the 2019 Operating Agreement. Plaintiffs subscribed for their full *pro rata* share of the Super Priority Units: BP Terrier subscribed for Super Priority Units that carried a [Text redacted in copy] capital commitment; and ABN II subscribed for Super Priority Units that carried a [Text redacted in copy] capital commitment. [8] In accordance with Section 8.1 of the 2019 Operating Agreement, ABN II also subscribed for ABN's allocation, which carried a capital commitment of [Text redacted in copy].

44. Capital Partners subscribed for only [Text redacted in copy] of its allocation, carrying a [Text redacted in copy] capital commitment. [Text redacted in copy], in accordance with the Section 8.1 of the 2019 Operating Agreement, ABN II elected to

subscribe for the balance of Capital Partners' allocation of Super Priority Units (which carried a [Text redacted in copy] capital commitment). These "excess" Super Priority Units carried a coupon of [Text redacted in copy] per annum and ABN II was entitled to receive amounts otherwise distributable to Capital Partners until ABN II received a return of its [Text redacted in copy] plus accrued coupon. Once again, Capital Partners' economic interest in the Company was subordinated because of the new preferred unit issuance.

45. Like the Class C Units four months earlier, and consistent with the terms of their coupon accrual, the Super Priority Unit commitments were to be funded over time as and when called by Shanus. Again, this periodic funding approach, which was agreed to by the members, enabled Shanus to minimize the Company's cost of capital as he managed the Company's cash needs. The terms of the Super Priority Units were memorialized in the December 31, 2020 Second Amendment to the 2019 Operating Agreement. The Second Amendment did not include any specific timing for funding of the Super Priority Unit commitments or provide for remedies in the event of a default under any such terms established by the manager or members. Rather, the members funded their Super Priority Unit commitments over the succeeding months in accordance with requests made by Shanus. BP Terrier and ABN II timely funded every request for funding made by Shanus.

### 3. Capital Redemption Units.

46. In December 2020, the Company also issued another new class of units designated as "Capital Redemption Units." The Capital Redemption Units, which represented an [Text redacted in copy] common membership interest in the Company, were purchased exclusively by ABN II for [Text redacted in copy]. The purchase price was paid in full on January 5, 2021. The terms of the Capital Redemption Units were also memorialized in the Second Amendment.

47. The Capital Redemption Units were issued exclusively to ABN II. As a result, the Second Amendment provided that the issuance of Capital Redemption Units was not subject to the preemptive rights provisions of Section 8.1 of the 2019 Operating Agreement. Specifically, Section 1.d. of the Second Amendment amended Section 3.2 [9] by adding a new sentence to the end of that section that authorized the issuance of the Capital Redemption Units to ABN II without subjecting such issuance to the preemptive rights provisions of Section 8.1 included in the first sentence of Section 3.2. Accordingly, no member other than ABN II was offered the opportunity to buy Capital Redemption Units and ABN II became the only member of that class of membership interest in the Company.

48. As owner of the Capital Redemption Units, ABN II subscribed for its *pro rata* share of Super Priority Units. As stated in the Second Amendment (which also governed the terms of the Super Priority Units), "[t]o the extent the Company issues the Capital Redemption Units, [] the Capital Redemption Member(s) shall also make an aggregate Capital Contribution in respect of Super Priority Units in an amount equal to [Text redacted in copy] [.]" *See* Second Amendment to the 2019 Operating Agreement at § 1.d. As discussed herein, ABN II, like each of the Plaintiffs, timely funded every request for payment made by Shanus for its Super Priority commitment.

49. The Capital Redemption Units were issued as a means of raising capital to be used by Capital Partners to redeem one of its members, [Text redacted in copy], which according to Shanus and Etchegoyen, [Text redacted in copy]. Accordingly, the [Text redacted in copy] purchase price for the Capital Redemption Units paid to the Company by ABN II was distributed by the Company to Capital Partners and, in turn, used by Capital Partners to pay the [Text redacted in copy] redemption price for [Text redacted in copy] membership interest in Capital Partners. The terms of the [Text redacted in copy] [Text redacted in copy] redemption were memorialized in a Redemption Agreement between Capital Partners and [Text redacted in copy] dated December 31, 2020. ABN II was not a party to the Redemption Agreement, nor was it a party to any other agreement with respect to redemption of [Text redacted in copy] membership interest in Capital Partners. ABN II's exclusive role in the [Text redacted in copy] redemption was the purchase of Capital Redemption Units from the Company.

50. ABN II's purchase of Capital Redemption Units arose following Etchegoyen's suggestion to Neuberger that he consider purchasing [Text redacted in copy] interest in Capital Partners. Neuberger agreed to consider the request under the right

circumstances, whereupon Etchegoyen and Shanus proceeded to negotiate with [Text redacted in copy] and its principal, [Text redacted in copy] relaying [Text redacted in copy] terms to Neuberger. Ultimately, the parties determined a [Text redacted in copy] price for [Text redacted in copy] interest subject to the mechanics and structure of the transaction being worked out.

51. Over the succeeding weeks, the parties worked to complete the transaction documents, with Shanus and Etchegoyen serving as go-betweens for Neuberger (and his representatives) and [Text redacted in copy]. Neuberger insisted on keeping his investment in the WSOU group of entities strictly at the Company level (he was adamant that he would not become an investor in Capital Partners) to avoid becoming an assignee in any respect of the terms of [Text redacted in copy] membership in Capital Partners. Accordingly, the parties structured the transaction as a further investment in the Company by ABN II followed by the redemption of [Text redacted in copy] interest by Capital Partners. As Shanus stated in a December 27, 2020 email, "[h]aving [Capital Partners] redeem [Text redacted in copy] shares may still be the best mechanism to get this done."

52. The Capital Redemption Units' issuance to ABN II was completed on January 5, 2021, at which time ABN II paid the purchase [Text redacted in copy] price to the Company. The [Text redacted in copy] redemption was thereupon completed pursuant to the Redemption Agreement between Capital Partners and The Capital Redemption Units issued to ABN II represented approximately [Text redacted in copy] of the common equity in the Company. That percentage equated to [Text redacted in copy] redeemed [Text redacted in copy] common equity interest in Capital Partners (which at the time held a [Text redacted in copy] common equity interest in the Company).10

### D. Plaintiffs Timely Fund All Payments Requested by Shanus.

53. As contemplated by the members, and consistent with the coupon accrual provisions of the First Amendment and Second Amendment, each member of the Company funded its Class C Unit commitment and Super Priority Unit commitment as and when requested by Shanus. [11]

54. Following issuance of the Super Priority Units on December 31, 2020, Shanus emailed Plaintiffs in January, February and March in each case requesting specific funding amounts from each holder of Super Priority Units. Plaintiffs, including ABN II, in each case funded the requested amount immediately upon request. Those requests collectively resulted in the funding by Plaintiffs of [Text redacted in copy] aggregate Super Priority Unit commitment. Shanus thereafter did not request or inquire regarding any additional funding from Plaintiffs until his May 13, 2021 inquiry, in accordance with which Plaintiffs promptly investigated and provided the requested funding on May 28, 2021. At no time was there any assertion by Shanus of a failure by Plaintiffs to meet a funding request or requirement or of any putative, let alone, claimed default. Moreover, as noted, Shanus represented in his May 13 inquiry that he was uncertain if any additional amount in fact remained to be funded.

55. As to ABN II specifically, it funded approximately [Text redacted in copy] of its Super Priority Unit commitment on the date it acquired its Super Priority Units. Thereafter, Shanus' periodic emails included the following specific funding requests:
• On January 29, 2021, Shanus requested [Text redacted in copy] from ABN II as the "amounts for this month's call" (the funds were wired and receipt confirmed by Defendants that afternoon);

• On February 24, 2021, Shanus emailed requesting another [Text redacted in copy] from ABN II as the "monthly portions... as detailed below... due on March 1" (the funds were wired and receipt confirmed by Defendants on February 28); and

• On March 31 2021 Shanus emailed late in the afternoon requesting another [Text redacted in copy] from ABN II (the funds were wired and receipt confirmed by Defendants that day).

56. The foregoing funding installments resulted in ABN II funding [Text redacted in copy] Super Priority Unit commitment. The balance of its commitment [Text redacted in copy] was funded on May 28, 2021.

57. Plaintiffs, who had consistently funded every request made by Shanus, relied on Shanus' funding requests and, before conducting the investigation requested by Shanus on May 13 as to whether any funding remained, had no reason to previously investigate or consider whether any funding amounts had yet to be called by Shanus under ABN II's Super Priority Unit commitment. Nonetheless, ABN II was always fully prepared to meet its funding obligations upon request by Shanus and accordingly paid the requested funding balance promptly after confirming the amount actually remaining to be called.

58. Notably, Shanus' failure to call the balance of ABN II's commitment prior to May 13 had no negative impact on the Company; in fact, it resulted in the Company saving on the amount of coupon that would have accrued had he requested the balance at an earlier date.

### E. The Company's Debt Becomes Due.

59. By March 2021, the Company was faced with [Text redacted in copy]

60. [Text redacted in copy], Defendants approached Plaintiffs' principal, Neuberger, for yet additional capital and/or a modification of the loan held by Neuberger's affiliate that was set to mature. Neuberger, who through his affiliates by this time had invested more than [Text redacted in copy] over the prior two years, including more than [Text redacted in copy] declined to extend additional financing. However, Neuberger agreed to give the Company time to find replacement financing, and without requiring the payment of any customary fee or other consideration caused his affiliated lender to forebear and extend the due date for the [Text redacted in copy] interest payment owed from March 31 to the May 16 loan maturity date.

### F. Defendants Breach the 2019 Operating Agreement.

61. With the flexibility provided by Neuberger, Defendants set out to find a replacement financing partner. Even though any replacement financing would require BP Terrier's consent pursuant to Section 6.2(b) of the 2019 Operating Agreement, Defendants chose to exclude Plaintiffs from their search and negotiations for new financing.

62. As set forth above, Section 6.2 expressly identified certain actions the manager was prohibited from authorizing or causing the Company or Investments to take without Member Approval. Among such actions were the incurrence of any obligation or debt inconsistent with the member-approved budget, and issuance of any equity interest. Section 6.2 required the manager to seek Member Approval by written notice to the members and to provide such information as was necessary for the members to make an informed decision with respect to the matter to be approved. Shanus did neither.

63. In mid-April, Plaintiffs learned that Defendants, without prior disclosure, had secured terms for new financing from [Text redacted in copy] Plaintiffs thereupon made repeated demands for a copy of the [Text redacted in copy] terms. Despite his obligations as manager, including his express obligations under Section 6.2 of the 2019 Operating Agreement, Shanus repeatedly refused to provide a copy of the [Text redacted in copy] terms or disclose other key information regarding the proposed transaction.

64. Shanus, a lawyer by trade, and having negotiated the 2019 Operating Agreement, had full knowledge and understanding of the Member Approval requirements of the 2019 Operating Agreement, yet he choose to disregard his obligations and ignore BP Terrier's requests and rights, and instead repeatedly and incorrectly asserted that BP Terrier did not have any consent rights with respect to the [Text redacted in copy] financing. Shanus and Company counsel repeatedly threatened Plaintiffs with litigation if the [Text redacted in copy] financing was not consummated due to BP Terrier's legitimate assertion of a consent right.

65. After repeated demands, on May 8,2021, Etchegoyen finally shared the [Text redacted in copy] terms with Plaintiffs in the form of a letter of intent that had been signed nearly three weeks earlier, on April 19, 2021. Plaintiffs discovered that the [Text redacted in copy] terms, in addition to providing for significant debt financing, provided for the issuance to [Text redacted in

copy] of up to a [Text redacted in copy] membership interest in Investments as well as a lucrative self-enriching equity incentive program in favor of Shanus and Etchegoyen. Each of these elements of the [Text redacted in copy] financing required Member Approval, which had neither been sought nor obtained by Shanus.

66. Shanus, as a Company insider, with apparent complicity of Etchegoyen, had negotiated lucrative benefits for himself and Etchegoyen at the expense of Plaintiffs, as the equity incentives would dilute Plaintiffs' economic interests and subordinate their priorities to profits. Moreover, Shanus claimed the [Text redacted in copy] financing would only be consummated if BP Terrier sold its preferred interest in the Company back to the Company for less than [Text redacted in copy] face amount and forfeited all of its minority protections, including the right to replace Shanus as manager.

67. To make matters worse, accompanying the [Text redacted in copy] letter of intent delivered on May 8 was a Fee Agreement, *which Shanus had caused the Company, without Plaintiffs' prior knowledge or consent, to execute that very same day* in glaring breach of his duties and obligations. The Fee Agreement, negotiated and signed by Shanus without authority and in violation of Section 6.2, obligated the Company to pay [Text redacted in copy] a [Text redacted in copy] fee if the Company obtained financing from a third party in lieu of consummating the [Text redacted in copy] financing on the terms contained in the letter of intent. [12] Plaintiffs first learned about this Fee Agreement on May 8 as well when it was delivered with the [Text redacted in copy] letter of intent.

68. Shanus' conduct in causing the Company to execute the Fee Agreement and [Text redacted in copy] letter of intent constituted a breach of Section 6.2(b) of the 2019 Operating Agreement. Shanus' actions left the Company with one of two obligations: either [Text redacted in copy]. Either way, Shanus caused the Company to incur an obligation that could only be authorized with Member Approval, and he did so without seeking or obtaining that required approval. As such, Shanus' actions constituted a Cause Event, entitling BP Terrier to remove and replace Shanus in accordance with the 2019 Operating Agreement.

### G. Negotiation and Terms of the 2021 Operating Agreement.

69. Plaintiffs objected to the proposed treatment of their equity in the [Text redacted in copy] transaction and insisted that their economic interests in the Company, including their priorities to profits, be preserved intact. Ultimately, Defendants communicated that they had relented, and falsely represented and assured Plaintiffs, as alleged herein, that Plaintiffs' economic interests and priorities would be preserved. [13] Plaintiffs, having been duped into believing that "peace" had been achieved based on such representations and assurances, in turn agreed to forego BP Terrier's minority protections, including the right to remove Shanus, and Plaintiffs agreed to give Shanus and Capital Partners a partial release. [14] Upon information and belief, it was during this same period (negotiation and execution of the 2021 Operating Agreement) that Defendants implemented their fraudulent scheme to attempt to misappropriate Plaintiffs' membership interests by fraudulently inducing execution of the 2021 Operating Agreement and deliberately withholding their intention to declare an immediate payment default as soon as the 2021 Operating Agreement was executed.

70. Plaintiffs executed the 2021 Operating Agreement with the reasonable expectation that the express terms contained in the 2021 Operating Agreement and assurances given by Defendants to Plaintiffs, particularly as to the economic interest of the parties, would be honored by Defendants. Had Defendants disclosed their actual position, as insiders, that a present default existed (prior to execution of the 2021 Operating Agreement) that resulted in diminution of Plaintiffs' interests as set forth in the 2021 Operating Agreement, rather than lying to Plaintiffs, Plaintiffs would never have executed the 2021 Operating Agreement, nor agreed to its terms. Defendants had ample opportunity to disclose their intentions to Plaintiffs, including as early as Shanus' May 13 inquiry. Defendants, of course, knew that had they been truthful as to their intentions and plans as insiders in the lead up to May 28, 2021, the 2021 Operating Agreement would never have been executed by Plaintiffs, and accordingly they concealed their fraudulent scheme from Plaintiffs until minutes after the 2021 Operating Agreement was executed.

71. The 2021 Operating Agreement preserved ABN II's economic interests and priorities as they existed immediately prior to execution of the 2021 Operating Agreement. Specifically, by executing the 2021 Operating Agreement:

• The Capital Redemption Units were redesignated as common membership interests with an equivalent percentage interest;

• The Super Priority Units (other than the "excess" Super Priority Units) were converted into common membership interests of the Company; and

• The accrued priority amount represented by ABN II's "excess" Super Priority Units as of May 28, 2021 [Text redacted in copy] was defined in the 2021 Operating Agreement as the "ABN II Advance;" the ABN II Advance (like the excess Super Priority Units) continued to accrue a return of [Text redacted in copy] per annum until paid; and the ABN II Advance (like the excess Super Priority Units) was payable from amounts otherwise distributable to Capital Partners.

72. The purported limited release fraudulently obtained by Defendants was in Section 13.16 of the 2021 Operating Agreement. Pursuant to Section 13.16, each member purported to release each other member (and its affiliates and representatives) "in respect of any Claims (known or unknown) as of [May 28, 2021] relating to the [2019 Operating Agreement]." *Id.* at § 13.16. [15] Defendants, in addition to their affirmative misrepresentations, at the same time deliberately concealed from Plaintiffs that they intended to declare a default minutes after having secured the partial release contained in the 2021 Operating Agreement, a classic exercise in fraudulent inducement. Indeed, Defendants purposefully concealed material facts while also making material misrepresentations to induce Plaintiffs to agree to the 2021 Operating Agreement that included a partial release of claims which Defendants apparently hoped would cover their fraudulent conduct. As noted above, had Plaintiffs been aware of Defendants' position or planned strategy, they never would have agreed to enter into the 2021 Operating Agreement, and no limited release would have been issued.

73. Section 4.1(a) of the 2021 Operating Agreement provided for the Company to be member managed with determinations made by vote or consent of members holding a majority of the ascribed percentage interests. Capital Partners controlled the management of the Company by virtue of its majority ascribed percentage interest.

74. Section 7.2 of the 2021 Operating Agreement requires the Company to furnish to each Member (i) a statement of such member's distributive share of income and expense for income tax reporting purposes, (ii) audited annual consolidated financial statements as promptly as practicable after the end of each fiscal year of the Company, (iii) unaudited consolidated financial statements as promptly as practicable after the end of each fiscal quarter of the Company, (iv) the approved budget as promptly as practicable upon its adoption, and (v) not later than specified quarterly dates, schedules of actual and estimated taxable income and book income of the Company for the preceding and remaining calendar quarters of the Company's fiscal year. None of such documentation or information has ever been delivered to Plaintiffs.

75. Section 7.2(d) of the 2021 Operating Agreement requires the Company to notify Plaintiffs of any and all settlement offers made or received with respect to pending litigation or other adversarial action with respect to any patent. Upon information and belief, Investments has settled multiple patent infringement cases (and other reportable settlement offers or adversarial action has occurred), yet Plaintiffs have not received notification of any such settlements, offers or actions from the Company.

## H. Shanus Requests Confirmation and Funding; Plaintiffs Timely Comply.

76. On May 13, Shanus sent Plaintiffs an email stating that "[i]n connection with [diligence for the [Text redacted in copy] transaction], we found that one of the ABN entities may have failed to pay its full portion of the December 2020 capital raise- the Super Preferred [sic] units." Shanus suggested (incorrectly) in his email that of funding might remain, but asked Plaintiffs to check their own records to confirm and, if any amount remained to be funded, to "please" pay the funds.

77. Shanus' email did not imply, let alone allege, that a default had occurred; nor did it state a date by which the funding was to be made. Instead, Shanus expressed uncertainty as to whether any funding remained, posited an incorrect potential amount, and asked Plaintiffs to check their records to determine whether any outstanding funding remained, and if so, to determine the amount. The email also evidenced Shanus' understanding that, consistent with the parties' prior practice, the Super Priority Units would be funded over time by noting that the first "installment" had been paid in January 2021.

78. Shanus sent a follow up email on May 14 inquiring as to the status of Plaintiffs' internal review and asking that any remaining funds be paid as soon as possible, but again did not specify any date or imply, threaten, or assert a default. Plaintiffs' counsel communicated to Company counsel that Plaintiffs' investigation had been initiated as requested. In addition, on May 15, Neuberger stated in a text message to Etchegoyen that he was looking into the issue while expressing dismay that Shanus, the Company's manager, did not know the status of called capital.

79. On May 28, after identifying how much capital from Plaintiffs Shanus had yet to call, Plaintiffs' counsel communicated the same to Defendants and sought Shanus' confirmation. Later that day, ABN II wire transferred the balance of the fundin [Text redacted in copy] to the Company.

## I. **Defendants' Fraudulent Concealment of their Intention to Claim a Default.**

80. At no time between the May 14 communication and May 28, when payment was made by ABN II, did Defendants again request or demand payment of any unfunded amount, or specify a date as of which any such payment (the amount of which was unknown to Shanus) would be viewed as delinquent. This was the case despite continual daily communications between the parties occurring during that period. For certain, at no time did Defendants suggest, imply, threaten, or claim that a default existed or was impending. Instead, Defendants laid in wait while fraudulently negotiating the 2021 Operating Agreement during such time period, with the intention of declaring their bogus default, reallocation, and subordination assertions immediately upon effectiveness of the 2021 Operating Agreement.

81. Defendants were not only silent on the issue during this period, they and Company counsel, acting solely in furtherance of Defendants' interests, affirmatively concealed their intentions to declare a default by declining to respond to Plaintiffs' communications on the outstanding payment subject, while Defendants at the same time falsely affirmatively represented that Plaintiffs' economic interests would be preserved intact under the amended operating agreement, well aware that Plaintiffs would rely on such representations in agreeing to enter into the 2021 Operating Agreement.

82. For example, on May 26-just two days before the parties would sign the 2021 Operating Agreement-Shanus (who was manager, and would sign the 2021 Operating Agreement on behalf of the Company and Capital Partners) affirmatively misrepresented that Plaintiffs' membership interests would remain unchanged under the new agreement, noting in an email that, under Defendants' proposal, "like the other preferred [i.e., the Class C Units and Super Priority Units], the BP unpaid preferred will roll-forward on the same terms and will be senior in the waterfall." That same day, Defendants sent Plaintiffs a spreadsheet documenting preservation of Plaintiffs' economic interests. At no point did Defendants state or imply that they, Company insiders, planned to declare a default and attack the very economic interests they had assured (and documented in the 2021 Operating Agreement) would be preserved.

83. On Thursday, May 27, Plaintiffs' counsel emailed Shanus and the Company's counsel that ABN II intended to fund the balance of the Super Priority Units as previously requested "by Tuesday [June 1 (the first business day after Memorial Day)], at the latest." Despite continual emails between the parties at that time, neither Defendants nor Company counsel responded to the message, though it was received by Defendants and the Company's counsel. To be sure, neither Defendants nor Company counsel advised Plaintiffs or Plaintiffs' counsel that such payment was tardy, let alone that any delay constituted a "default."

84. On May 28 (at 12:36 PM EST), Plaintiffs' counsel emailed Defendants and Company counsel the results of Plaintiffs' investigation (that [Text redacted in copy] not a higher amount that Shanus had posited, remained to be called for funding),

with a reconciliation of the two amounts and stating that ABN II intended to pay the remaining funding amount determined by Plaintiffs' investigation. Plaintiffs' counsel's email sought confirmation of the foregoing and requested wiring instructions for payment. Despite continual emails between the parties at that time, Defendants did not respond to the message, though Defendants received the message.

85. Two hours later (2:36 PM EST), Plaintiffs' chief financial officer emailed Shanus and Etchegoyen what he believed to be the correct wire instructions based on previous fundings, and again asked for confirmation of same. Despite continual emails between the parties at that time, Defendants did not respond to the message, though Defendants received the message.

86. Shortly thereafter (2:57 PM EST), Plaintiffs' counsel emailed Company counsel, "Can you follow up on [Plaintiffs chief financial officer's earlier email]? We have a wire teed up but running out of time." The "running out of time" referred to getting the wire sent before close of business on May 28 (the Friday before Memorial Day weekend). Despite continual emails between the parties at that time, Company counsel did not respond to the message, though Company counsel had received the message.

87. At (4:18 PM EST), as the wire deadline before the long holiday weekend approached, and despite still having received no response from Defendants or Company counsel, Plaintiffs' chief financial officer released the [Text redacted in copy] wire transfer, and emailed Shanus and Etchegoyen that the wire had been sent, asking for confirmation of its receipt. Despite continual emails between the parties, neither Defendants nor Company counsel responded to the message, though Defendants and Company counsel had received the message (and responded to other emails in the same email chain) and the wire was successfully sent.

88. Defendants' silence on the subject is telling. The parties were invirtual constant email communication on May 28 in an effort to sign the 2021 Operating Agreement and close the [Text redacted in copy] Financing. There is no legitimate reason why Defendants did not respond to Plaintiffs' requests, other than that Defendants knew that if they had disclosed their fraudulent plans, including their misrepresentation that Plaintiffs' interests would roll forward on the same terms, or had declared the bogus default prior to execution of the 2021 Operating Agreement, or had disclosed that Defendants had been lying to Plaintiffs regarding honoring and preserving Plaintiffs' economic interests, Plaintiffs would never have executed the 2021 Operating Agreement.

89. Moreover, Shanus, as manager of the Company, owed a duty to Plaintiffs to disclose material facts, such as that Defendants planned, upon execution of the 2021 Operating Agreement, to send a default notice to Plaintiffs with respect to ABN II's funding obligations or that Defendants planned to seek to otherwise undermine Plaintiffs' economic interests, contrary to Shanus' affirmative representations and assurances only 48 hours earlier, well aware that Plaintiffs had relied on the truth and accuracy of Shanus' prior representations and assurances, and that Plaintiffs were unaware of the material nondisclosures that Shanus was concealing. Despite this duty, Shanus purposely breached his duty to disclose his plans to send the bogus default notice and to otherwise seek to undermine Plaintiffs' economic interests, waiting until after securing a purported limited release for his prior misconduct through execution of the 2021 Operating Agreement.

**J. Defendants' Fraudulent Scheme is Exposed.**

90. The 2021 Operating Agreement became effective at approximately 4:20 PM (EST) on May 28, shortly after the [Text redacted in copy] wire was sent and concurrent with closing of the [Text redacted in copy] financing. Less than ten minutes later, at 4:27 PM (EST), Defendants suddenly delivered their pre-drafted bogus notice of default, reallocation, and subordination. [16]

91. The default notice, on its face, confirmed that it had been furtively prepared by Defendants in advance as they lay in wait for the 2021 Operating Agreement to become effective, particularly since it conspicuously and disingenuously omitted any reference to the fact that the ABN II funding already had occurred. The notice was also replete with self-serving, inaccurate, and baseless statements.

92. Viewed in context, Shanus' May 28 notice represents nothing more than Defendants' attempt to fraudulently misappropriate Plaintiffs' equity interests and attempt to hide behind a fraudulently obtained limited release. With new financing in hand, Defendants, litigators by trade, figured they had nothing to lose by attacking Plaintiffs' equity using fictitious claims in conflict with their own prior conduct and representations, and at odds with the controlling corporate documents, to advance their own financial self-interest. In doing so, and in engaging in self-dealing in the process, they also blatantly disregarded their duties as controlling members and as manager of the Company.

### K. **Defendants' May 28 Default Notice Lacks Any Textual or Logical Basis.**

93. Defendants' default notice had no basis in either operating agreement or any prior course of dealing between the parties. As discussed above, no "default" ever occurred. ABN II funded all amounts requested by Shanus promptly following each such request, including the May 28 funding in response to Shanus' inquiry received 11 business days earlier. In addition, even assuming, *arguendo,* a default existed (one did not), the default would have been cured by ABN II's funding as neither operating agreement provided for an inability to cure. Moreover, even assuming, *arguendo,* an uncurable default existed (one did not), neither operating agreement provided any justification-explicit or implicit-for the reallocation remedy asserted by Defendants. Even applying Defendants' manufactured remedy of reallocating Super Priority Units and Capital Redemption Units to other members that "fully participated" in such issuances would lead to a different result since Plaintiffs are the only parties that in fact fully participated (accounting for more than [Text redacted in copy] of the Super Priority Units and [Text redacted in copy] of Capital Redemption Units). Defendants participated in less than [Text redacted in copy] of the Super Priority Unit issuance and did not participate at all in the Capital Redemption Unit issuance. Accordingly, any hypothetical reallocation would result in Plaintiffs holding virtually all of the reallocated units. The absurdity of Defendants' reallocation assertion is only outdone by the absurdity of their subordination assertion, in which Defendants appear to be ascribing wholly made-up, unwritten terms to the Capital Redemption Units.

94. Plaintiffs quickly made known their vehement disagreement with Shanus' May 28 default notice. By letter dated June 3, 2021, Plaintiffs clearly articulated that ABN II had fully and timely funded every dollar of its commitments in respect of all of its membership units, and that the assertion of a default by ABN II and effort to deprive ABN II of its rightful ownership of the same constituted a breach of fiduciary duties, [17] and a breach of the operating agreements (both the 2019 Operating Agreement and the 2021 Operating Agreement). [18] Plaintiffs further noted that nothing in either the 2019 Operating Agreement or the 2021 Operating Agreement provided a basis for any of the positions taken in Shanus' default notice.

95. Nearly two weeks later, on June 16, Defendants responded with nothing but generalizations, misstatements, and flat-out falsities, including:
• Without further explanation again erroneously and generically pointed to Section 4.2 of the 2019 Operating Agreement as providing authority for their actions;

• Incorrectly and without basis or support characterized the [Text redacted in copy] buy-out as a compulsory transaction in order for ABN II to avoid dilution;

• Contrary to the parties' prior course of conduct and documentation, incorrectly argued that ABN II did not have the right to pay its share of the December capital raise on a delayed basis;

• Baselessly claimed that ABN II's "delay" in funding somehow undermined the entire purpose of the December capital raise and was a tactic to somehow extract leverage over the Company, ignoring the fact that the funds had never been requested prior to May 13 and represented only approximately [Text redacted in copy] of the aggregate Super Priority Unit commitments;

• Falsely claimed that Plaintiffs had been warned "repeatedly" about a purported breach and the consequences thereof, none of which is true; and

• Falsely and without reference to any provision of any applicable governing document, claimed that ABN II agreed that the Capital Redemption Units were subject to subordination terms that Defendants claim were applicable to as holders of their membership interest in Capital Partners. [19]

96. Defendants' June 16 letter also indicated that Defendants had taken affirmative steps to effectuate their misappropriation of the Capital Redemption Units and Super Priority Units. In the letter, Defendants stated that "[a]s no other member agreed to subscribe for the units, Capital [Partners] will exercise its rights for [Text redacted in copy] of the subject units as previously noticed." To the extent this escalation by Defendants involved an affirmative reallocation of ABN II's Super Priority or Capital Redemption Units, it is not only incorrect (as noted above, Defendants in their June 3 letter elected-without prejudice and subject to a full reservation of rights-to subscribe for all units in the event of any reallocation), but a further breach of the 2021 Operating Agreement to the extent it is deemed controlling. Further, Defendants' statement was factually incorrect, as Plaintiffs' June 3 letter explicitly made clear that in the event such a reallocation were to occur (without prejudice and subject to a full reservation of Plaintiffs' rights), Plaintiffs would elect to subscribe for all units being reallocated. [20]

97. Since June 16, 2021, upon information and belief, Defendants have continued to engage in conduct designed to attempt to misappropriate Plaintiffs' valuable equity interest in the Company, including by failing to provide the financial and tax documentation and ongoing disclosures required under the 2019 Operating Agreement, and 2021 Operating Agreement to the extent it is deemed controlling, despite repeated demands. Defendants' continuing failure to provide required financial and tax disclosure to Plaintiffs is part of Defendants' ongoing misconduct designed to separate Plaintiffs from their interests in the Company and misappropriate value attributable to those interests. In addition, Defendants have continued their campaign of self-dealing and breach by providing indemnification to Shanus without proper authorization and in violation of the express terms of the 2019 Operating Agreement (and 2021 Operating Agreement should it not be determined to be null and void *ab initio*) and issuing new membership interests in the Company to Capital Partners at values wholly determined by Capital Partners.

## CAUSES OF ACTION

### COUNT I

**(Declaratory Judgment-Ownership of Capital Redemption Units and Super Priority Units-Against All Defendants)**

98. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

99. An actual controversy exists with respect to the rights and obligations of the parties, including their rights and obligations under the 2019 Operating Agreement and the 2021 Operating Agreement. In the event the Court determines that the 2021 Operating Agreement was secured by fraud and should be declared null and void *ab initio,* it will not be necessary for the Court to otherwise reach and determine the parties' rights under the 2021 Operating Agreement. In the event, however, that the Court determines that the 2021 Operating Agreement was not secured by fraud, only those portions of the 2019 Operating Agreement that survived under the 2021 Operating Agreement need be enforced. Plaintiffs are entitled to a declaration having the force and effect of having a final judgment or decree pursuant to 10 Del. C. § 6501, et seq.

100. In December 2020, ABN II agreed to purchase the Capital Redemption Units for [Text redacted in copy]. The terms of the transaction were set forth in the Second Amendment to the 2019 Operating Agreement, pursuant to which Plaintiffs purchased the Capital Redemption Units.

101. On January 5, 2021, ABN II paid [Text redacted in copy] to complete its acquisition of the Capital Redemption Units.

102. ABN II was allocated Super Priority Units on account of its ownership of Capital Redemption Units and agreed to fund the associated capital commitment as and when called by the Company's manager-Shanus. ABN II timely funded all amounts requested by Shanus, including following his May 13 inquiry.

103. Issuance of the Capital Redemption Units and Super Priority Units was in each case pursuant to and governed by Sections 3.2 and 8.1 of the 2019 Operating Agreement, with the rights of members with respect to the exclusive issuance of Capital Redemption Units to ABN II waived by each member's voluntary entrance into the Second Amendment.

104. Neither of those sections, nor Section 4.2 of the 2019 Operating Agreement, upon which Defendants improperly rely, contain any funding terms, basis for declaring a default, or remedy in the event of a breach by a member of its funding obligations. At most, Defendants would be entitled to pursue payment if Plaintiffs had in fact defaulted on a payment, which Plaintiffs did not.

105. Defendants' May 28, 2021 notice purporting to assert a default and a right to reallocate ABN II's Capital Redemption Units and Super Priority Units thus has no basis in the text of the applicable agreements or otherwise.

106. Defendants' claim of default, while factually and legally erroneous and without merit, is also barred by the doctrines of acquiescence, ratification, estoppel, and waiver.

107. Plaintiffs are entitled to a declaration, *inter alia,* from this Court that:
• ABN II properly complied with all funding obligations with respect to the Capital Redemption Units and Super Priority Units;

• Defendants' assertion of default and purported reallocation is null and void *ab initio;*

• To the extent Defendants have reallocated any of the Capital Redemption Units or Super Priority Units, such reallocation is null and void *ab initio;* and

• Plaintiffs' ownership of the Capital Redemption Units and Super Priority Units for which they fully subscribed and funded remains unchanged.


## COUNT II

### (Declaratory Judgment-Subordination of Capital Redemption Units-Against All Defendants)

108. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109. On December 31, 2020, the members of the Company entered into the Second Amendment providing ABN II (as an Approved ABN Affiliate) the exclusive right to purchase the Capital Redemption Units. ABN II completed the purchase of the Capital Redemption Units on January 5, 2021 through payment of [Text redacted in copy] to the Company. The proceeds of such issuance were distributed to Capital Partners and used by Capital Partners to redeem the membership interest of one of its members [Text redacted in copy], for [Text redacted in copy]

110. The redemption of [Text redacted in copy] membership interest in Capital Partners was completed on January 5, 2021 pursuant to a Redemption Agreement between [Text redacted in copy] and Capital Partners whereupon the redeemed membership interest in capital partners was canceled and retired.

111. Plaintiffs are not and have never been party to any agreement by or between the members of Capital Partners, including with respect to allocation of any interests in the Company or dilution or subordination associated therewith.

112. As part of their effort to misappropriate Plaintiffs' membership interests, Defendants have asserted a right to subordinate Plaintiffs' interest in the Company's distributions in respect of the Capital Redemption Units, despite the lack of any contractual or other basis for doing so.

113. Plaintiffs are entitled to a declaration, *inter alia,* from this Court that:
• Defendants may not, through the Second Amendment, the 2019 Operating Agreement, the 2021 Operating Agreement, or otherwise, subordinate ABN II's entitlement to Company distributions on account of the Capital Redemption Units;

• Plaintiffs are not responsible for payment of the "ABN Advance" or "ABN II Advance" as defined in the 2021 Operating Agreement (in the event the Court determines such agreement is not null and void *ab initio);* and

• The Capital Redemption Units are not subject to any terms not expressly included within the Second Amendment, including any subordination terms to which [Text redacted in copy] interest in Capital Partners may have been subject.


## COUNT III

### (Fraudulent Inducement-Against All Defendants)

114. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115. In May 2021, the parties negotiated the terms of the 2021 Operating Agreement, the critical elements of which involved preservation of Plaintiffs' economic interests and their willingness, subject to preservation of such economic interests, to forgo important minority protections within the 2019 Operating Agreement, and to grant Defendants a limited release. Defendants understood that Plaintiffs' central concern was preservation of their economic interests, and Defendants assured Plaintiffs that Defendants had agreed to this core concern, and the parties documented the 2021 Operating Agreement on that basis.

116. As part of the negotiations leading to execution of the 2021 Operating Agreement, Defendants (through Shanus), Company insiders, made affirmative representations regarding preservation of Plaintiffs' economic interest.

117. Defendants' representations to Plaintiffs were false when made, and were known by Defendants, at the time they were made, to be false.

118. Despite their representations, Defendants, who owed a duty to Plaintiffs, concealed that they intended to assert a bogus "funding default" immediately upon execution of the 2021 Operating Agreement and reallocation of ABN II's membership interests-the very economic interests the parties had just agreed were preserved.

119. Such material misrepresentations and nondisclosures were designed to induce Plaintiffs to enter into the 2021 Operating Agreement and thereby forgo their minority protections and grant Defendants a limited release.

120. Plaintiffs relied on Defendants' material misrepresentations and nondisclosures, as alleged herein, in executing the 2021 Operating Agreement.

121. Defendants also knew that had they, as Company insiders, disclosed their intention to declare a default and reallocation of ABN II's membership interest, which they had a duty to disclose, Plaintiffs would never have agreed to the 2021 Operating Agreement.

122. Plaintiffs were damaged by Defendants' fraudulent misrepresentations and concealment of material information upon execution of the 2021 Operating Agreement, when, minutes after its execution, Defendants declared a purported default and reallocation.

123. As a result of this fraudulent inducement, the entire 2021 Operating Agreement was procured by fraud, should be declared null and void *ab initio,* and the parties' 2019 Operating Agreement reinstated to govern the parties' rights and obligations.

## COUNT IV

### (Breach of Fiduciary Duties-Against Shanus and Capital Partners)

124. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

125. Shanus (as manager) and Capital Partners (as the controlling member of the Company) owe fiduciary obligations to Plaintiffs under the 2019 Operating Agreement, which should be reinstated due to Defendants' fraud as alleged herein, and under common law and the Delaware Limited Liability Company Act (as well as under the 2021 Operating Agreement in the event it is not determined to be null and void *ab initio*) [21] Defendants have breached, and if not enjoined, will continue to breach those duties, as alleged herein.

126. Beginning in March 2021, Shanus and Capital Partners have demonstrated an ongoing willingness to breach their obligations under the 2019 Operating Agreement to not engage in self-dealing bad faith conduct, including but not limited to:
• Entering into a letter of intent and breakup fee agreement with [Text redacted in copy] that intentionally disadvantaged Plaintiffs and personally enriched Shanus and Etchegoyen, violating express minority protections under Section 6.2 of the 2019 Operating Agreement;

• Attempting to coerce BP Terrier to forgo its contractual minority protections under Section 6.2 of the 2019 Operating Agreement and by forcing Plaintiffs to accept a significant reduction in economic value for its membership interests while negotiating the financing; and

• Negotiating the [Text redacted in copy] financing and 2021 Operating Agreement in bad faith by misrepresenting their intentions regarding the parties' membership interests and seeking to induce Plaintiffs' agreement with full knowledge of their intended misappropriation of Capital Redemption Units and Super Priority Units.

127. Each of these acts constituted self-dealing and bad faith conduct by Shanus and Capital Partners, deliberately with the intention of enriching Shanus, Etchegoyen, and Capital Partners at Plaintiffs' expense.

128. In the event, *arguendo,* the 2021 Operating Agreement is not determined to be null and void *ab initio,* Section 4.3 of the 2021 Operating Agreement, the common law, and the Delaware Limited Liability Company Act similarly impose fiduciary duties on Defendants for their conduct since May 28, 2021, including but not limited to a duty to avoid acting in bad faith, or otherwise engaging in fraudulent or intentional misconduct. Defendants have violated, and if not enjoined, will continue to violate those duties, including through further fraudulent and bad faith misconduct, as alleged herein.

129. Defendants have engaged in multiple bad faith efforts since entry into the 2021 Operating Agreement. These improper actions began immediately after the parties completed the [Text redacted in copy] financing and signed the 2021 Operating Agreement, when Defendants disclosed their fraudulent attempt to reallocate membership interests which Plaintiffs had purchased and paid for months earlier, solely to enrich Capital Partners and its members.

130. Moreover, in their June 16 letter, Defendants further stated that they had taken, or will shortly take steps to complete their misappropriation and reallocation of the Capital Redemption Units and Super Priority Units to themselves. Such action constitutes a clear and willful breach of the fiduciary duties owed under the 2019 Operating Agreement and, to the extent it is not determined to be null and void *ab initio,* the 2021 Operating Agreement.

131. Defendants have also failed to provide required financial disclosures, including the Schedule K-1 of federal Form 1065, to be provided after the end of each fiscal year, as well as audited financial statements required under both the 2019 Operating Agreement and, if it is not determined to be null and void *ab initio,* 2021 Operating Agreement, despite repeated demands. In addition, Defendants have continued their campaign of self-dealing and breach by providing indemnification to Shanus without proper authorization and in violation of the express terms of the 2019 Operating Agreement (and 2021 Operating Agreement should it not be determined to be null and void *ab initio*) and issuing new membership interests in the Company to Capital Partners at values wholly determined by Capital Partners.

132. Upon information and belief, Defendants either are continuing to take steps to deprive Plaintiffs of their ownership and rights to the Capital Redemption Units and Super Priority Units or have improperly transferred such Units to themselves or to affiliates of Defendants, or to third parties in contravention of Plaintiffs' rights, and in an effort to further misappropriate Plaintiffs' interests.

133. Such actions constitute, at a minimum, willful misconduct and bad faith conduct, and are breaches of the fiduciary duties owed by Defendants pursuant to Section 6.4(a) of the 2019 Operating Agreement, and to the extent it is not determined to be null and void *ab initio,* Section, 4.3 of the 2021 Operating Agreement.

134. While Plaintiffs have the right under both the 2019 Operating Agreement and 2021 Operating Agreement to assert claims for breach of fiduciary duty directly, in the event, *arguendo,* it is determined that this claim is derivative, a demand to pursue such claim would be plainly futile. Under the 2019 Operating Agreement, Shanus acted as manager as chosen by the majority member, Capital Partners. As alleged herein, Capital Partners is controlled by Shanus and his business partner, Etchegoyen.

135. Demand would be similarly futile under the 2021 Operating Agreement (in the event it is not determined to be null and void *ab initio*), under which Capital Partners (again, controlled by Shanus and Etchegoyen) controls the Company as holder of a majority of the ascribed percentage interests.

136. Whether Shanus controlled the Company as manager or Capital Partners controlled the Company as majority member, it is indisputable that those in control of the Company and its finances are the same individuals and entities whose actions are challenged in this suit, and who stand to directly benefit from Defendants' improper actions.

137. There are no independent members or representatives.

138. Demand would thus plainly be futile to the extent required by law.

139. Defendants' bad faith acts, taken individually and cumulatively-and regardless of which operating agreement the Court ultimately deems controlling, violate Defendants' fiduciary duties to Plaintiffs.

140. As a direct result of these breaches, Plaintiffs have suffered and will continue to suffer damages and irreparable harm unless Defendants are enjoined from continuing to breach their obligations.

141. Unchecked, Defendants, as alleged herein, will continue to manage and operate the Company to fraudulently advance their own interests, engage in further self-dealing, and use every opportunity to seek to improperly enrich themselves at Plaintiffs' expense. Defendants must therefore be enjoined from committing any further bad faith actions or breaches of their fiduciary duties. Further, Plaintiffs are entitled to an order requiring Defendants to disgorge any benefits they have obtained as a result

of their breaches of fiduciary duty and an unwinding of any transfers they have effectuated in breach of their fiduciary duty. In addition, Plaintiffs are entitled to damages in an amount to be determined at trial.

## COUNT V

### (Breach of Contract–Against All Defendants)

142. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

143. The 2019 Operating Agreement and, should it not be determined to be null and void *ab initio,* the 2021 Operating Agreement, define the rights and obligations of the parties, as alleged herein.

144. Defendants repeatedly have breached and continue to breach their contractual obligations under the 2019 Operating Agreement, and should it not be determined to be null and void *ab initio,* the 2021 Operating Agreement.

145. In both the May 28, 2021 notice and their June 16, 2021 letter, Defendants made clear that they either have, or imminently intend to breach their contractual obligations to Plaintiffs by improperly appropriating and reallocating Plaintiffs' Capital Redemption Units and Super Priority Units. Moreover, Defendants have improperly attempted to subordinate Plaintiffs' entitlement to distributions from Company proceeds. Defendants have also failed to provide timely disclosures of critical financial and tax information as required by the operating agreement as alleged herein. Further, as alleged in Count VIII below, Defendants are further impairing the value of Plaintiffs' interests through issuance to themselves of additional membership interests in breach of their contractual obligations.

146. Such action constitutes a clear and willful breach of the duties owed under both the 2019 Operating Agreement and the 2021 Operating Agreement. To the extent such action has taken place, Plaintiffs are entitled to an order from the Court directing the return and reinstatement of all of Plaintiffs' membership interests and economic rights and benefits. Plaintiffs are also entitled to an order requiring Defendants to disclose all required financial and tax information. Defendants also should be required to disgorge any monetary compensation received as a result of their improper misappropriation of such units and to cease taking steps to further steps to dilute Plaintiffs' interests or otherwise engage in conduct in breach of the contractual rights owed by Plaintiffs.

## COUNT VI

### (Aiding and Abetting Breach of Fiduciary Duty–Against Shanus)

147. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

148. To the extent the Court determines the 2021 Operating Agreement controlling, Shanus, in his capacity as manager of Capital Partners, was aware of, and knowingly caused Capital Partners to undertake, the fraudulent conduct and breaches of fiduciary duty alleged herein.

149. As alleged herein, Shanus was a knowing and active participant-if not the driving force-in every one of Capital Partners' and the Company's improper actions, including engaging in bad faith negotiations and declaring of a bogus default and reallocation. Shanus was Plaintiffs' primary Company and Capital Partners contact throughout the negotiation of the 2021 Operating Agreement, signed the 2021 Operating Agreement on behalf of both Capital Partners and the Company, signed Defendants' purported default notice on May 28 (on behalf of Capital Partners as manager of the Company), and was copied on every email related to this dispute prior to litigation. Upon information and belief, Shanus was the orchestrator behind the

Company's and Capital Partners' actions as alleged herein prior to May 28, 2021, on May 28, 2021, and since May 28, 2021, and repeatedly has taken and continues to take actions through his position at Capital Partners and within the Company to effectuate Defendants' fraudulent conduct and breaches of fiduciary duty alleged herein.

150. To the extent Shanus is not deemed individually liable for his actions and those he directed as a controlling member of Capital Partners, Shanus was and continues to be a knowing participant in Capital Partners' and the Company's improper actions and should be responsible for aiding and abetting those actions.

## COUNT VII

### (Declaratory Judgment-Plaintiffs' Entitlement to Indemnification-Against All Defendants)

151. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

152. Plaintiffs are entitled to indemnification pursuant to Section 6.5 of the 2019 Operating Agreement which provides for indemnification of any person who is engaged in litigation by virtue of the fact that they are a member of the Company, as well as advancement pursuant to Section 6.6 of the 2019 Operating Agreement. If the 2021 Operating Agreement is determined to be controlling, Plaintiffs are entitled to indemnification and advancement under Section 11.2 of that agreement, which provides indemnification and advancement for members for "Claims" in which the member may be involved relating to or arising out of the Company or its affairs.

153. In both instances, Shanus' May 28, 2021 default and reallocation notice constitutes the type of claim and threatened loss for which Plaintiffs are entitled to indemnification and advancement.

154. Plaintiffs thus seek a declaration that they are entitled to indemnification and advancement for this action.

## COUNT VIII

### (Declaratory Judgment-No Indemnification for Defendants-Against All Defendants)

155. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

156. Neither Shanus nor any other Defendant is entitled to indemnification under Section 6.5 of the 2019 Operating Agreement which precludes indemnification upon a court order that the acts or omissions "constituted fraud, gross negligence or a knowing violation of law." If the 2021 Operating Agreement is deemed controlling, however, Section 11.2 of that agreement similarly precludes indemnification for claims "with respect to which a court of competent jurisdiction has determined that [the Defendant] has engaged in fraud, willful misconduct, bad faith or gross negligence."

157. As described herein, Defendants have repeatedly engaged in fraudulent behavior and self-dealing, constituting both willful misconduct and bad faith.

158. Since the filing of the original Complaint in this action, Defendants have continued their self-dealing and efforts to diminish the value of Plaintiffs' membership interests by issuing or proposing to issue new membership interests to themselves in breach of the 2019 Operating Agreement and, if determined to be controlling, the 2021 Operating Agreement. Further, Defendants have issued and propose to continue to issue such new membership interests to themselves at values wholly determined by them, without any third-party valuation or other protection against self-dealing. Defendants conduct in such regard itself constituted a further breach of the Defendants' obligations under the operating agreements.

159. Plaintiffs thus seek a declaration that:

• Defendants are not entitled to indemnification in this action, and Defendants shall reimburse the Company for any amounts previously advanced pursuant to a purported advancement or indemnification entitlement;

• Defendants may not use a purported indemnification claim or advancement claim by Shanus (or by any other Defendant) as a basis for issuing additional membership interests in the Company.

• To the extent that Defendants already have issued membership interests in the Company for the purpose of funding indemnification or advancement on behalf of Shanus (or any other Defendant), such issuances should be declared null and void *ab initio*.

## COUNT IX

**(Determination of Rightful Manager Pursuant to 6 Del. C. § 18-110-Against All Defendants)**

160. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

161. Under *6 Del. C. § 18-110*, the Court of Chancery has authority to hear and determine the rights and obligations of the parties to an LLC agreement related to the "validity of any admission, election, appointment, removal or resignation of a manager."

162. In the event that the 2021 Operating Agreement is declared null and void *ab initio,* Plaintiffs are entitled to immediately remove Shanus as manager and appoint a new manager. The 2019 Operating Agreement defines a Cause Event as occurring, in relevant part, when a manager breaches a material provision of the Agreement, which includes taking any action "conditioned upon receipt of Member Approval without first obtaining Member of Approval."

163. Pursuant to Section 6.2(a) of the 2019 Operating Agreement, unanimous consent of all Members is required for, among others, incurring any obligation or the making or extension of any indebtedness other than in furtherance of the budget, acquiring or disposing of any assets, entering into any agreement, or otherwise transacting business with a Member or any Affiliate of a Member, or permitting the transfer of membership interests other than in accordance with the terms of the 2019 Operating Agreement. *Id.* Pursuant to Section 6.2(b) of the 2019 Operating Agreement, Member Approval may only be sought through written notice that provides "such information as is necessary for the Member's to make an informed decision with respect to such matter." *Id.*

164. By entering into the [Text redacted in copy] letter of intent and Fee Agreement with [Text redacted in copy] , Shanus undisputedly violated Section 6.2(b) by, *inter ilia,* causing the Company to incur obligations that were not consistent with any budget.

165. Further, by failing to provide Plaintiffs with all necessary information, such as Defendants' intent to reallocate shares immediately after entry into the 2021 Operating Agreement and the belated assertion of a default, any approval by Plaintiffs was necessarily deficient and not sought in compliance with Section 6.2(b).

166. Having failed to properly seek or obtain Member Approval for its actions, Defendants have triggered a Cause Event under the 2019 Operating Agreement.

167. Upon a Cause Event triggered by the Majority Member or manager, Section 6.1(b) of the 2019 Operating Agreement vests the Minority Member with the exclusive right to remove and replace the manager.

168. Pursuant to that authority, Plaintiffs respectfully request a declaratory judgment that Plaintiffs have proper authority to remove Shanus from his position as manager of the Company and appoint a properly chosen manager in accordance with the terms of the governing agreement. [22]

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court award the following relief:

a) A declaration, *inter alia,* (i) that Plaintiffs have properly complied with all funding obligations with respect to the Capital Redemption Units and Super Priority Units, (ii) that Defendants' assertion of default and purported reallocation is null and void *ab initio,* (iii) that any such reallocation is null and void *ab initio* and Defendants required to disgorge to Plaintiffs any interests taken from Plaintiffs, and (iv) that Plaintiffs are the proper owners of the Capital Redemption Units and the Super Priority Units at issue, and that Plaintiffs' economic rights and interests be fully restored;

b) A declaration, *inter alia,* (i) that Plaintiffs' entitlement to distributions are not subordinate in any respect other than as expressly provided in the 2019 Operating Agreement or, in the event not determined to be null and void *ab initio,* the 2021 Operating Agreement, and are not otherwise subject to any terms which may have been applicable to the membership interest in Capital Partners previously held by [Text redacted in copy];

c) An order declaring that Plaintiffs' entry into the 2021 Operating Agreement was induced through fraudulent means, and is thus null and void *ab initio,* making Shanus liable for damages for his personal fraudulent inducement of Plaintiffs, and reinstating the 2019 Operating Agreement as the document governing the parties' obligations;

d) An order directing Defendants to cease engaging in fraudulent, bad faith or willful misconduct, including self-dealing, in breach of their fiduciary duties under the 2019 Operating Agreement, or in the event that it is not declared null and *void ab initio,* the 2021 Operating Agreement;

e) An injunction, *inter alia,* enjoining Defendants from further breaching their agreements with Plaintiffs with respect to the Capital Redemption Units and the Super Priority Units, including by reallocating or diluting any of Plaintiffs' interests, voiding any such reallocation or dilution *ab initio,* as well as directing Defendants to promptly provide to Plaintiffs the financial and tax information required to be disclosed to Plaintiffs, and further directing that no distributions shall be made by the Company other than as directed by this Court and issuing such further injunctive relief against Defendants as may be warranted, and alternatively, awarding Plaintiffs damages to the extent injunctive relief cannot make Plaintiffs whole.

f) An order declaring that, to the extent not primarily liable in his own capacity, Shanus aided and abetted Defendants' breaches on and after May 28, 2021, and enjoining Shanus from engaging in any further such misconduct and awarding damages against Shanus personally for such aiding and abetting liability.

g) A declaration that Plaintiffs are entitled to indemnification and advancement from the Company;

h) A declaration that neither Shanus nor any other Defendant is entitled to indemnification or advancement from the Company due to their bad faith acts and intentional misconduct, and requiring Defendants to disgorge any amounts previously so advanced, and directing that any issuances of membership interests in the Company undertaken for such purpose be declared null and void *ab initio* and that any such further proposed issuances are enjoined;

i) A declaration pursuant to 6 *Del. C.* § 18-110 that a Cause Event occurred under the definition contained within the 2019 Operating Agreement as a result of Defendants' breaches and malfeasance, and that BP Terrier is within its rights pursuant to Section 6.1 (b) of the 2019 Operating Agreement to immediately remove Shanus as manager and appoint a manager of its choosing; **j)** An order issuing such other preliminary or permanent equitable relief as may be warranted to ensure that Defendants

cease any further breaches of their fiduciary and contractual duties owed to Plaintiffs, that Plaintiffs' rights be fully restored, and that Defendants otherwise be enjoined from further breach of their duties and contractual obligation to or with Plaintiffs;

k) An order awarding Plaintiffs punitive damages for any conduct by Defendants determined by the Court to warrant imposition of punitive damages;

1) Reasonable costs and attorneys' fees incurred in prosecuting this action; and

m) Such other relief as the Court deems just and proper.

OF COUNSEL:

Sigmund S. Wissner-Gross

Seth D. Fiur

BROWN RUDNICK LLP

Seven Times Square

New York, NY 10036

(212) 209-4800

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ C. Barr Flinn*

C. Barr Flinn (#4092)

Alberto E. Chávez (#6395)

Rodney Square

1000 North King Street

Wilmington, DE 19801

(302) 571-6600

*Attorneys for Plaintiffs*

Dated: February 15, 2022

## Footnotes

1       Presumably Shanus was referring to a class of membership interest issued in December 2020 called "Super Priority Units."

2       Etchegoyen has been Shanus' business partner, and in regular communication with Shanus, at all relevant times, and upon information and belief, Etchegoyen has been fully aware of, and supportive of the improper actions taken by Shanus as alleged in this Complaint, which were designed by Defendants to benefit both Shanus and Etchegoyen. In the event discovery confirms that Etchegoyen knowingly aided and abetted and/or participated in Shanus' misconduct, Plaintiffs reserve the right to further amend the Complaint to seek relief directly against Etchegoyen.

3       The loan was subsequently assigned to another affiliate of Plaintiffs, Terrier SSC, LLC.

4       The 2019 Operating Agreement defined Member Approval as "the unanimous written approval of both the Majority Member and the Minority Member; provided, however, that, from and after a Cause Event, Member Approval shall mean the written approval of only the Minority Member (without the need to obtain approval of, or to provide notice of the related action to, the Majority Member)." *Id.* at 8.

5       The 2019 Operating Agreement defined, as pertinent, a Cause Event as "breach by a Manager appointed by ... [Capital Partners] (including the initial Manager) (a *"Majority Member Appointee"*) of a material provision of [the 2019 Operating Agreement], including taking any action, or causing the Company to take any action, requiring or conditioned upon receipt of Member Approval without first obtaining Member Approval... and ... the failure of the Majority Member to remove and appoint a replacement Majority Member Appointee following (a) the commission of any act by a Majority Member Appointee constituting fraud or intentional material misrepresentation ...." *Id.* at 4.

6       Section 6.2 further provided that, with respect to any matter requiring Member Approval, if the members were unable to reach unanimity within twenty (20) days after the date as of which Member Approval was requested, either member (BP Terrier or Capital Partners) could initiate a sale of the Company in accordance with Section 10.1 of the 2019 Operating Agreement.

7       At the time of the Class C Unit issuance, Defendants communicated with Plaintiffs' principal, Andrew Neuberger, regarding whether Capital Partners would internally allocate to [Text redacted in copy] the dilutive effects of the Class C Unit issuance on Capital Partners. Notwithstanding those communications, neither Neuberger nor any Plaintiff was or is aware of whether or how any such proposed internal Capital Partners arrangement was implemented. To be certain, neither Neuberger nor any Plaintiff is or are party to any agreement or arrangement that may have been implemented among the members of Capital Partners to such effect.

8       ABN II's Super Priority Units were allocated to it as holder of the Capital Redemption Units as described below.

9       As noted herein, Defendants cite Section 4.2 in their May 28, 2021 notice as providing authority for their purported reallocation of ABN II's units. Section 4.2 was inapposite to the December 2020 unit issuances. Section 3.2 was operative as to the issuance of Super Priority Units and Capital Redemption Units.

11      In December 2020, for illustrative purposes only, Plaintiffs' counsel proffered a proposed hypothetical funding schedule for the Super Priority Units (which contemplated installment payments running through the end of March 2021), but Shanus, who initially ignored the emailed proposal, was not bound by the proposal and retained the flexibility to call the capital commitments as and when he determined. As was the case with the Class C Units, the parties understood

that Shanus would formally call for the funding when it was actually needed by the business. That is in fact exactly how funding occurred.

12    Shanus' hastily negotiated Fee Agreement did not include customary exceptions to the fee obligation and even required payment of the [Text redacted in copy] fee if [Text redacted in copy] (rather than the Company or Investments) determined not to consummate the [Text redacted in copy] financing.

13    Subject only to all equity holders at Investments and the Company experiencing the same dilutive effects as a result of equity issuances under the [Text redacted in copy] terms.

14    In reality, it appears that Shanus had determined to misappropriate Plaintiffs' equity through Defendants' default scheme. Shanus knew that, as manager of Capital Partners, he would be able to issue the bogus default notice as soon as the 2021 Operating Agreement was executed, and, as manager of the Company, he concealed his plans to do so from Plaintiffs during negotiation of the 2021 Operating Agreement.

15    The purported release in Section 13.16 includes an exception for "Claims" in respect of unpaid capital contributions and purports to reserve rights to enforce Article IV ("Capital Contributions") of the 2019 Operating Agreement. As noted herein, Article IV has no relevance to the default alleged by Defendants, as the purported default relates to capital commitment obligations under units newly-issued under Section 3.2 (not Article IV).

16    Shanus signed the notice as manager of Capital Partners.

17    In the June 3 letter, in response to Defendants' purported deadline for electing to purchase units in their purported reallocation, Plaintiffs, while fully reserving their rights, stated that without prejudice, "in the event any offer, re-issuance or sale of the" units at issue in this case were actually to take place, Plaintiffs elected to purchase [Text redacted in copy] of the reallocated units, with amounts previously paid by ABN II applied as a credit. In the event the Court finds Defendants' notice and attempted reallocation improper and invalid, and voids *ab initio* any such reallocation of units, and directs that such units be allocated to ABN II, it will be unnecessary for the Court to reach or consider Plaintiffs' June 3 conditional election.

18    Like Section 6.4 of the 2019 Operating Agreement, Section 4.3 of the 2021 Operating Agreement detailed the fiduciary duties imposed upon the Company's members and officers and imposes liability for "acts or omissions that involve fraud or intentional misconduct[.]" In the event the 2021 Operating Agreement is not held to be null and void *ab initio,* Defendants would be liable for their breaches of duty, *inter alia,* pursuant to Section 4.3.

19    For support of their position, Defendants point to a communication from more than three months *before* issuance of the Capital Redemption Units, in which Neuberger had suggested to Shanus and Etchegoyen how dilution might be allocated among the members of Capital Partners. As noted herein, Neuberger was not privy to what the members of Capital Partners agreed to internally, nor was he at any time a party to any agreement that may have been reached by members of Capital Partners with respect to their internal affairs.

20    Under Defendants' reallocation theory, the units purportedly must be reallocated pursuant to Section 4.2 of the 2019 Operating Agreement. That section provides for over-subscription rights of members who elected to participate fully in the relevant capital call. Plaintiffs' conditional election in its June 3 letter is based on the fact that, keeping with Defendants' theory, it was BP Terrier and ABN II that participated fully in the December 2020 capital raise, and only ABN II acquired Capital Redemption Units. Capital Partners only participated with respect to [Text redacted in copy] of its allocation in the December 2020 capital raise and did not participate at all in the issuance of Capital Redemption Units.

21    Section 6.4(a) of the 2019 Operating Agreement permits liability for acts involving "fraud, willful misconduct or bad faith" and self-dealing. Similarly, Section 4.3 of the 2021 Operating Agreement provides for liability on the basis of "acts or omissions that involve fraud or intentional misconduct" constituting a breach of fiduciary duty.

22    As part of the entry into the 2021 Operating Agreement, the Company went from a manager-managed LLC to a member-managed LLC. However, in the event the 2021 Operating Agreement is held to be void *ab initio,* the Company would remain a manager-managed LLC subject to the terms of the 2019 Operating Agreement; hence, the request to appoint a replacement manager

---

**End of Document**            © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 18

# EXHIBIT 19

EXHIBIT 20

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| WSOU Investments, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| Salesforce, Inc. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   6:20-cv-1163 ADA to -1172-ADA

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   WSOU Holdings, LLC C/O Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, DE 19958

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:
Attachment A

| Place: 1201 N Market St #1600<br>Wilmington, DE 19801 | Date and Time:<br>10/21/2022 |
|---|---|

The deposition will be recorded by this method:   Stenographer, videographer, and/or electronic means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  10/6/2022

| | |
|---|---|
| *CLERK OF COURT* | OR |
| | /s/ Olga Slobodyanyuk |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Salesforce, Inc.
, who issues or requests this subpoena, are:

Olga Slobodyanyuk, (650) 801-114, 555 Twin Dolphin Drive, 5th Fl., Redwood Shores, CA 94065
olgaslobodyanyuk@quinnemanuel.com, Quinn Emanuel Urquhart & Sullivan LLP

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   6:20-cv-1163 ADA to -1172-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

**ATTACHMENT A**

**<u>DEFINITIONS</u>**

1.      The instructions and requests below are subject to and incorporate the following definitions and instructions, regardless of whether upper or lower case letters are used:

2.      The term "WSOU Holdings" or "You" or "Your" shall mean WSOU Holdings, LLC, a Delaware Corporation; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

3.      The term "Plaintiff", "WSOU", or "Brazos," means Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other Persons acting on behalf of any of the foregoing, including Craig Etchegoyen, Stuart Shanus, and Plaintiff's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Plaintiff, and all predecessors and successors in interest to such entities.

4.      The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

5.     The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

7.     The term "Defendant" or "Salesforce" means salesforce.com, inc. and its officers, directors, counsel, agents, consultants, representatives, and any Persons acting on behalf of any of the foregoing, and affiliates, parents, divisions, joint ventures, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Salesforce, and all predecessor and successors to such entities.

8.     The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

9.      The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

10.      The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.      The term "Terrier" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

12.     The term "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

13.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns,

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.    "These Litigations" means *WSOU Investments LLC d/b/a Brazos Licensing and Development v. salesforce.com, inc.*, Case Nos. 6:20-cv-01163, -01164, -01165, -01166, -01167, -01168, -01169, -01170, -01171, and -01172 (W.D. Tex.).

17.    The "'731 Patent" shall refer to U.S. Patent No. 7,551,731.

18.    The "'411 Patent" shall refer to U.S. Patent No. 8,209,411.

19.    The "'928 Patent" shall refer to U.S. Patent No. 8,280,928.

20.    The "'819 Patent" shall refer to U.S. Patent No. 8,335,819.

21.    The "'827 Patent" shall refer to U.S. Patent No. 8,369,827.

22.    The "'892 Patent" shall refer to U.S. Patent No. 8,391,892.

23.    The "'899 Patent" shall refer to U.S. Patent No. 8,923,899.

24.    The "'493 Patent" shall refer to U.S. Patent No. 9,088,493.

25.    The "'060 Patent" shall refer to U.S. Patent No. 9,277,060.

26.    The "'320 Patent" shall refer to U.S. Patent No. 9,336,320.

27.    The terms "Asserted Patent(s) and "Patents-in-Suit" mean U.S. Patent Nos. 7,551,731; 8,209,411; 8,280,928; 8,335,819; 8,369,827; 8,391,892; 8,923,899; 9,088,493; 9,277,060; and 9,336,320 and all parents, progeny, continuations, applications, divisionals, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.  To the extent any additional patents are asserted in This Action, the terms "Asserted Patent(s) and "Patents-in-Suit" shall also encompass those patents.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

28.     "Related Patent(s)" means (1) any United States or foreign patent or patent application related to the Asserted Patent by way of subject matter or claimed priority date, (2) all parent, grandparent or earlier, divisional, continuation, continuation-in-part, provisionals, reissue, reexamination, and foreign counterpart patents and applications thereof, or (3) any patent or patent application filed by one or more of the same applicants (or his or her assignees) that refers to any of (1) or (2) herein.

29.     "WSOU Patent(s)" means any United States or foreign patent or patent application which WSOU alleges it owns or has standing to assert or license.

30.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to Google, LLC; ZTE Corporation, ZTE (USA), Inc.,ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

31.     "Relevant Functionality" means the functionalities to which the Asserted Patent are directed.

32.     "Prior Art" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to the validity of the Patents-in-Suit, including anything that is relevant to the patentability of any patent claim under

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

35 U.S.C. §§ 102 and 103.  Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

33.     "Document" shall be construed under the broadest possible construction under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.  The term includes any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including originals, drafts, and all non-identical copies of each document (which, by reason of any variation, such as the presence of absence of hand-written notes or underlining, represents a distinct version).  By way of example, the term "document" as used herein shall include: correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; emails; metadata; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-office and intra-office communications; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements, assignments, licenses; reports of or summaries of either negotiations within or without the corporation or preparations for such; and all other tangible items of readable, recorded, or visual material of any kind.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

34.     "Communication" means any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including electronic communications and electronic mail.

35.     "Person" means any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys or other representatives acting on the Person's behalf.

36.     "Thing" means any tangible objects of any kind and nature other than a Document, Including prototypes, models, and physical specimens thereof.

37.     "Regarding" or "Concerning" means in whole or in part referring to, relating to, constituting, containing, contradicting, embodying, commenting on, depicting, demonstrating, refuting, evidencing, representing, discussing, reflecting, describing, analyzing, identifying, mentioning, stating, summarizing, bearing upon, pertaining to, comprising, involving, alluding to, commenting on, referring directly or indirectly to, dealing with, or in any other way pertaining to.

38.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

39.     The terms "any," "all," "every," and "each" each means and includes the other.

40.     The singular form of any word shall be deemed to include the plural.  The plural form of any word shall be deemed to include the singular.

41.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

42.     "Include" and "Including" mean including without limitation.

43.     The provision of definitions set forth herein shall not be construed to be an admission that identical or similar terms in the claims of the Asserted Patents should receive such construction and shall have no binding effect on Google in this or any other proceeding.

## <u>INSTRUCTIONS</u>

1.     Produce all responsive Documents, electronically stored information, and Things in Your possession, custody, or control, wherever located, in the manner in which they are maintained.

2.     State, for each request, whether or not there exist any Documents within the scope of the request and whether any such Documents are in Your possession, custody, or control.

3.     If any Document is withheld from production on the basis of privilege, immunity, or any similar claim, please specify: (i) the date of the Document; (ii) the subject matter of the Document; (iii) the type of Document (memorandum, pamphlet, report, etc.); (iv) such other information as is sufficient to identify the Document, Including, where appropriate, the author, addressee, and any other recipient of the Document, and where not apparent, the relationship of the author, addressee, and any other recipient to each other; and (v) an explanation of the basis for withholding the Document.

4.     If You object to the scope or breadth of any request, respond within the scope or breadth of production that You contend is proper, and define the scope or breadth in which You have responded.

5.     Please include a unique production number with each document produced by you in response to these requests. You may designate documents confidential pursuant to the default Protective Order of the Court in These Litigations.

CONFIDENTIAL – ATTORNEYS EYES ONLY

## REQUESTS FOR PRODUCTION

1.      All Documents concerning the formation of WSOU Holdings.

2.      All Documents concerning the ownership of WSOU Holdings.

3.      All Documents showing Craig Etchegoyen's ownership interests in WSOU Holdings.

4.      Documents concerning the relationship between WSOU Holdings and WSOU, including, but not limited, WSOU Holdings' membership in WSOU per the WSOU Operating Agreement effective as of August 21, 2017.

5.      All documents concerning the relationship between WSOU Holdings and Omega Credit Opportunities Master Fund.

6.      All documents and communications related to WSOU Holdings making an initial capital commitment into WSOU.

7.      All documents and communications related to WSOU Holdings having a membership interest into WSOU.

8.      Documents concerning WSOU Holdings' corporate structure.

9.      Documents showing who controls WSOU Holdings.

10.     Documents regarding agreements between WSOU Holdings and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

11.     Documents regarding agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.

12.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.

13.     Documents concerning communications with any of the named inventors regarding any of the Asserted Patents, These Litigations or Salesforce.

14.     Communications with WSOU regarding the Asserted Patent, Related Patents, These Litigations or Salesforce.

15.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the Asserted Patent and Related Patents, including any actual or potential patent litigation against Salesforce and These Litigations.

16.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, BP Funding Trust, or any entity associated with the foregoing.

17.     All Communications with Craig Etchegoyen or Stuart Shanus.

18.     All Documents provided to or received from Craig Etchegoyen or Stuart Shanus.

19.     All Documents and Communications relating or referring to WSOU or any related entities.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

20.     All Documents and Communications relating or referring to Craig Etchegoyen or Stuart Shanus.

21.     All Documents and Communications relating or referring to These Litigations.

22.     All Documents and Communications relating to the value of the Asserted Patents, Related Patents, or WSOU Patents.

## DEPOSITION TOPICS

1.     The subject matter of all requests for production above.

2.     The authenticity of any Documents produced in response to the requests for production above.

3.     The search for and collection of Documents and Things in response to the requests for production above.

4.     Craig Etchegoyen's ownership interests in WSOU Holdings.

5.     The formation of WSOU Holdings.

6.     The formation of WSOU.

7.     The relationship between WSOU Holdings and WSOU, including, but not limited, WSOU Holdings' membership in WSOU per the WSOU Operating Agreement effective as of August 21, 2017.

8.     The relationship between WSOU Holdings and Omega Credit Opportunities Master Fund.

9.     WSOU Holdings making an initial capital commitment into WSOU.

10.     WSOU Holdings having a membership interest into WSOU.

11.     Your corporate structure.

12.     Your ownership since formation.

CONFIDENTIAL – ATTORNEYS EYES ONLY

13.     Agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

14.     Agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.

15.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Terrier, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.

16.     Communications with WSOU regarding the Asserted Patents, Related Patents, These Litigations or Salesforce.

17.     Any contemplated acquisition of patents or rights in patents from Nokia.

18.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, WSOU, Uniloc USA, Inc., WCFT Cayman, Wade and Company, and BP Funding Trust, or any other entity associated with the foregoing.

# EXHIBIT 21

QUINN EMANUEL URQUHART & SULLIVAN, LLP 51 MADISON AVE., 2ND FLOOR NEW YORK, NY 10010

Client's File No.: _____

# AFFIDAVIT OF SERVICE

Civil Action #:   6:20-cv-1163-ASA to 1172-ADA

Date Filed: _____

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

Court Date: _____

: _____



*WSOU INVESTMENTS LLC,*

*vs*                                                                                 *Plaintiff*

*SALESFORCE.COM, INC.,*

_____                                                                          *Defendant*

STATE OF  DELAWARE COUNTY OF     NEW CASTLE  SS.:

The undersigned being duly sworn deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of   Delaware

That on the following date:     October 7, 2022     , at the following time:     2:20 PM     ,

at                     16192 COASTAL HIGHWAY, LEWES, DE 19958                     deponent served the within

Subpoena to Testify at a Deposition in a Civil Action and Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13) with Attachment A.

[X]  Papers so served were properly endorsed with the Civil Action #.

**Upon:   WSOU HOLDINGS. LLC C/O HARVARD BUSINESS SERVICES. INC.**

| | |
|---|---|
| [ ] **Individual** | By delivering a true copy thereof to said recipient personally; deponent knew the person so served to be the individual described therein. |
| [ ] **Responsible Person** | By delivering to and leaving with _____ , _____ Relationship |
| | a true copy thereof, a person of suitable age and discretion. Said premises being the defendant / respondent's [ ] dwelling place   [ ] place of business/employment   [ ] last known address within the State. [ ] usual place of abode |
| [ ] **Mail** | A copy thereof was deposited in a postpaid, properly addressed envelope, marked "Personal and Confidential" in a depository maintained by the U. S. P. S. and mailed First Class mail to the above address on _____ . |
| [X] **Corporation LLC / LLP** | By delivering to and leaving with     Allison Rathmanner     said individual to be     Corporate Specialist who specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity. |
| [ ] **Affixing To Door** | By affixing a true copy thereof to the door, being the defendant/respondent's   [ ] dwelling place   [ ] place of business/employment [ ] last known address within the State. [ ] usual place of abode |
| [ ] **Previous Attempts** | Deponent previously attempted to serve the above named defendant/respondent on: |

| | |
|---|---|
| **Description of Recipient** | Sex:  Female    Color of skin   White    Color of hair:  Brown    Age:  36 - 50 Yrs.    Height:  5ft 4inch - 5ft 8inch   Weight:  131-160 Lbs.    Other Features: _____ |
| [X] **WITNESS FEES** | Subpoena Fee Tendered in the amount of  $40.00. |
| [ ] **MILITARY SERVICE** | I asked the person spoken to whether defendant was in active military service of the United States in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated. |
| [ ] **Other** | |

Sworn to before me on          October 11, 2022

_____ (signature)                                    _____ (signature Sharlene Brooks)     10/11/2022

PROCESS SERVER - PRINT NAME BELOW SIGNATURE
Sharlene Brooks

*COURT SUPPORT, INC., 265 POST AVE #150, WESTBURY, NY 11590 LICENSE #1382542*

PROCESS SERVER LICENSE #No #s in DE

Work Order #  1464862

KIMBERLY J. RYAN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 31, 2024

# EXHIBIT 22

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Western District of Texas

| | | |
|---|---|---|
| WSOU Investments LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 6:20-cv-1163-ADA to -1172-ADA |
| Salesforce, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          WSOU Capital Partners LLC, c/o Capitol Services, Inc.
108 Lakeland Ave., Dover, DE, 19901
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:
See Attachment A

| Place: 1201 N Market St #1600<br>Wilmington, DE 19801 | Date and Time:<br>       12/15/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:    Stenographer, videographer, and/or electronic means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  Attachment A

         The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/22/2022

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s Olga Slobodyanyuk |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Salesforce, Inc.
, who issues or requests this subpoena, are:
Olga Slobodyanyuk, olgaslobodyanyuk@quinnemanuel.com, 555 Twin Dolphin Dr., Redwood City, CA, (650)801-5000

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  6:20-cv-1163-ADA to -1172-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
    **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
    **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

CONFIDENTIAL – ATTORNEYS EYES ONLY

## ATTACHMENT A

## <u>DEFINITIONS</u>

1.      The instructions and requests below are subject to and incorporate the following definitions and instructions, regardless of whether upper or lower case letters are used:

2.      The term "WSOU Capital" or "You" or "Your" shall mean WSOU Capital Partners, LLC, a Delaware Corporation; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

3.      The term "Plaintiff", "WSOU", or "Brazos," means Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other Persons acting on behalf of any of the foregoing, including Craig Etchegoyen, Stuart Shanus, and Plaintiff's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Plaintiff, and all predecessors and successors in interest to such entities.

4.      The term "WSOU Holdings" or "You" or "Your" shall mean WSOU Holdings, LLC, a Delaware Corporation; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

5.      The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.      The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7.      The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

8.      The term "Defendant" or "Salesforce" means salesforce.com, inc. and its officers, directors, counsel, agents, consultants, representatives, and any Persons acting on behalf of any of the foregoing, and affiliates, parents, divisions, joint ventures, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Salesforce, and all predecessor and successors to such entities.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

9.      The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

12.     The term "Terrier" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

13.     The term "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

14.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

15.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns,

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

17.     "These Litigations" means *WSOU Investments LLC d/b/a Brazos Licensing and Development v. salesforce.com, inc.*, Case Nos. 6:20-cv-01163, -01164, -01165, -01166, -01167, -01168, -01169, -01170, -01171, and -01172 (W.D. Tex.).

18.     The "'731 Patent" shall refer to U.S. Patent No. 7,551,731.

19.     The "'411 Patent" shall refer to U.S. Patent No. 8,209,411.

20.     The "'928 Patent" shall refer to U.S. Patent No. 8,280,928.

21.     The "'819 Patent" shall refer to U.S. Patent No. 8,335,819.

22.     The "'827 Patent" shall refer to U.S. Patent No. 8,369,827.

23.     The "'892 Patent" shall refer to U.S. Patent No. 8,391,892.

24.     The "'899 Patent" shall refer to U.S. Patent No. 8,923,899.

25.     The "'493 Patent" shall refer to U.S. Patent No. 9,088,493.

26.     The "'060 Patent" shall refer to U.S. Patent No. 9,277,060.

CONFIDENTIAL – ATTORNEYS EYES ONLY

27.     The "'320 Patent" shall refer to U.S. Patent No. 9,336,320.

28.     The terms "Asserted Patent(s) and "Patents-in-Suit" mean U.S. Patent Nos. 7,551,731; 8,209,411; 8,280,928; 8,335,819; 8,369,827; 8,391,892; 8,923,899; 9,088,493; 9,277,060; and 9,336,320 and all parents, progeny, continuations, applications, divisionals, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.  To the extent any additional patents are asserted in This Action, the terms "Asserted Patent(s) and "Patents-in-Suit" shall also encompass those patents.

29.     "Related Patent(s)" means (1) any United States or foreign patent or patent application related to the Asserted Patent by way of subject matter or claimed priority date, (2) all parent, grandparent or earlier, divisional, continuation, continuation-in-part, provisionals, reissue, reexamination, and foreign counterpart patents and applications thereof, or (3) any patent or patent application filed by one or more of the same applicants (or his or her assignees) that refers to any of (1) or (2) herein.

30.     "WSOU Patent(s)" means any United States or foreign patent or patent application which WSOU alleges it owns or has standing to assert or license.

31.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to Google, LLC; ZTE Corporation, ZTE (USA), Inc.,ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon,

CONFIDENTIAL – ATTORNEYS EYES ONLY

Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

32.     "Relevant Functionality" means the functionalities to which the Asserted Patent are directed.

33.     "Prior Art" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to the validity of the Patents-in-Suit, including anything that is relevant to the patentability of any patent claim under 35 U.S.C. §§ 102 and 103.  Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

34.     "Document" shall be construed under the broadest possible construction under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.  The term includes any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including originals, drafts, and all non-identical copies of each document (which, by reason of any variation, such as the presence of absence of hand-written notes or underlining, represents a distinct version).  By way of example, the term "document" as used herein shall include: correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; emails; metadata; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-

CONFIDENTIAL – ATTORNEYS EYES ONLY

office and intra-office communications; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements, assignments, licenses; reports of or summaries of either negotiations within or without the corporation or preparations for such; and all other tangible items of readable, recorded, or visual material of any kind.

35.    "Communication" means any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including electronic communications and electronic mail.

36.    "Person" means any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys or other representatives acting on the Person's behalf.

37.    "Thing" means any tangible objects of any kind and nature other than a Document, Including prototypes, models, and physical specimens thereof.

38.    "Regarding" or "Concerning" means in whole or in part referring to, relating to, constituting, containing, contradicting, embodying, commenting on, depicting, demonstrating, refuting, evidencing, representing, discussing, reflecting, describing, analyzing, identifying, mentioning, stating, summarizing, bearing upon, pertaining to, comprising, involving, alluding to, commenting on, referring directly or indirectly to, dealing with, or in any other way pertaining to.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

39.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

40.     The terms "any," "all," "every," and "each" each means and includes the other.

41.     The singular form of any word shall be deemed to include the plural.  The plural form of any word shall be deemed to include the singular.

42.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

43.     "Include" and "Including" mean including without limitation.

44.     The provision of definitions set forth herein shall not be construed to be an admission that identical or similar terms in the claims of the Asserted Patents  should receive such construction and shall have no binding effect on Google in this or any other proceeding.

## <u>INSTRUCTIONS</u>

1.     Produce all responsive Documents, electronically stored information, and Things in Your possession, custody, or control, wherever located, in the manner in which they are maintained.

2.     State, for each request, whether or not there exist any Documents within the scope of the request and whether any such Documents are in Your possession, custody, or control.

3.     If any Document is withheld from production on the basis of privilege, immunity, or any similar claim, please specify: (i) the date of the Document; (ii) the subject matter of the Document; (iii) the type of Document (memorandum, pamphlet, report, etc.); (iv) such other information as is sufficient to identify the Document, Including, where appropriate, the author, addressee, and any other recipient of the Document, and where not apparent, the relationship of

CONFIDENTIAL – ATTORNEYS EYES ONLY

the author, addressee, and any other recipient to each other; and (v) an explanation of the basis for withholding the Document.

4.      If You object to the scope or breadth of any request, respond within the scope or breadth of production that You contend is proper, and define the scope or breadth in which You have responded.

5.      Please include a unique production number with each document produced by you in response to these requests. You may designate documents confidential pursuant to the default Protective Order of the Court in These Litigations.

## REQUESTS FOR PRODUCTION

1.      All Documents concerning the formation of WSOU Capital.

2.      All Documents concerning the ownership of WSOU Capital.

3.      All Documents showing Craig Etchegoyen's ownership interests in WSOU Capital.

4.      All Documents showing Orange's ownership interests in WSOU Capital.

5.      Documents concerning the relationship between WSOU Capital and WSOU.

6.      Documents concerning the relationship between WSOU Capital and WSOU Holdings.

7.      All documents concerning the relationship between WSOU Capital and Orange.

8.      All documents and communications related to WSOU Capital having a membership interest into WSOU, either directly or through WSOU Holdings.

9.      Documents concerning WSOU Capital corporate structure.

10.     Documents showing who controls WSOU Capital.

CONFIDENTIAL – ATTORNEYS EYES ONLY

11.     Documents regarding agreements between WSOU Capital and WSOU, WSOU

Holdings, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co.,

LLC, Houlihan, Orange Holdings, Omega Credit Opportunities Master Fund, BP Funding Trust,

Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted

Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any

portfolio that might have included an Asserted Patent, including any amendment, modification,

supplementation, abrogation, or termination of any such agreements.

12.     Documents regarding agreements with Nokia or other WSOU Defendants

regarding an Asserted Patent or a portfolio including an Asserted Patent.

13.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation,

Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Omega Credit Opportunities

Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT

Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or

potential litigation relating to an Asserted Patent.

14.     Documents concerning communications with any of the named inventors

regarding any of the Asserted Patents, These Litigations or Salesforce.

15.     Communications with WSOU regarding the Asserted Patent, Related Patents,

These Litigations or Salesforce.

16.     Documents concerning communications between you and any other entity relating

to the possibility of patent litigation regarding the Asserted Patent and Related Patents, including

any actual or potential patent litigation against Salesforce and These Litigations.

17.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric

Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU,

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

WSOU Holdings, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, BP Funding Trust, or any entity associated with the foregoing.

18.     All Communications with Craig Etchegoyen or Stuart Shanus.

19.     All Documents provided to or received from Craig Etchegoyen or Stuart Shanus.

20.     All Documents and Communications relating or referring to WSOU or any related entities.

21.     All Documents and Communications relating or referring to Craig Etchegoyen or Stuart Shanus.

22.     All Documents and Communications relating or referring to These Litigations.

23.     All Documents and Communications relating to the value of the Asserted Patents, Related Patents, or WSOU Patents.

## DEPOSITION TOPICS

1.     The subject matter of all requests for production above.

2.     The authenticity of any Documents produced in response to the requests for production above.

3.     The search for and collection of Documents and Things in response to the requests for production above.

4.     Craig Etchegoyen's ownership interests in WSOU Capital.

5.     Orange's ownership interests in WSOU Capital.

6.     The formation of WSOU Capital.

7.     The relationship between WSOU Capital and WSOU.

8.     The relationship between WSOU Capital and WSOU Holdings.

CONFIDENTIAL – ATTORNEYS EYES ONLY

9.     WSOU Capital having a membership interest into WSOU, either directly or through WSOU Holdings.

10.     Your corporate structure.

11.     Your ownership since formation.

12.     Agreements between you and WSOU, WSOU Holdings, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Omega Credit Opportunities Master Fund, BP Funding Trust, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

13.     Agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.

14.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Terrier, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.

15.     Communications with WSOU regarding the Asserted Patents, Related Patents, These Litigations or Salesforce.

16.     Any contemplated acquisition of patents or rights in patents from Nokia.

**CONFIDENTIAL – ATTORNEYS EYES ONLY**

17.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, WSOU, Uniloc USA, Inc., WCFT Cayman, and BP Funding Trust, or any other entity associated with the foregoing.

EXHIBIT 23

# UNITED STATES DISTRICT COURT

for the
Western District of Texas

| | |
|---|---|
| **WSOU Investments LLC** | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | )   Civil Action No. 6:20-cv-1163-ADA to - |
| | )   1172-ADA |
| **Salesforce, Inc.** | ) |
| | ) |
| *Defendant* | ) |
| | ) |

## AFFIDAVIT OF SERVICE

I, Brendan Bellamy, being duly sworn, state:

I am not a party to or interested in the outcome of this suit.

I received the following documents on November 23, 2022 at 12:28 pm. I delivered these documents on WSOU Capital Partners LLC in Kent County, DE on November 23, 2022 at 1:05 pm at 108 Lakeland Avenue, Dover, DE 19901 by leaving the following documents with Jessica Davis who as Clerk at Capitol Services, Inc. is authorized by appointment or by law to receive service of process for WSOU Capital Partners LLC.

Subpoena to Testify at a Deposition
and witness fee check

Additional Description:
I entered the building and rang the bell. I delivered the documents to Jessica Davis, Clerk for Registered Agent Capitol Services, Inc.

White Female, est. age 25, glasses: N, Brown hair, 120 lbs to 140 lbs, 5' to 5' 3".
Geolocation of Serve: http://maps.google.com/maps?q=39.1289367676,-75.5166684515
Photograph: See Exhibit 1

My name is Brendan Bellamy, my date of birth is 12/28/1971, and my address is 106 cedar lane , Camden, DE 19934, and USA.

I declare under penalty of perjury that the foregoing is true and correct.

Brendan Bellamy - (302) 359-8255
Certification Number:
Expiration Date: 1/1/0001

Job #203826          04554-00015 - O. Slobodyanyuk (WSOU Investments v Salesforce)          Page 1

Subscribed and sworn to before me this 23rd day of December 2022

_____, by Brenclan Bellamy.

Witness my hand and official seal.

My commission expires: 8/24/23

_____
Notary Public

CHANNIDA HENG
Notary Public
State of Delaware
My Commission Expires on Aug 24, 2023

# Exhibit 1



Exhibit 1a)

Exhibit 1b)



# EXHIBIT 24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC, d/b/a** ) | |
| **BRAZOS LICENSING AND** ) | **CIVIL ACTION 6:20-CV-1163 - ADA** |
| **DEVELOPMENT,** ) | **CIVIL ACTION 6:20-CV-1164 - ADA** |
| ) | **CIVIL ACTION 6:20-CV-1165 - ADA** |
| ) | **CIVIL ACTION 6:20-CV-1166 - ADA** |
| **Plaintiff,** ) | **CIVIL ACTION 6:20-CV-1167 - ADA** |
| ) | **CIVIL ACTION 6:20-CV-1168 – ADA** |
| ) | **CIVIL ACTION 6:20-CV-1169 – ADA** |
| **v.** ) | **CIVIL ACTION 6:20-CV-1170 – ADA** |
| ) | **CIVIL ACTION 6:20-CV-1171 – ADA** |
| ) | **CIVIL ACTION 6:20-CV-1172 - ADA** |
| **SALESFORCE, INC.,** ) | |
| ) | |
| **Defendant.** | |

## RESPONSES AND OBJECTIONS TO REQUESTS FOR
## PRODUCTION AND DEPOSITION TOPICS

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), WSOU Holding, LLC ("Respondent") serves these objections and responses to the Subpoena to Testify at a Deposition in a Civil Action commanding appearance and production on October 21, 2022, issued by Defendant in the above referenced cases.

## GENERAL OBJECTIONS

Respondent objects to the subpoenas to the extent they seek from Respondent, a non-party to this litigation, materials and testimony that Defendant can obtain from other sources, including public sources or parties to the litigation.

Respondent objects on the basis of improper service of process.

Respondent objects on the basis that the subpoena is vague and ambiguous as issued, and Respondent further objects to the extent it seeks production and testimony from Respondent's agent for service of process.

Respondent objects to the subpoenas, including each document request each deposition topic, as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence.

To the extent the subpoenas demand electronic documents, Respondent objects to the subpoenas as overly broad and unduly burdensome because the Court's Order Governing Proceedings does not require e-discovery.

Respondent objects to document requests and topics concerning license negotiations because such topics are not discoverable. In *Uniloc v. Google*, for example, Action No. 2:18-CV-503-JRG-RSP, the Eastern District of Texas denied Google's motion to compel license negotiations. Recognizing that the EDTX had previously found "unconsummated settlement and licensing negotiations with the patents-in-suit . . . not discoverable" (*see Sol IP, LLC v. AT&T Mobility LLC*, 2-18-cv-00526, Docket No. 291 at 6-7 (EDTX); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011) (refusing to compel negotiations of unconsummated settlement agreements because they are unreliable and because compelling them would have a "chilling effect on settlement negotiations"), Google argued at the hearing that its request was limited to negotiations relating to consummated agreements, insisting these were relevant to a hypothetical negotiation. The Court stated: "I have analyzed that issue several times, and I've always come to the conclusion that the ultimate license that issues is the evidence that matters and that the effect of requiring intermediate settlement steps to be revealed has more negative consequences than possible probative value."

Respondent objects to the subpoenas and each request and topic to the extent they seek information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection. Respondent objects to the subpoenas and their instructions and definitions to the extent they seek to impose obligations beyond those

contemplated by law and/or the Federal Rules of Civil Procedure.

To the extent that Respondent provides any information in response to this or any other subpoenas in this matter, Respondent will expect compensation from Defendant. *See Kisser v. Coalition for Religious Freedom*, 1995 U.S. Dist. LEXIS 9719, at *5 (E.D. Pa. 1995) (a non-party "is entitled to have reasonable costs of production, inspection and copying of documents paid by the deposing party."); *In re Application of the Law Firms of McCourts and McGirgor Donald*, 2000 U.S. Dist. LEXIS 20287, at *7-8 (S.D.N.Y. 2001) (ordering that non-party "will be required to produce the requested documents only after receiving in advance the reasonably estimated costs of production, including the attorney's fees to be incurred by respondent in reviewing and selecting the documents to be produced.").

Respondent objects to the deposition subpoena because Defendant did not make any attempt to confer in good faith with Respondent concerning the "matters for examination" as required under Rule 30(b)(6). Instead, Defendant's subpoena purports to unilaterally mandate the matters for examination.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1. **All Documents concerning the formation of WSOU Holdings.**
   **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to

the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

## 2.    All Documents concerning the ownership of WSOU Holdings.
**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**3.     All Documents showing Craig Etchegoyen's ownership interests in WSOU Holdings.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are

shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**4.      Documents concerning the relationship between WSOU Holdings and WSOU, including, but not limited, WSOU Holdings' membership in WSOU per the WSOU Operating Agreement effective as of August 21, 2017.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "relationship," "WSOU Holdings," "WSOU," and "WSOU Operating Agreement."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**5.     All documents concerning the relationship between WSOU Holdings and Omega Credit Opportunities Master Fund.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the term "relationship" and the defined terms "WSOU holdings" and "Omega Credit Opportunities Master Fund."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not

discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**6.    All documents and communications related to WSOU Holdings making an initial capital commitment into WSOU.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the term "initial capital commitment" and the defined terms "WSOU Holdings" and "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**7.     All documents and communications related to WSOU Holdings having a membership interest into WSOU.**

    **RESPONSE:**

    Respondent objects and responds to this document request as follows:

    Respondent incorporates by reference its general objections.

    Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the defined terms "WSOU Holdings" and "WSOU."

    Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

    Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

    Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

    Respondent objects to this request to the extent it seeks e-discovery.

    Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

    Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret

information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**8.     Documents concerning WSOU Holdings' corporate structure.**
**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**9.      Documents showing who controls WSOU Holdings.**
**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the term "controls" and the defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence.

Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**10.    Documents regarding agreements between WSOU Holdings and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included**

**an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "WSOU Holdings," "Nokia,", "AQUA," "Houlihan," "WSOU," "Wade and Company," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman," and such undefined terms including but not limited to, "Allied Security Trust," "RPX Corporation," "Fortress Credit Co., LLC," and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**11.    Documents regarding agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the defined terms "WSOU Holdings," "Nokia" and "other WSOU Defendants."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**12.   Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "Nokia,", "AQUA," "Houlihan," "WSOU," "Wade and Company," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman," and such undefined terms including but not limited to, "Allied Security Trust," "RPX Corporation," "Fortress Credit Co., LLC," and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and

each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**13.    Documents concerning communications with any of the named inventors regarding any of the Asserted Patents, These Litigations or Salesforce.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the term "named inventors."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive,

burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**14.    Communications with WSOU regarding the Asserted Patent, Related Patents, These Litigations or Salesforce.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined term "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence.

Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**15.    Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the Asserted Patent and Related Patents, including any actual or potential patent litigation against Salesforce and These Litigations.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad,

burdensome, harassing, oppressive, vague, and ambiguous as to the terms "you" and "any other entity."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**16.   Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, BP Funding Trust, or any entity associated with the foregoing.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "your," "WSOU," "WCFT Cayman," "Omega Credit Opportunities Master Fund," "Wade and Company," and "BP Funding Trust," and such undefined terms including but not limited to, "Uniloc USA, Inc." and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive,

burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

## 17.   All Communications with Craig Etchegoyen or Stuart Shanus.
   **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents

protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**18.     All Documents provided to or received from Craig Etchegoyen or Stuart Shanus.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not

discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

## 19.  All Documents and Communications relating or referring to WSOU or any related entities.

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent further objects on the grounds that the Request is vague and ambiguous as to the meaning of the terms "WSOU" and "any related entities."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**20.   All Documents and Communications relating or referring to Craig Etchegoyen or Stuart Shanus.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be

maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**21.    All Documents and Communications relating or referring to These Litigations.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive,

burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**22.    All Documents and Communications relating to the value of the Asserted Patents, Related Patents, or WSOU Patents.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent further objects on the grounds that the Request is vague and ambiguous as to the meaning of the term "value."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and

as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

## SPECIFIC OBJECTIONS AND RESPONSES TO DEPOSITION TOPICS

1. **The subject matter of all requests for production above.**
   **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections and each of its specific objections asserted above to requests for production numbers 1-22 as though fully set forth herein.

2.  **The authenticity of any Documents produced in response to the requests for production above.**

> **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections and each of its specific objections asserted above to requests for production numbers 1-22 as though fully set forth herein.

3.  **The search for and collection of Documents and Things in response to the requests for production above.**

> **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections and each of its specific objections asserted above to requests for production numbers 1-22 as though fully set forth herein.

4.  **Craig Etchegoyen's ownership interests in WSOU Holdings.**
> **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not

discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

5. **The formation of WSOU Holdings.**
   **RESPONSE:**
   Respondent objects and responds to this deposition topic as follows:
   Respondent incorporates by reference its general objections.
   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the

defined term "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

6. **The formation of WSOU.**

    **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

7. **The relationship between WSOU Holdings and WSOU, including, but not limited, WSOU Holdings' membership in WSOU per the WSOU Operating Agreement effective as of August 21, 2017.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "relationship," "WSOU Holdings," "WSOU," and "WSOU Operating Agreement."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

8. **The relationship between WSOU Holdings and Omega Credit Opportunities Master Fund.**

   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "relationship," "WSOU Holdings" and "Omega Credit Opportunities Master Fund."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

9. **WSOU Holdings making an initial capital commitment into WSOU.**
   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "WSOU Holdings," "initial capital commitment," and "WSOU."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not

discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

10. **WSOU Holdings having a membership interest into WSOU.**
    **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the

terms "WSOU Holdings" and "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

11. **Your corporate structure.**

   **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased and in particular the meaning of the term "your."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

12. **Your ownership since formation.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased and in particular the meaning of the term "your."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded

from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

13. **Agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "you," "Nokia,", "AQUA," "Houlihan," "WSOU," "Wade and Company," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman," and such undefined terms including but not limited to, "Allied Security Trust," "RPX Corporation," "Fortress Credit Co., LLC," and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not

relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

14. **Agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.**

    **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "Nokia" and "other WSOU Defendants."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

15. **Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Terrier, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.**

   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "Nokia,", "AQUA," "Houlihan," "WSOU," "Wade and Company," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman," and such undefined terms including but not limited to, "Allied Security Trust," "RPX Corporation," "Fortress Credit Co., LLC," and "Orange Holdings."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

16. **Communications with WSOU regarding the Asserted Patents, Related Patents, these Litigations or Salesforce.**

   **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to

the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

17. **Any contemplated acquisition of patents or rights in patents from Nokia. RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad,

burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the phrase "contemplated acquisition" and the defined term, "Nokia."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

18. **Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, WSOU, Uniloc USA, Inc., WCFT Cayman, Wade and Company, and BP Funding Trust, or any other entity associated with the foregoing.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "your," "WSOU," "WCFT Cayman," "Omega Credit Opportunities Master Fund," "Wade and Company," and "BP Funding Trust," and such undefined terms including but not limited to, "Uniloc USA, Inc." and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

**CONFIDENTIAL**                                                          **Page | 50**

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

Dated:  January 12, 2022                                    Respectfully Submitted,


                                                           /s/ *Morgan E. Pietz*
                                                           Morgan E. Pietz (CA Bar #260629)
                                                           Pietz & Shahriari, LLP
                                                           6700 S. Centinela Avenue
                                                           Second Floor
                                                           Playa Vista, CA 90230
                                                           Attorney for Respondent
                                                           WSOU Holding, LLC

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served via email to all counsel of record on October 20, 2022, as follows:

**Caleb R. Braley**
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
Fax: (650) 801-5100
Email: calebbraley@quinnemanuel.com

**Felipe Corredor**
Conrad Metlitzky Kane LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
415-343-7100
Fax: 415-343-7101
Email: fcorredor@conmetkane.com

**Jared Kneitel**
Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000
Fax: (206) 905-7100
Email: jaredkneitel@quinnemanuel.com

**Kevin P.B. Johnson**
Quinn Emanuel Urquhart & Sullivan
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
Fax: 650/801-5100
Email: kevinjohnson@quinnemanuel.com

**Olga Slobodyanyuk**
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
(650) 801-5000
Fax: (650) 801-5100
Email: olgaslobodyanyuk@quinnemanuel.com

**Ray Robert Zado**
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
Fax: (650) 801-5100
Email: rayzado@quinnemanuel.com

**Sam Stake**
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, Floor 22
San Francisco, CA 94111
415-875-6600
Fax: 415-875-6700
Email: samstake@quinnemanuel.com

**Scott L. Cole**
Quinn Emanuel Urquhart & Sullivan, LLP
300 W. 6th Street
Austin, TX 78701
512-692-8705
Email: scottcole@quinnemanuel.com

**Todd M. Briggs**
Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801- 5000
Fax: 650-801- 5100
Email: toddbriggs@quinnemanuel.com

**Chen Jia**
Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
(650) 453-5170

Fax: (650) 453-5171
Email: cjia@kasowitz.com

**Darcy L. Jones**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650-453-5418
Fax: 650.453.5171
Email: djones@kasowitz.com

**Heather S. Kim**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
650.453.5170
Fax: 650.453.5171
Email: hkim@kasowitz.com

**Hershy Stern**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: hstern@kasowitz.com

**Jessica C. Sutliff**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: jsutliff@kasowitz.com

**John W. Downing**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650-453-5426
Fax: 650.453.5171

Email: jdowning@kasowitz.com

**Jonathan H. Hicks**
Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
(650) 453-5170
Fax: (650) 453-5171
Email: jonathan.hicks@dlapiper.com

**Jonathan K. Waldrop**
Kasowitz Benson Torres, LLP
333 Twin Dolphine Drive, Suite 200
Redwood Shores, CA 94065
650-453-5425
Fax: 650.453.5171
Email: jwaldrop@kasowitz.com

**Joshua A. Whitehill**
Kaswoitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: jwhitehill@kasowitz.com

**Julianne Laporte**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: jlaporte@kasowitz.com

**Julie R. Fischer**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800

Email: jfischer@kasowitz.com

**Lea Dartevelle Erhel**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: ldartevelle@kasowitz.com

**Marcus A. Barber**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650-453-5413
Fax: 650.453.5171
Email: mbarber@kasowitz.com

**Matthew Harris Lawrence**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
212-542-4707
Email: mlawrence@kasowitz.com

**Noah P. Dorman**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: ndorman@kasowitz.com

**Paul G. Williams**
Kasowitz Benson Torres LLP
1230 Peachtree Street, NE, Suite 2445
Atlanta, GA 30309
404-260-6102
Fax: 404-393-9752
Email: pwilliams@kasowitz.com

**Ryan Scott Loveless**
Etheridge Law Group PLLC
2600 E Southlake Blvd
Suite 120-324
Southlake, TX 76092
972-292-8303
Fax: 817-887-5950
Email: ryan@etheridgelaw.com

**Ryan A. Madden**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: rmadden@kasowitz.com

**ThucMinh Nguyen**
Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650-453-5420
Fax: 650-362-9302
Email: tnguyen@kasowitz.com

**Travis Lee Richins**
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
(817) 470-7249
Fax: (817) 887-5950
Email: travis@etheridgelaw.com

**Brett Aaron Mangrum**
Etheridge Law Group
2600 East Southlake Blvd., Suite 120-324
Southlake, TX 76092
469-401-2659
Fax: 817-887-5950

Email: brett@etheridgelaw.com

**Brian Matthew Koide**
Etheridge Law Group, PLLC
2600 E. Southlake Blvd
Suite 120-324
Southlake, TX 76092
703-565-2852
Fax: 817-887-5950
Email: brian@etheridgelaw.com

**Gregory Phillip Love**
Steckler Wayne Cherry & Love PLLC
P. 0. Box 948
Henderson, TX 75653
(903) 212-4444
Fax: (903) 392-2267
Email: greg@swclaw.com

**Jeffrey Huang**
Etheridge Law Group PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
408-797-9059
Fax: 817-887-5950
Email: jhuang@etheridgelaw.com

**Mark D. Siegmund**
Steckler Wayne Cherry & Love, PLLC
8416 Old McGregor Rd.
Waco, TX 76712
254-651-3690
Fax: 254-651-3689
Email: mark@swclaw.com

**James L. Etheridge**
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120-324
Southlake, TX 76092
817-470-7249

Fax: 817-887-5950
Email: jim@etheridgelaw.com


/s/ Mandy Chen
Mandy Chen

EXHIBIT 25

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC, d/b/a** | ) | |
| **BRAZOS LICENSING AND** | ) | **CIVIL ACTION 6:20-CV-1163 - ADA** |
| **DEVELOPMENT,** | ) | **CIVIL ACTION 6:20-CV-1164 - ADA** |
| | ) | **CIVIL ACTION 6:20-CV-1165 - ADA** |
| | ) | **CIVIL ACTION 6:20-CV-1166 - ADA** |
| **Plaintiff,** | ) | **CIVIL ACTION 6:20-CV-1167 - ADA** |
| | ) | **CIVIL ACTION 6:20-CV-1168 – ADA** |
| | ) | **CIVIL ACTION 6:20-CV-1169 – ADA** |
| **v.** | ) | **CIVIL ACTION 6:20-CV-1170 – ADA** |
| | ) | **CIVIL ACTION 6:20-CV-1171 – ADA** |
| | ) | **CIVIL ACTION 6:20-CV-1172 - ADA** |
| **SALESFORCE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION AND DEPOSITION TOPICS

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), WSOU Capital Partners c/o Capital Services, Inc., ("Respondent") serves these objections and responses to the Subpoena to Testify at a Deposition in a Civil Action commanding appearance and production on December 15, 2022, issued by Defendant in the above referenced cases.

## GENERAL OBJECTIONS

Respondent objects to the subpoena to the extent it seeks from Respondent, a non-party to this litigation, materials and testimony that Defendant can obtain from other sources, including public sources or parties to the litigation.

Respondent objects on the basis of improper service of process.

Respondent objects on the basis that the subpoena is vague and ambiguous as issued, and Respondent further objects to the extent it seeks production and

testimony from Respondent's agent for service of process.

Respondent objects to the subpoena, including each document request each deposition topic, as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence.

To the extent the subpoena demands electronic documents, Respondent objects to the subpoena as overly broad and unduly burdensome because the Court's Order Governing Proceedings does not require e-discovery.

Respondent objects to document requests and topics concerning license negotiations because such topics are not discoverable. In *Uniloc v. Google*, for example, Action No. 2:18-CV-503-JRG-RSP, the Eastern District of Texas denied Google's motion to compel license negotiations. Recognizing that the EDTX had previously found "unconsummated settlement and licensing negotiations with the patents-in-suit . . . not discoverable" (*see Sol IP, LLC v. AT&T Mobility LLC*, 2-18-cv-00526, Docket No. 291 at 6-7 (EDTX); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011) (refusing to compel negotiations of unconsummated settlement agreements because they are unreliable and because compelling them would have a "chilling effect on settlement negotiations"), Google argued at the hearing that its request was limited to negotiations relating to consummated agreements, insisting these were relevant to a hypothetical negotiation.  The Court stated: "I have analyzed that issue several times, and I've always come to the conclusion that the ultimate license that issues is the evidence that matters and that the effect of requiring intermediate settlement steps to be revealed has more negative consequences than possible probative value."

Respondent objects to the subpoena and each request and topic to the extent they seek information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection. Respondent objects to the subpoena and its instructions and

**CONFIDENTIAL**                                                                                                    **Page | 2**

definitions to the extent they seek to impose obligations beyond those contemplated by law and/or the Federal Rules of Civil Procedure.

To the extent that Respondent provides any information in response to this or any other subpoena in this matter, Respondent will expect compensation from Defendant. *See Kisser v. Coalition for Religious Freedom*, 1995 U.S. Dist. LEXIS 9719, at *5 (E.D. Pa. 1995) (a non-party "is entitled to have reasonable costs of production, inspection and copying of documents paid by the deposing party."); *In re Application of the Law Firms of McCourts and McGirgor Donald*, 2000 U.S. Dist. LEXIS 20287, at *7-8 (S.D.N.Y. 2001) (ordering that non-party "will be required to produce the requested documents only after receiving in advance the reasonably estimated costs of production, including the attorney's fees to be incurred by respondent in reviewing and selecting the documents to be produced.").

Respondent objects to the deposition subpoena because Defendant did not make any attempt to confer in good faith with Respondent concerning the "matters for examination" as required under Rule 30(b)(6). Instead, Defendant's subpoena purports to unilaterally mandate the matters for examination.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1. **All Documents concerning the formation of WSOU Capital.**
   **RESPONSE:**

   Respondent objects and responds to this document request as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Capital."

   Respondent objects to this request to the extent it seeks information that is not

relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

2.     **All Documents concerning the ownership of WSOU Capital.**
       **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Capital."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

3.    **All Documents showing Craig Etchegoyen's ownership interests in WSOU Capital.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Capital."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret

information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

4.      **All Documents showing Orange's ownership interests in WSOU Capital.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "Orange" and "WSOU Capital."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**5.     Documents concerning the relationship between WSOU Capital and WSOU.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "relationship," "WSOU Capital" and "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not

discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

6. **Documents concerning the relationship between WSOU Capital and WSOU Holdings.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the term "relationship" and the defined terms "WSOU Capital" and "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

7.      **All documents concerning the relationship between WSOU Capital and Orange.**

   **RESPONSE:**

   Respondent objects and responds to this document request as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the term "relationship" and the defined terms "WSOU Capital" and "Orange."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

   Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

   Respondent objects to this request to the extent it seeks e-discovery.

   Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

   Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are

shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**8. All documents and communications related to WSOU Capital having a membership interest into WSOU, either directly or through WSOU Holdings.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the defined terms "WSOU Capital," "WSOU" and "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**9.     Documents concerning WSOU Capital corporate structure.**
**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Capital."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence.

Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**10.  Documents showing who controls WSOU Capital.**

    **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the term "controls" and the defined term "WSOU Capital."

Respondent objects to this request to the extent it seeks information that is not

relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**11.     Documents regarding agreements between WSOU Capital and WSOU, WSOU Holdings, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following terms, "WSOU Capital," "WSOU," "WSOU Holdings," "Allied Security Trust," "AQUA Licensing, LLC," "RPX Corporation," "Fortress Credit Co., LLC," "Houlihan," "Orange Holdings," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents

protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**12.    Documents regarding agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.**

    **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the defined terms "WSOU Capital," "Nokia" and "other WSOU Defendants."

Respondent objects to this request to the extent it seeks information that is not

relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**13.    Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "Nokia,", "AQUA," "Houlihan," "WSOU," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman," and such undefined terms including but not limited to, "Allied Security Trust," "RPX Corporation," "Fortress Credit Co., LLC," and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**14.    Documents concerning communications with any of the named inventors regarding any of the Asserted Patents, These Litigations or Salesforce.**

    **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the term "named inventors."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**15.    Communications with WSOU regarding the Asserted Patent, Related Patents, These Litigations or Salesforce.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad,

burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined term "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**16.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the Asserted Patent and Related Patents, including any actual or potential patent litigation against Salesforce and These Litigations.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the terms "you" and "any other entity."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be

maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**17.   Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, WSOU Holdings, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, BP Funding Trust, or any entity associated with the foregoing.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "your," "WSOU," "WCFT Cayman," "WSOU Holdings," "Omega Credit Opportunities Master Fund," "Wade and Company," "Orange Holdings," and "BP Funding Trust," and such undefined terms including but not limited to, "Uniloc USA, Inc."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and

as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**18.     All Communications with Craig Etchegoyen or Stuart Shanus.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not

relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**19.    All Documents provided to or received from Craig Etchegoyen or Stuart Shanus.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the

right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**20.     All Documents and Communications relating or referring to WSOU or any related entities.**

   **RESPONSE:**

   Respondent objects and responds to this document request as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

   Respondent further objects on the grounds that the Request is vague and ambiguous as to the meaning of the terms "WSOU" and "any related entities."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

   Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

   Respondent objects to this request to the extent it seeks e-discovery.

   Responding Party objects further on the grounds this request is oppressive,

burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

## 21. All Documents and Communications relating or referring to Craig Etchegoyen or Stuart Shanus.

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

**CONFIDENTIAL**                                                                 **Page | 29**

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**22.    All Documents and Communications relating or referring to These Litigations.**

   **RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to

the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**23.    All Documents and Communications relating to the value of the Asserted Patents, Related Patents, or WSOU Patents.**

**RESPONSE:**

Respondent objects and responds to this document request as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome and harassing.

Respondent further objects on the grounds that the Request is vague and ambiguous as to the meaning of the term "value."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Respondent objects to this request to the extent it seeks e-discovery.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the documents requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, documents that are

shielded from production by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

## SPECIFIC OBJECTIONS AND RESPONSES TO DEPOSITION TOPICS

1. **The subject matter of all requests for production above.**
   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections and each of its specific objections asserted above to requests for production numbers 1-22 as though fully set forth herein.

2. **The authenticity of any Documents produced in response to the requests for production above.**
   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections and each of its specific objections asserted above to requests for production numbers 1-22 as though fully set forth herein.

3. **The search for and collection of Documents and Things in response to the requests for production above.**
   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

**CONFIDENTIAL**                                                                 **Page | 33**

Respondent incorporates by reference its general objections and each of its specific objections asserted above to requests for production numbers 1-22 as though fully set forth herein.

4. **Craig Etchegoyen's ownership interests in WSOU Capital.**
   **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Capital."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be

maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

5. **Orange's ownership interest in WSOU Capital.**
   **RESPONSE:**
   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined terms "Orange" and "WSOU Capital."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

   Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

   Responding Party objects further on the grounds this request is oppressive,

burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

6. **The formation of WSOU Capital.**
   **RESPONSE:**
   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the defined term "WSOU Capital."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

7. **The relationship between WSOU Capital and WSOU.**
   **RESPONSE:**
   Respondent objects and responds to this deposition topic as follows:
   Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "relationship," "WSOU Capital" and "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not

discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

8. **The relationship between WSOU Capital and WSOU Holdings.**
   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the

terms "relationship," "WSOU Capital" and "WSOU Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

9. **WSOU Capital making a membership interest into WSOU, either directly or through WSOU Holdings.**

 **RESPONSE:**

 Respondent objects and responds to this deposition topic as follows:

 Respondent incorporates by reference its general objections.

 Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as to the meaning of the terms "WSOU Capital," "WSOU" and "WSOU Holdings."

 Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

 Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

 Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

 Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

 Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of

privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

10. **Your corporate structure.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased and in particular the meaning of the term "your."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

11. **Your ownership since formation.**
   **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased and in particular the meaning of the term "your."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common

interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

12. **Agreements between you and WSOU, WSOU Holdings, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Omega Credit Opportunities Master Fund, BP Funding Trust, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any Asserted Patent, a portfolio including an Asserted Patent, or the acquisition or potential acquisition of any portfolio that might have included an Asserted Patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad,

burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "you," "WSOU," "WSOU Holdings," "Allied Security Trust," "AQUA Licensing, LLC," "RPX Corporation," "Fortress Credit Co., LLC," "Houlihan," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Terrier," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

13. **Agreements with Nokia or other WSOU Defendants regarding an Asserted Patent or a portfolio including an Asserted Patent.**

   **RESPONSE:**

   Respondent objects and responds to this deposition topic as follows:

   Respondent incorporates by reference its general objections.

   Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "Nokia" and "other WSOU Defendants."

   Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

   Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

   Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

   Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

   Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret

information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

14. **Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Terrier, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent, a portfolio including an Asserted Patent, or actual or potential litigation relating to an Asserted Patent.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "Nokia,", "AQUA," "Houlihan," "WSOU," "Omega Credit Opportunities Master Fund," "BP Funding Trust," "Juniper Capital Partners," "Coast Asset Management," or "WCFT Cayman," and such undefined terms including but not limited to, "Allied Security Trust," "RPX Corporation," "Fortress Credit Co., LLC," and "Orange Holdings."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to

the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

15. **Communications with WSOU regarding the Asserted Patents, Related Patents, these Litigations or Salesforce.**

    **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "WSOU."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

16. **Any contemplated acquisition of patents or rights in patents from Nokia.**
    **RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the phrase "contemplated acquisition" and the defined term, "Nokia."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive, burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of

privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

17. **Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, WSOU, Uniloc USA, Inc., WCFT Cayman, and BP Funding Trust, or any other entity associated with the foregoing.**

**RESPONSE:**

Respondent objects and responds to this deposition topic as follows:

Respondent incorporates by reference its general objections.

Respondent objects to this Request on the grounds that it is overly broad, burdensome, harassing, oppressive, vague, and ambiguous as phrased, including but not limited as to the meaning of the following defined terms, "your," "WSOU," "WCFT Cayman," "Omega Credit Opportunities Master Fund," and "BP Funding Trust," and such undefined terms including but not limited to, "Uniloc USA, Inc."

Respondent objects to this request to the extent it seeks information that is not relevant to any claim or defense in this case. Respondent objects to this request to the extent it seeks information the Court has already found irrelevant and/or not discoverable.

Respondent objects to this request as overly broad, unduly burdensome, and as not reasonably calculated to lead to the discovery of admissible evidence. Evidence of negotiations are not discoverable.

Respondent objects to this request to extent it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Responding Party objects further on the grounds this request is oppressive,

burdensome and harassing as the information requested can be sought from a party or other source without the need to seek them from this non-party witness.

Responding Party further objects to the extent it calls for the disclosure of non-public, private, personal, confidential, proprietary information, or trade secret information that has been maintained in confidence and/or is legally required to be maintained in confidence, including, but not limited to, information that is shielded from disclosure by statutory or decisional law of the United States and each of its jurisdictions, statutory or decisional law of any foreign country, the right of privacy under the United States Constitution, and all other applicable laws or privileges.

Responding Party further objects to the extent it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

Dated:  December 7, 2022                    Respectfully Submitted,


                                           /s/ *Morgan E. Pietz*
                                           Morgan E. Pietz (CA Bar #260629)
                                           Pietz & Shahriari, LLP
                                           6700 S. Centinela Avenue
                                           Second Floor
                                           Culver City, CA 90230
                                           Attorney for Respondent
                                           WSOU Holding, LLC

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served via email to all counsel of record on December 7, 2022, as follows:

**Caleb R. Braley**
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
Fax: (650) 801-5100
Email: calebbraley@quinnemanuel.com

**Felipe Corredor**
Conrad Metlitzky Kane LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
415-343-7100
Fax: 415-343-7101
Email: fcorredor@conmetkane.com

**Jared Kneitel**
Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000
Fax: (206) 905-7100
Email: jaredkneitel@quinnemanuel.com

**Kevin P.B. Johnson**
Quinn Emanuel Urquhart & Sullivan
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
Fax: 650/801-5100
Email: kevinjohnson@quinnemanuel.com

**Olga Slobodyanyuk**
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

(650) 801-5000
Fax: (650) 801-5100
Email: olgaslobodyanyuk@quinnemanuel.com

**Ray Robert Zado**
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
Fax: (650) 801-5100
Email: rayzado@quinnemanuel.com

**Sam Stake**
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, Floor 22
San Francisco, CA 94111
415-875-6600
Fax: 415-875-6700
Email: samstake@quinnemanuel.com

**Scott L. Cole**
Quinn Emanuel Urquhart & Sullivan, LLP
300 W. 6th Street
Austin, TX 78701
512-692-8705
Email: scottcole@quinnemanuel.com

**Todd M. Briggs**
Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801- 5000
Fax: 650-801- 5100
Email: toddbriggs@quinnemanuel.com

**Chen Jia**
**Darcy L. Jones**
**Heather S. Kim**
**Hershy Stern**
**Jessica C. Sutliff**
**John W. Downing**

**Jonathan H. Hicks**
**Jonathan K. Waldrop**
**Marcus A. Barber**
**ThucMinh Nguyen**
WSOUvSalesforce@kasowitz.com
Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
(650) 453-5170
Fax: (650) 453-5171

**Joshua A. Whitehill**
**Julianne Laporte**
**Julie R. Fischer**
**Lea Dartevelle Erhel**
**Matthew Harris Lawrence**
**Noah P. Dorman**
**Ryan A. Madden**
WSOUvSalesforce@kasowitz.com
Kaswoitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800

**Paul G. Williams**
WSOUvSalesforce@kasowitz.com
Kasowitz Benson Torres LLP
1230 Peachtree Street, NE, Suite 2445
Atlanta, GA 30309
404-260-6102
Fax: 404-393-9752
Email: pwilliams@kasowitz.com

**Ryan Scott Loveless**
Etheridge Law Group PLLC
2600 E Southlake Blvd
Suite 120-324
Southlake, TX 76092
972-292-8303
Fax: 817-887-5950
Email: ryan@etheridgelaw.com

**Travis Lee Richins**
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
(817) 470-7249
Fax: (817) 887-5950
Email: travis@etheridgelaw.com

**Brett Aaron Mangrum**
Etheridge Law Group
2600 East Southlake Blvd., Suite 120-324
Southlake, TX 76092
469-401-2659
Fax: 817-887-5950
Email: brett@etheridgelaw.com

**Brian Matthew Koide**
Etheridge Law Group, PLLC
2600 E. Southlake Blvd
Suite 120-324
Southlake, TX 76092
703-565-2852
Fax: 817-887-5950
Email: brian@etheridgelaw.com

**Gregory Phillip Love**
Steckler Wayne Cherry & Love PLLC
P. 0. Box 948
Henderson, TX 75653
(903) 212-4444
Fax: (903) 392-2267
Email: greg@swclaw.com

**Jeffrey Huang**
Etheridge Law Group PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
408-797-9059
Fax: 817-887-5950
Email: jhuang@etheridgelaw.com

**Mark D. Siegmund**
Steckler Wayne Cherry & Love, PLLC
8416 Old McGregor Rd.
Waco, TX 76712
254-651-3690
Fax: 254-651-3689
Email: mark@swclaw.com

**James L. Etheridge**
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120-324
Southlake, TX 76092
817-470-7249
Fax: 817-887-5950
Email: jim@etheridgelaw.com

_/s/ Mandy Chen_____
Mandy Chen

EXHIBIT 26

| | |
|---|---|
| **From:** | Ian Wang |
| **Sent:** | Thursday, December 29, 2022 3:02 PM |
| **To:** | Morgan Pietz; Ray Zado; Christopher Smith; Jared Kneitel; Olga Slobodyanyuk; Julie Goerlinger; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce; maclemore@thetexasfirm.com; Darcy L. Jones |
| **Subject:** | RE: WSOU Investments LLC v. Salesforce Inc. et al  - Third Party Subpoenas |

Morgan,

Salesforce has already explained its license and standing defenses to you in detail multiple times. We have also explained to you—in email and during meet-and-confers—how the subpoenaed documents are relevant to these defenses. Given your clients' refusal to comply with the subpoenas, Salesforce will be moving to compel compliance.

Kind regards and Happy New Year,
Ian

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Tuesday, December 27, 2022 1:34 PM
**To:** Ian Wang <ianwang@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Christopher Smith <christophersmith@quinnemanuel.com>; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>; maclemore@thetexasfirm.com; Darcy L. Jones <DJones@kasowitz.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

**[EXTERNAL EMAIL from morgan@pstrials.com]**

---

Counsel for Salesforce,

I have repeatedly requested that you explain your licensing and standing theories to me in writing, in a format that I can share with the four clients you have indicated you want to confer with. You have repeatedly refused to do this, contending instead that my clients are sufficiently appraised of why you want to burden them with subpoenas based on an oral explanation that I was provided (while representing another client) many months ago.

You are going to have to put pen to paper (or fingers to keyboards) and explain your standing and licensing theories in some detail, in a form that can be shared with my clients, in order to file your motions to compel that you say you now want to file. And when you say things like "The Court recognized that the requested documents are relevant to Salesforce's license defense" I am going to want to review actual evidence, in the form of a hearing transcript (from a sealed hearing that I did not attend) with pin cites as to the particular parts of it that you claim support such an assertion. I haven't seen any written orders saying any such thing, but if I missed one, please let me know.

Unless and until you have articulated your theories in some more detail and supported them with evidence you deign to share with my clients and me, I do not think a further meet and confer call will be productive.

So, I suggest that you spend your time this week preparing your motions and supporting evidence and working out any un-sealing and protective order issues with the plaintiff. Please note that, so you do not run afoul of the existing SPO, I

will and hereby do formally agree to abide by the existing SPO, and I'm pretty sure all four of my clients would agree to do so as well. I can sign something to that effect if you would be so kind as to put it together.

Once you've put your papers and supporting evidence together, but before you file everything and initiate the new miscellaneous proceedings in the three different courts, you can share it all with me. And, after not just me but also my clients fully understand your theories, we can then have the intelligent conversation I have been suggesting we needed to have for the last six weeks or so, about whether the vasty overboard subpoenas you've served on these four entities might be narrowed down to get you some more of what you want. Further, after my clients and I have reviewed your motions, we could also discuss whether it might make sense to agree to transfer the motions back to the issuing court.

Please be advised that I'm not going to be available much this week between Christmas and New Years, but I will be happy to follow up with you on these issues in the New Year, after you've finally provided me with the information I keep requesting.

Best regards,
Morgan

---

**From:** Ian Wang <ianwang@quinnemanuel.com>
**Sent:** Friday, December 23, 2022 12:28 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Ray Zado <rayzado@quinnemanuel.com>; Christopher Smith <christophersmith@quinnemanuel.com>; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>; maclemore@thetexasfirm.com; Darcy L. Jones <DJones@kasowitz.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

We write to request a meet-and-confer next week regarding the subpoenas served on Orange Holdings, WSOU Holdings, WSOU Capital Partners, and OCO Capital Partners. During the discovery hearing on Wednesday, the Court granted Salesforce's motion to compel WSOU to produce all documents relevant to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ including without limitation, all operating agreements for Orange Holdings, WSOU Holdings, and WSOU Capital Partners. The Court recognized that the requested documents are relevant to Salesforce's license defense. With respect to the third party subpoenas, the Court directed Salesforce to file motions to compel in the district courts where compliance was required, and WSOU indicated that it does not object to any motions to compel. Salesforce intends to file the motions, and therefore requests a meet-and-confer to see if the parties can reach an agreement on the production of documents and a deposition to narrow the scope of the parties' disputes. Please let us know some dates and times next week when you are available for a meet-and-confer.

Kind regards,
Ian

---

**From:** Jared Kneitel jaredkneitel@quinnemanuel.com
**Sent:** Monday, December 19, 2022 10:02 PM
**To:** Morgan Pietz morgan@pstrials.com; Ray Zado rayzado@quinnemanuel.com; Christopher Smith christophersmith@quinnemanuel.com; Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; Darcy L. Jones DJones@kasowitz.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

As indicated in our December 12 email to you, you are permitted to share the final brief and exhibits 6-8 with your clients.

You are correct that you may have previously seen exhibit 1. You are also correct that exhibits 2-5 are referenced in the redacted portion of the argument; as these are WSOU confidential information, we have not shared them with you. If you wish to review exhibits 2-5, we suggest you seek permission from WSOU's counsel.

At present, we have not yet filed motions to compel related to the subpoenas in Nevada, Delaware, or New York.

Thank you,
Jared

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Monday, December 19, 2022 5:23 PM
**To:** Ray Zado <rayzado@quinnemanuel.com>; Christopher Smith <christophersmith@quinnemanuel.com>; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>; maclemore@thetexasfirm.com; Darcy L. Jones <DJones@kasowitz.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

**[EXTERNAL EMAIL from morgan@pstrials.com]**

---

Counsel,

[*Court staff has been removed from this thread*].

I am in receipt of the below email to chambers for Judge Gilliland, submitting the dispute chart related to my four non-party clients.

Am I permitted to share your two attachments that you submitted to the Court (the final brief and the zip file) with my clients?

In this regard, I note that your exhibits 1 to 5 from the zip file were all blank after a slip sheet stating that the document is "Confidential Information". Thus, it appears that you are declining to provide me with most of the evidence that your arguments are based upon. You may possibly have sent me your Exhibit 1 back in April, in connection with a different client I was representing at the time. But my clients haven't seen it. And I have no idea what your Exhibits 2-5 are and do not believe I have ever seen them. I presume they must be referenced in the redacted portion of your argument that I have also never seen or had explained to me. If you have provided your Exhibits 2-5 to me previously (AEO or otherwise), please advise.

Your final three exhibits, Exhibits 6-8, were NOT blanks. Exhibit 6 is a patent security agreement, Exhibit 7 is a complaint pending in Delaware, and then Exhibit 8 is a copy of the objections my office served for OCO that is marked as "CONFIDENTIAL," which we marked that way because the because the subpoena RFPs and topics that we were responding to were marked as such. I assume there is no issue with me providing your Exhibits 6-8 to my clients?

Finally, as far as I am aware, no motions to compel related to these subpoenas have been filed in federal courts in Nevada, Delaware, or New York. If I am wrong about that, please advise and please provide me with the relevant miscellaneous proceeding case numbers, if any.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*


**From:** Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com
**Sent:** Monday, December 19, 2022 10:29 AM
**To:** Greg Love Greg@swclaw.com; Mark Scott Mark_Scott@txwd.uscourts.gov; Todd Briggs toddbriggs@quinnemanuel.com; Mark Siegmund mark@swclaw.com; Ray Zado rayzado@quinnemanuel.com
**Cc:** Melissa Copp Melissa_Copp@txwd.uscourts.gov; WSOU v. Salesforce (KASOWITZ) WSOUvSalesforce@kasowitz.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; Morgan Pietz morgan@pstrials.com; Julie Goerlinger julie@pstrials.com; maclemore@thetexasfirm.com
**Subject:** RE: Brazos v. Salesforce - Discovery Dispute - 6:20-cv-01163 through 01172

Dear Mr. Scott,

Salesforce respectfully submits in advance of the discovery dispute hearing on December 21, 2022 one discovery dispute chart relating to four third-parties: Orange Holdings, WSOU Holdings, LLC, WSOU Capital Partners, LLC and OCO Capital Partners:

- Discovery dispute chart regarding Orange Holdings, WSOU Holdings, WSOU Capital Partners and OCO Capital Partners withholding of documents relevant to Salesforce's license defense.

The dispute chart is attached, and the accompanying exhibits are located in the attached .zip folder.

The third-parties are represented by Morgan Pietz of Pietz & Shahriari, LLP.

Due to the restrictions of the distribution of some of the confidential information supporting this dispute chart, please note that portions of the chart and the accompanying exhibits are partially redacted. However, this same information is provided in the dispute chart regarding ownership information against WSOU. Salesforce appreciates the Court's

assistance in keeping the portion of the Wednesday hearing discussing this confidential information sequestered from the third parties (absent confirmation from WSOU that it agrees to the distribution of its confidential information to these third parties).

Salesforce anticipates discussing confidential information, and requests a sealed hearing before the Court for this dispute.

Sincerely,

**Olga Slobodyanyuk**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5114 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
olgaslobodyanyuk@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Todd Briggs toddbriggs@quinnemanuel.com
**Sent:** Friday, December 16, 2022 3:31 PM
**To:** Morgan Pietz morgan@pstrials.com; Ray Zado rayzado@quinnemanuel.com; Christopher Smith christophersmith@quinnemanuel.com; Jared Kneitel jaredkneitel@quinnemanuel.com; Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; Darcy L. Jones DJones@kasowitz.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

We have not sent the Salesforce/third-party dispute chart to the Court yet. We are finishing up another chart with WSOU and plan on sending all of our dispute charts to the Court in a single email once they are all ready to go. We will copy you on the submission to the Court.

The Court also set a discovery hearing for next Wednesday at 2 Central. For more information, see attached email.

Thanks,
Todd

---

**From:** Morgan Pietz
**Sent:** Friday, December 16, 2022 10:16 AM
**To:** Ray Zado <rayzado@quinnemanuel.com>; christophersmith@quinnemanuel.com; jaredkneitel@quinnemanuel.com; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>;

maclemore@thetexasfirm.com; Darcy L. Jones <DJones@kasowitz.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Counsel for Salesforce,

Since we sent you our half of a dispute chart on Wednesday, as you repeatedly insisted we do, I have not heard anything further from Salesforce related to the four non-party subpoenas at issue. I have not been copied on any communications submitting the completed chart to Judge Gilliland's chambers. Have you submitted it? Are you still planning to do so?

Please forward me any communications to the Court relating to these issues, and copy me on any future such communications, if any.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*


**From:** Mandy Chen mandy@pstrials.com
**Sent:** Wednesday, December 14, 2022 5:59 PM
**To:** 'Ray Zado' rayzado@quinnemanuel.com; 'christophersmith@quinnemanuel.com' christophersmith@quinnemanuel.com; 'jaredkneitel@quinnemanuel.com' jaredkneitel@quinnemanuel.com; 'Olga Slobodyanyuk' olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; 'hkim@kasowitz.com' HKim@kasowitz.com; 'mark@swclaw.com' mark@swclaw.com; 'qe WSOU v Salesforce' qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; 'Darcy L. Jones' DJones@kasowitz.com
**Cc:** Morgan Pietz morgan@pstrials.com; Docketing docketing@pstrials.com
**Subject:** WSOU Investments LLC v. Salesforce Inc. et al

Counsel,

On behalf of Morgan Pietz, please find the attached completed dispute chart, and the accompanying exhibits. Please note that AEO legend has been removed in view of counsels' comments about the redactions.

Regards,

Mandy Chen
**PIETZ & SHAHRIARI, LLP**
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230

Tel.: (310) 424-5557
Fax: (310) 597-4626
E-mail: mandy@pstrials.com
www.pstrials.com

The information in this electronic mail message is confidential and for use of only the named recipient. The information may be protected by privilege, work product immunity or other applicable law. If you are not the intended recipient the retention, dissemination, distribution or copying of this e-mail message is strictly prohibited. If you receive this message in error please notify me immediately at (310) 424-5557 or by e-mail at mandy@pstrials.com.

**From:** Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com
**Sent:** Wednesday, December 14, 2022 9:26 AM
**To:** Jared Kneitel jaredkneitel@quinnemanuel.com; Morgan Pietz morgan@pstrials.com; Ray Zado rayzado@quinnemanuel.com; Christopher Smith christophersmith@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; Darcy L. Jones DJones@kasowitz.com; Brazos v. Salesforce (KASOWITZ) WSOUvSalesforce@kasowitz.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

Following up on our email to you on Monday, we are requesting that Orange, WSOU Holdings, and WSOU Capital Partners produce *every* operating agreement of those entities and all other relevant documents pertinent to Mr. Etchegoyen's direction and control (either directly or indirectly) of WSOU Investments. At present, the production is deficient.



As with Capital Partners, we are requesting the operating agreements of WSOU Holdings from May 7, 2019 through to the present. From the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and the Delaware Court of Chancery Litigation (*BP Terrier JV, LLC, ABN Investments LLC, and ABN Investments II LLC, Plaintiffs v. Stuart SHANUS and WSOU Capital Partners, LLC, Defendants and WSOU Holdings, LLC*, No. 2021-0624-MTZ, 2022 WL 584322, Del.Ch., February 22, 2022) the following operating agreements also exist: August 10, 2020, First Amendment to the 2019 Operating Agreement; December 31, 2020, Second Amendment to the 2019 Operating Agreement; and May 28, 2021, Amended Operating Agreement. We request production of those operating agreements and all others that exist. We also expect that WSOU Holdings will produce documents pertinent to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ including emails and

other communications from Mr. Etchegoyen –

As to Orange Holdings, none of its operating agreements have been produced. We are aware that Orange Holdings was incorporated in Nevada on May 1, 2017 and we request all operating agreements of Orange Holdings from that date through to the present. We also expect that Orange Holdings will produce documents pertinent to ████████████████████ ███████████ including emails and other communications from Mr. Etchegoyen –

These operating agreements and all pertinent documents concerning the ownership of the entities would be responsive to at least subpoena RFPs 1-11, 13, 17-19 and 21 as to WSOU Capital, at least subpoena RFPs 1-10, 12 and 16-20 as to Holdings, and at least subpoena RFPs 1-13, 15, and 19-23 as to Orange.

Please produce these documents by the close of business today as Mr. Etchegoyen will be deposed by Salesforce tomorrow. Your delay in producing these plainly relevant documents will likely necessitate an additional deposition of Mr. Etchegoyen at a later date.

Thank you,
Olga



**From:** Christopher Smith christophersmith@quinnemanuel.com
**Sent:** Tuesday, December 13, 2022 8:12 PM
**To:** Morgan Pietz morgan@pstrials.com; Ray Zado rayzado@quinnemanuel.com; Jared Kneitel jaredkneitel@quinnemanuel.com; Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; Darcy L. Jones DJones@kasowitz.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

We are looking forward to receiving your portion of the dispute chart tomorrow.

Please let us know your availability for a hearing next week, preferably earlier in the week. We are coordinating a hearing date with WSOU's counsel and the Court and need to propose a date and time to the Court by tomorrow afternoon. Our understanding is that you will be able to attend in-person or via Zoom.

Best regards,
Christopher

**Christopher Smith**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1109 First Avenue, Suite 210
Seattle, WA 98101
206.905.7068 Direct
206.905.7000 Main Office Number
206.905.7100 FAX

christophersmith@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jared Kneitel jaredkneitel@quinnemanuel.com
**Sent:** Monday, December 12, 2022 11:30 PM
**To:** Morgan Pietz morgan@pstrials.com; Ray Zado rayzado@quinnemanuel.com; Christopher Smith christophersmith@quinnemanuel.com; Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; Darcy L. Jones DJones@kasowitz.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

You are permitted to share the dispute chart with your clients. All sensitive confidential information has been redacted. Per the OGP, we are not permitted to share this confidential information with you. *See*, *e.g.*, Section VIII.

Thank you for serving the three operating agreements today █████████████████████████████████████████████████████████████████████████████████████ We note however that this is not the full universe of Holdings' nor Capital Partners' operating agreements. For example, the above agreements and the Delaware litigation against Holdings, Capital Partners, and Shanus references various other operating agreements for both Holdings and Capital Partners.

███████████████████████████████████████████████████████████████████████████████████████ We would hardly say that this is a nebulous theory.

As detailed in our prior correspondence, we are not required to continue to re-explain to you our standing theory (or licensing defense). We are looking forward to receiving your portion of the dispute chart on Wednesday.

Thank you,
Jared

**From:** Julie Goerlinger julie@pstrials.com
**Sent:** Monday, December 12, 2022 5:07 PM
**To:** Ray Zado rayzado@quinnemanuel.com; christophersmith@quinnemanuel.com; jaredkneitel@quinnemanuel.com; Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com
**Cc:** Morgan Pietz morgan@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com; Darcy L. Jones DJones@kasowitz.com
**Subject:** Re: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas - HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

Dear Counsel for Salesforce -

Per Morgan's email of today, attached are the WSOU Holdings and WSOU Capital Partners Operating agreements.

Regards.

Julie Goerlinger
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Direct: (714)925-3989
Tel: (310)424-5557
Fax: (310)597-4626
E-mail: julie@pstrials.com

---

**From:** Morgan Pietz
**Sent:** Monday, December 12, 2022 12:13 PM
**To:** 'Ray Zado' <rayzado@quinnemanuel.com>; 'christophersmith@quinnemanuel.com'
<christophersmith@quinnemanuel.com>; jaredkneitel@quinnemanuel.com; Olga Slobodyanyuk
<olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com;
mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>; maclemore@thetexasfirm.com;
'Darcy L. Jones' <DJones@kasowitz.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Dear Counsel for Salesforce,

Thank you for your one-two punch of Friday evening emails.

The dispute chart you sent me at 7:02 pm is marked as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY." I take it that I am not allowed to share any part of it with any of my clients?

Despite being marked as AEO, the dispute chart is also 21% redacted. You have not provided me with an unredacted version. Are you planning to share the redacted content with me, at least, at some point here in the next day or two?

Regarding Salesforce's nebulous-yet-much-ballyhooed license theory, which your office has been trumpeting since at least April of 2022, but curiously never moved for summary judgment on, I can confirm that, as promised, Julie Goerlinger of my office will be producing the WSOU Holdings and WSOU Capital Partners operating agreements later today. So you can confirm for yourselves that neither entity is ████████████████████████

As for your standing argument, it's a bit late in the day to be pointing to mere allegations from unrelated lawsuits as "at least br[inging] into question" whether or not there has ever been a breach of a loan agreement, don't you think? Whether there was ever a breach of a loan is a predicate fact you would need to establish in order for a standing argument to be viable. But you don't seem to be anywhere closer to establishing that predicate fact now than you were in April.

If you change your mind and accede to my repeated demand that you provide me with *written details that I can share with my four different clients*, that explains your standing and license theories in detail, then I think that would go a long way toward convincing my clients that they should at least take another look at potentially being more cooperative, beyond the objections they've already served and documents they've already agreed to produce. But if you cannot even

be bothered to provide something to my clients explaining to them exactly *why* you think they should be burdened with a rush-job of a subpoena over the holidays, then I'm not sure how you can reasonably expect them to go jumping through hoops for you.

Mainly as a courtesy to Judge Gilliland, and without waiving any arguments, I will provide a formal response to your dispute chart on Wednesday, as two different lawyers from QE have now demanded that I do.

In the meantime, please feel free to provide me with any of the information I've requested, and I'll be happy to pass it along to my clients, and they can consider it before I finalize a response to your chart and all related issues on Wednesday.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*


**From:** Christopher Smith christophersmith@quinnemanuel.com
**Sent:** Friday, December 9, 2022 7:04 PM
**To:** Morgan Pietz morgan@pstrials.com; Julie Goerlinger julie@pstrials.com
**Cc:** qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Discovery Dispute - Third Party Subpoenas

Counsel,

Please find attached discovery dispute chart and exhibits. Please note that certain, limited content is redacted as highly confidential pursuant to the protective order in this case. We are happy to work with the court and WSOU to get you access to this information in accordance with the limitations imposed by the protective order.

Pursuant to the procedures set forth in the OGP, please provide the responding parties' position by Wednesday, December 14th. Please note we will include the parties' correspondence in any submission of the dispute chart to the court as you have requested.

**Christopher Smith**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

600 University Street, 28th Floor
Seattle, WA 98101
206.905.7068 Direct
206.905.7000 Main Office Number
206.905.7100 FAX

christophersmith@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Ray Zado <rayzado@quinnemanuel.com>
**Sent:** Friday, December 9, 2022 6:20 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

Almost all of our team is in trial, at deposition, or at our firm's annual partner meeting, so it falls on me to respond to you.

First, there is no "thinly-veiled desire" – the parties are at an impasse. The subpoenaed parties have served their objections, not produced any documents, and not agreed to produce a witness. The parties have met and conferred, and the subpoenaed entities have refused to provide the scope of information called for by Salesforce's topics. To the extent there is any alleged "burden" in responding to the subpoenas, which is minimal at best, the subpoenaed parties' objections failed to specify any alleged burden, instead offering nothing more than boilerplate objections.

Second, the offer to produce some unspecified "something" based on a set of conditions whose approval lies solely within your and/or your clients' unfettered discretion does not mean that there is no impasse.

Third, the paucity of material offered in your email below – ███████████████████████████████ ███ – comes nowhere near fully responding to our subpoena, nor can it possibly show in and of itself that Mr. ████████████████████████████████████████████ Moreover, you transparently fail to mention producing any information regarding Orange, for which I think it is no surprise for us to say it is clear ████████████ ██████████████████████████████████

With respect to your respective clients differing views on how to proceed, the fact of the matter is that (1) all your clients responded, objected, and failed to produce any information, (2) you did not raise any specific compromises or counters for any of those clients in the meet an confer.

With respect to your claim that we are somehow "obligated" to *repeatedly* walk you through the basis of Salesforce's license defense, that is simply not correct nor consonant with the OGP or the practice in this court. As you no doubt recall, I personally spent over an hour and a half on a prior meet and confer where I walked you through this defense in detail. Olga then conducted an additional meet and confer with you, highlighting that and addressing these particular subpoenas. You also have previously reviewed the license agreement itself that serves as the basis of Salesforce's defense. You have in your possession substantially more information than is needed to advise your clients on how to proceed with these subpoenas (and note that it is not "we" that need to explain anything to your clients, with whom we have no contact, it is you, their counsel, who are obligated to advise them regardless of whether they have access to highly confidential information of other parties). We also note that your past knowledge of the license and Salesforce's

12

license defense apparently had no impact on how your clients chose to proceed in responding to the subpoenas, as those responses amounted to nothing more than blanket, boilerplate objections.

In addition to the ownership or control of entities, we also note that you fail to articulate how the multiple topics in the subpoenas that relate to involvement, ownership or control over the Asserted Patents in this action are somehow not relevant or burdensome.

Your claims about what the court orders referenced in our correspondence and the meet and confer required are as clear a case of goose gander as I recall. In this action, you repeatedly have made claims that you cannot produce or should not be obligated to produce information based on other court orders, where the court orders included no detail or explanation relevant to your positions (to the extent you identified the specific orders at all). Regardless, it is clear from the order WSOU was compelled to produce emails from the files of Mr. Etchegoyen in view of Salesforce's license defense, which you never address.

Moreover, your assertion that you have no idea what is the basis for a license to Uniloc covering WSOU is not credible, given you have seen and have in your possession the license, I walked you through it in painstaking detail, you know ██████████████████████████████████████ which to date you have never denied.

Additionally, your claim that "there has never been a default" is at least brought into question by the pending litigation filed by BP Terrier and others against Shanus, Holdings, and Capital Partners for various breaches, which litigation you conveniently failed to mention in connection with the prior discovery dispute with BP Terrier.

In short, your clients' objections, your email, and your statements at the meet and confer fail to articulate any particular burden in responding to Salesforce's subpoenas, you have more than enough information to evaluate Salesforce's license defense, you have been walked through it in detail, and you have made no offer to respond other than a token production that would not get to the information directly relevant to the defense. The parties are thus at an impasse, and we will be submitting our dispute chart shortly. We expect your responsive position by Wednesday in accordance with the OGP.

Regards,

Ray

**Ray Zado**
*Partner,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5011 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
rayzado@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Morgan Pietz
**Sent:** Friday, December 9, 2022 4:05 PM
**To:** Jared Kneitel jaredkneitel@quinnemanuel.com; Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce

qewsouvsalesforce@quinnemanuel.com; maclemore@thetexasfirm.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Please make sure and include this entire email thread where I ask you for information you are refusing to provide in any "dispute chart" you submit to a court.

Which court did you have in mind, by the way?

In any event, I do have one update to report, which is that I have been authorized to produce the Operating Agreements for WSOU Holdings and for WSOU Capital Partners. You'll get them next week.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Jared Kneitel <jaredkneitel@quinnemanuel.com>
**Sent:** Friday, December 9, 2022 4:02 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>; maclemore@thetexasfirm.com
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

The matters are by no means resolved. The subpoenaed parties have not provided documents responsive to the subpoenas despite the unambiguous basis and explanation for them including, as mentioned below, the Court having already considered the issue and finding Salesforce's license defense viable for discovery purposes.

Please be advised that we are submitting a dispute chart on this issue later today.

Thank you,



**From:** Morgan Pietz
**Sent:** Friday, December 9, 2022 12:59 PM
**To:** Olga Slobodyanyuk olgaslobodyanyuk@quinnemanuel.com; Julie Goerlinger julie@pstrials.com; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce qewsouvsalesforce@quinnemanuel.com;

maclemore@thetexasfirm.com

**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

[+ Dan MacLemore]

Olga,

Since you emailed me on Monday evening, I haven't heard from you or anyone else at your firm. Nobody has responded to my email from Tuesday morning asking you to provide me with information I can relay to my clients explaining why they should be burdened with your outstanding third party subpoenas.

On Wednesday, our office served timely objections for WSOU Capital Partners, which we are also now representing. Those objections are similar to the ones we served for our other three clients discussed below, because the subpoenas request similar information. And they all suffer from the same relevancy and burden issues discussed in the email chain below.

I understand, based on what you told me previously, that your discovery cutoff is a week from today.

Can we consider these matters resolved?

Or, if your plan is to try and turn your own lack of diligence into my clients' and the courts' emergency over the course of the next week, then you had better please advise what you have in mind. My availability for next week is filling up fast.

Best regards,
Morgan

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz [mailto:morgan@pstrials.com]
**Sent:** Tuesday, December 6, 2022 7:56 AM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>;

hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

[EXTERNAL EMAIL from morgan@pstrials.com]

Olga,

As I mentioned when we spoke yesterday, I am flying today. So this is going to have to be a shorter email than I would like, because I need to pack up and head for the airport here in a few minutes.

Notwithstanding your thinly-veiled desire to just declare the situation at an impasse, so you can fire off motion(s) to compel, I don't think we are at an impasse yet. As I explained to you on the call yesterday, as a reasonable next step in this process, I would like to try and explain to each of my three different clients exactly WHY they are being burdened with these subpoenas. I expect that most of them will be willing to produce at least something. For example, I believe I should be able to produce WSOU Holdings' operating agreement and capitalization table, which will show that Ethegoyen doesn't own or control the company. Further, as I also mentioned on our call yesterday, I suspect that my three current clients may not all necessarily share the same views about how to proceed here.

You write in your email below that "we," i.e., Salesforce/QE, "are not obligated to repeatedly "walk [you] from Point A, a license from Uniloc, through each of these various stepping stones of definitions and contractual interpretation, to a point C where Salesforce purportedly has a license from the plaintiff WSOU Investments" to obtain a response regarding our valid and enforceable subpoenas."

Sorry, but yes you are obligated to do so. And, more importantly, its not me you need to explain it to, its my three different current clients. Whatever explanation you've previously provided to me 8-months ago, orally is long since forgotten, and was AEO In the first place. And what I'll note about all the materials you have now attached, all of which I think are also AEO or under seal, is that your theories are not actually written down in detail ANYWHERE. The court orders just memorialize what was ordered; they don't detail your arguments. Your attachments confirm that your office has sent me the Uniloc license three times now. But what I have yet to see committed to paper from your office in any of it is an explanation for how anything it says in the *license from Uniloc* amounts to a *license from WSOU*. That is what you need to first explain to my clients before you can reasonably expect them to even consider going about an eleventh-hour, short notice document collection blitz over the holidays. Similarly, if you think there is some new deposition testimony that revives a standing theory, even though I understand that there has never been a default under any loan, then you need to please provide me with that, too.

An appropriate next step here in a process characterized by good faith on your part, and that would comply with Rule 41's affirmative obligation that subpoenaing parties minimize burden on subpoena recipients, would be for you to simply write up your standing and license theories in detail in *a document that I can share with my clients without running afoul of a protective order*. And then once my clients each understand WHY the documents you are seeking are purportedly relevant, I could then have appropriate conversations with each of them about WHAT documents might be produced and by whom.

In short, you've got it backwards. Its not reasonable to insist that my clients decide what they will produce before you have explained to them why you think they should have to do so.

As noted, I'm flying today; have to leave now, actually. If you can send me what I've requested by later today, I will review when I land tonight, pass along to my clients whatever I am authorized to share without violating a protective order (please be clear on what can or cannot be shared with my client reps), and I will endeavor to speak with all of them again soon thereafter, and I expect we could have another call and my clients could reach a more definitive decision about what they will or will not do by later this week.

Best regards,
Morgan

---

**From:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>
**Sent:** Monday, December 5, 2022 5:30 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Counsel,

Please find the subpoena and proof of service to WSOU Capital Partner enclosed. Please let us know whether you represent these entities.

I'm also attaching our prior correspondence regarding the license defense.

As a courtesy in view of your request at the meet and confer, we are requesting that Uniloc's counsel provide consent for disclosure of the license agreement to your additional clients and will inform you as to any response. However, we see no reason to delay compliance with the duly issued subpoenas in view of this request, nor does your response or your statements at the meet and confer, which did not make any representations regarding whether your clients would comply with the subpoena even if this approval is given, countenance any such delay. In particular, (1) the description of Salesforce's license defense has already been provided to you, including in detail in the parties' prior meet and confer; (2) in view of that defense, the relevance of the information sought by Salesforce relating to the direction and control of WSOU Investments, LLC and its affiliates; (3) you already have reviewed the relevant Uniloc agreement and are thus fully appraised of its terms; attorneys routinely must advise clients on matters without disclosing confidential information of other parties without the clients having access thereto; and (4) our grounds for seeking the information from third parties – WSOU Investments, LLC has represented that the information sought is in the possession of these third parties - is more than sufficient to provide the necessary context for your clients, particularly in light of your history with our substantive positions.

As I explained during the call, we are not obligated to repeatedly "walk [you] from Point A, a license from Uniloc, through each of these various stepping stones of definitions and contractual interpretation, to a point C where Salesforce purportedly has a license from the plaintiff WSOU Investments" to obtain a response regarding our valid and enforceable subpoenas, brought based on party representations that these specific third parties have the information we seek. Indeed, we have already provided this explanation to you in the context of prior disputes with clients of yours. Moreover, the Court has already considered this issue and found the license defense viable for discovery purposes, as set forth in the order granting Salesforce's motion to compel production of Craig Etchegoyen's WSOU Investments, LLC d/b/a Brazos Licensing and Development email accounts (Dkt. 94); granting Salesforce's motion to compel a supplemental response from Plaintiffs on Interrogatory No. 12 (Dkt. 138) ████████████████████████████████
████████████████████████████████████████████████████████████████████████

Accordingly, please confirm by 2:30 PT on Tuesday whether Orange Holdings, OCO Capital, and WSOU Holdings, will be providing documents on behalf of this subpoena, and whether you have a position with respect to WSOU Capital Partners. If we do not hear from you at that time, we will deem the parties at an impasse in view of your continued refusal to confirm you will produce the requested information. If you believe an additional call will assist in resolving the parties current dispute, we will be available between 11:30 and 1:30 PT tomorrow to discuss.

Sincerely,
Olga

17

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Monday, December 5, 2022 10:00 AM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Julie Goerlinger <julie@pstrials.com>; hkim@kasowitz.com; mark@swclaw.com; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

<span style="background-color: yellow">[EXTERNAL EMAIL from morgan@pstrials.com]</span>

[*Please note that I've deleted a bunch of people from the cc's line, and limited this email to the attorneys I believe are current counsel of record, because I am attaching an email that has AEO attachments thereto*]

Olga,

Nice chatting with you this morning.

After we hung up, I dug through my email and found what I had in mind, which was an email I received in connection with one of Salesforce's earlier efforts to subpoena a couple of different third parties that I represented previously. Please see the attached email thread I was copied on, submitting a dispute to the Court, which included a copy of the Uniloc license agreement as an exhibit to the submission to the Court. As I suspected, both the agreement itself and the parties' positions about the license defense were all designated as either "Highly Confidential – Attorneys' Eyes Only" or "Confidential – Outside Attorneys' Eyes Only".

As discussed today, I'll look forward to receiving your response to my questions about whether I can share the Uniloc/Salesforce license agreement, and Salesforce's relevance theory, with the three new clients of mine, who we served objections for last week, namely, OCO Capital Partners, LP, WSOU Holdings, and Orange Holdings.

On our call today, you mentioned the purportedly relevant provisions of the Uniloc license as being: 1.1, 1.2, 1.6, 1.7, 2.1, and 2.5. I thought I had seen, or maybe it was heard, someone from your firm try and explain your theory beyond just the reference to this potpourri of different numbered provision. Could you please find that or send me your most current explication of the theory, and confirm whether I can share it with my current clients? In other words, I would appreciate it if you could please, in a way I can share with my clients, walk me from Point A, a license from Uniloc, through each of these various stepping stones of definitions and contractual interpretation, to a point C where Salesforce purportedly has a license from the plaintiff WSOU Investments.

I'll get back to you about whether my office will also be representing WSOU Capital Partners, which you said you served on 11/22 and which has a return date on 12/15. Could you please send me a copy of that subpoena, as well – I forgot to ask.

Thanks much.


Best regards,
Morgan

**From:** Morgan Pietz
**Sent:** Friday, December 2, 2022 6:53 AM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>
**Cc:** Ian Wang <ianwang@quinnemanuel.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; HKim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com; Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>; Mandy Chen <mandy@pstrials.com>; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>
**Subject:** Re: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Monday 9 am pacific works for me.

Sent from my iPhone

> On Dec 2, 2022, at 1:25 AM, Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com> wrote:

> Counsel,

> Please advise of your availability to meet and confer on Monday, December 5, between 9 am and 11 am PT.

> Thank you,
> Olga

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, December 1, 2022 2:49 PM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>
**Cc:** Ian Wang <ianwang@quinnemanuel.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; HKim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com; Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>;

Mandy Chen <mandy@pstrials.com>; qe WSOU v Salesforce <qewsouvsalesforce@quinnemanuel.com>
**Subject:** Re: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

[EXTERNAL EMAIL from morgan@pstrials.com]

---

Hi Olga,

I've been on a plane all day. Not free anymore tomorrow but I could do Monday morning if you want to propose some times to talk then.

Best regards,
Morgan

Sent from my iPhone


> On Dec 1, 2022, at 3:27 PM, Olga Slobodyanyuk
> <olgaslobodyanyuk@quinnemanuel.com> wrote:
>
>
> Counsel,
>
> Following up regarding the below.
>
> Thank you,
> Olga

---

**From:** Olga Slobodyanyuk
**Sent:** Wednesday, November 30, 2022 12:25 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Ian Wang <ianwang@quinnemanuel.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>; Mandy Chen <mandy@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Counsel,

We are available to meet and confer this Friday, December 2, between 10 am PT and 4 pm PT. Let us know if you're available within that time frame, and I will circulate a calendar invite.

Regarding your specific questions for the WSOU Holdings subpoena, we will be prepared to discuss these issues during the meet and confer. However, at a high-level:

1. Your "gist" of the standing arguments for WSOU Holdings is not correct; instead, our arguments stem in part from the allegations against WSOU Holdings, a named defendant by BP Terrier JV, LLC and other plaintiffs in a Chancery Court of Delaware litigation.

2. Your summary of the license defense argument is also not correct – we went through the exact provisions and arguments of the license defense with you a couple of months ago, but would be happy to do so again during our meet and confer. In any event, Mr. Shanus' recent testimony in this case confirms that the information we are seeking is highly relevant to Salesforce's license defense.

Thank you,
Olga

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Monday, November 28, 2022 9:30 AM
**To:** Ian Wang <ianwang@quinnemanuel.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>; Mandy Chen <mandy@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

==**[EXTERNAL EMAIL from morgan@pstrials.com]**==

---

Thanks.


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com

(310) 424-5557

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Ian Wang <ianwang@quinnemanuel.com>
**Sent:** Sunday, November 27, 2022 11:04 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>; Mandy Chen <mandy@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

Morgan,

Salesforce agrees to the requested extension regarding the Orange Holdings subpoena.

**From:** Morgan Pietz [mailto:morgan@pstrials.com]
**Sent:** Sunday, November 27, 2022 6:55 PM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Ian Wang <ianwang@quinnemanuel.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com;

greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com;
jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin
<admin@pstrials.com>; Mandy Chen <mandy@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al - Third Party Subpoenas

**[EXTERNAL EMAIL from morgan@pstrials.com]**

Olga,

I am writing to address a few open issues related to the spate of third party subpoenas
your firm has served on behalf of Salesforce in connection with WSOU patent litigation
in the Western District of Texas.

**(1) Orange Holdings – Please Confirm Extension for Further Response to 12/1 at 9:00
am Eastern Time**

My office will be representing Orange Holdings in connection with the subpoena your
office recently issued (signed by Ian Wang who is cc'd). Can you please confirm whether
this one has been served and if so when and how? I just reviewed a copy of the
subpoena and see that it calls for compliance tomorrow (11/28/22) at 9:00 a.m. in Reno
Nevada.

Orange Holdings will not be producing a witness tomorrow, so you can go ahead and
cancel the court reporter if you have one reserved.

I hereby object on behalf of Orange Holdings that all of the document requests and
topics are unduly burdensome, overbroad, seek irrelevant information, and that
Salesforce has not sufficiently attempted to obtain the requested information from
parties to the litigation. The objections my office previously prepared to the subpoena
to WSOU Holdings (see discussion below) should be deemed incorporated by reference
as objections to the subpoena to Orange Holdings, to the extent your requests and
topics seek the same information from both entities (many of the defined terms,
requests, and topics appear to be identical).

I intend to have my office prepare more formal, written objections for Orange Holdings,
which will be similar to the ones we've done for WSOU Holdings, but I've only just seen
the actual subpoena tonight and noticed that the fuse is so short, coming, as it does,
immediately after the long Thanksgiving weekend.

**Please confirm that, as a professional courtesy, you will extend the deadline for
(further, more formal) objections to the Orange Holdings subpoena to Thursday 12/1
at 9:00 a.m. Eastern Time.**

**(2) OCO Capital Partners LP – Objections Will be Forthcoming**

I will also be representing this entity, which has also received a subpoena similar to the
one served on WSOU Holdings and Orange Holdings, and which will also be preparing
written objections to the subpoena. Those objections are currently due on 12/1 at 9 am
Eastern Time -- the same timeframe I am proposing for Orange Holdings.

**(3) WSOU Holdings –M&C Call re Objections?**

Following up on my email of 10 days ago (see below), did you still want to set a call to confer about the objections my office previously served for WSOU Holdings? I am no longer free tomorrow afternoon.

Tuesday or Wednesday of this week could work, but perhaps it would make more sense to set a time on Thursday or Friday, and we could confer about all three of the open issues discussed above, since you will have written objections from me for all three entities by then. Assuming you promptly confirm the extension for Orange, I can try and get you all the objections by Wednesday midday, if that is helpful to move things along.

Please advise, thanks.

Best regards,
Morgan


Morgan E. Pietz
morgan@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Flr.
Culver City, CA 90230
+1 (310) 424-5557



---

**From:** Morgan Pietz
**Sent:** Thursday, November 17, 2022 1:07 PM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Mandy Chen <mandy@pstrials.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al

Hi Olga,

My apologies for a tardy response. I just got hired to take over a new matter set for trial

in January where a bunch of motions need to be filed, and also I have an appellate brief due in another case, and of those papers in both cases are all due this coming Wednesday, the day before Thanksgiving.

Can we please set a meet and confer call on the below for right after the holiday weekend; say Monday 11/28 (I'm free after 2 Pacific) or 11/29 (I'm currently pretty open after 11 am Pacific)?

In the meantime, I'd like you please elaborate a little bit on your relevancy theory. I think I understand your arguments, but I want to make sure.

Is your standing argument that you are hoping that WSOU Holdings might have come to obtain some kind of ownership interest in the patents it suit, by say foreclosing on some kind of loan it made to WSOU Investments, or whatever, which would then mean that Investments lacked or lacks standing to sue. Is that the gist of what you are arguing on standing?

And then as for Salesforce's purported license defense, which I am generally familiar with from some back and forth with your firm a few months ago on behalf of other third parties Salesforce tried to subpoena; you believe tha ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████  Have I got that right?

I'd appreciate it if you could confirm if there is something missing about your relevance theory ahead of our call, and let me know if either of my proposed time slots work for a call.

Best regards,
Morgan

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>
**Sent:** Monday, November 14, 2022 3:18 PM

**To:** Morgan Pietz <morgan@pstrials.com>; Mandy Chen <mandy@pstrials.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al

Counsel,

Following up about this.

Thank you,
Olga

---

**From:** Olga Slobodyanyuk
**Sent:** Friday, November 11, 2022 1:32 PM
**To:** 'Morgan Pietz' <morgan@pstrials.com>; Mandy Chen <mandy@pstrials.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Salesforce Inc. et al

Counsel,

Thank you for your response. Are you available to meet and confer early next week? Tuesday or Wednesday at either 11 am or 2 pm Pacific work for us next week if you're still available at that time on 11/15 and 11/16.

Here are responses to your questions:

1. Fact discovery cut-off is 12/16
2. The information we seek from WSOU Holdings is relevant to our standing and license defenses.
3. We seek the specific documents or testimony that is described in our subpoena to WSOU Holdings. The information we seek is fully described in our subpoena, so I don't fully understand the nature of your request. However, for your benefit, these documents and testimony include, but is not limited to:
   1. WSOU Holdings formation;
   2. WSOU Holdings ownership, control, and corporate structure;
   3. Relationship between WSOU Holdings, Craig Etchegoyen, and WSOU Investments;
   4. WSOU Holdings communications with other key third parties in this action (listed in RFP Nos. 12, 13, 16, 17)
   5. WSOU Holdings documents related to these litigations or the WSOU patents.
4. We have briefed and argued a motion to compel this information directly from the plaintiff. The resulting discovery order is attached. We can discuss, at a high-level, WSOU's response to this interrogatory after this discovery order and its document production, which necessitated this subpoena, during our meet and confer, due to WSOU's confidentiality designations on these materials.

Thank you,
Olga

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Friday, November 4, 2022 2:53 PM
**To:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>; Mandy Chen <mandy@pstrials.com>; Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson <kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Julie Goerlinger <julie@pstrials.com>; Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Dell Technologies Inc. et al

**[EXTERNAL EMAIL from morgan@pstrials.com]**

Hi Olga,

Apologies for a somewhat delayed response. I got Covid last week and am just now fully recovered and fully catching up on emails. Thankfully, it was not too big a deal for me.

With respect to Salesforce's desire to meet and confer about yet another third party subpoena it has served, I have a few questions I'd like you please address ahead of such a call:

1. What is the current fact discovery cutoff in this litigation?
2. Please explain, in general terms, your theory as to why the information sought from non-party WSOU Holdings, which I understand does not own—and has never owned—any of the patents at issue, is relevant to the claims and defenses in your case.
3. Please identify what specific documents or testimony you believe is relevant to your claims and defenses, that you want to obtain from non-party WSOU Holdings via the instant subpoena, but which you have been unable to obtain from the plaintiff WSOU Investments.
4. For documents and testimony identified in response to the foregoing, please explain what efforts, if any, that you have taken to obtain that information from the plaintiff WSOU Investments, and where those efforts stand at present, and specify what information out of everything you have requested you believe non-party WSOU Holdings would be able to provide you with, but that the plaintiff WSOU Investments cannot provide you with.

For a call, I am currently available next week on Tuesday and Wednesday at either 11 am or 2 pm Pacific time. But, as indicated, I would appreciate some responses to the foregoing questions before we conduct a call.

Best regards,
Morgan



Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557



*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Olga Slobodyanyuk <olgaslobodyanyuk@quinnemanuel.com>
**Sent:** Tuesday, November 1, 2022 9:41 AM

**To:** Mandy Chen <mandy@pstrials.com>; Caleb Braley
<calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com; Jared Kneitel
<jaredkneitel@quinnemanuel.com>; Kevin Johnson
<kevinjohnson@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>; Sam
Stake <samstake@quinnemanuel.com>; Scott Cole <scottcole@quinnemanuel.com>;
Todd Briggs <toddbriggs@quinnemanuel.com>; cjia@kasowitz.com;
djones@kasowitz.com; hkim@kasowitz.com; hstern@kasowitz.com;
jsutliff@kasowitz.com; jdowning@kasowitz.com; jonathan.hicks@dlapiper.com;
jwaldrop@kasowitz.com; jwhitehill@kasowitz.com; jlaporte@kasowitz.com;
ldartevelle@kasowitz.com; mbarber@kasowitz.com; mlawrence@kasowitz.com;
ndorman@kasowitz.com; pwilliams@kasowitz.com; ryan@etheridgelaw.com;
rmadden@kasowitz.com; tnguyen@kasowitz.com; travis@etheridgelaw.com;
brett@etheridgelaw.com; brian@etheridgelaw.com; greg@swclaw.com;
jhuang@etheridgelaw.com; mark@swclaw.com; jim@etheridgelaw.com;
jfischer@kasowitz.com
**Cc:** Morgan Pietz <morgan@pstrials.com>; Julie Goerlinger <julie@pstrials.com>;
Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** RE: WSOU Investments LLC v. Dell Technologies Inc. et al

Counsel,

Please advise of your availability to meet-and-confer later this week regarding these
responses and objections.

Sincerely,

**Olga Slobodyanyuk**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5114 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
olgaslobodyanyuk@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Mandy Chen <mandy@pstrials.com>
**Sent:** Thursday, October 20, 2022 5:42 PM
**To:** Caleb Braley <calebbraley@quinnemanuel.com>; fcorredor@conmetkane.com;
Jared Kneitel <jaredkneitel@quinnemanuel.com>; Kevin Johnson
<kevinjohnson@quinnemanuel.com>; Olga Slobodyanyuk
<olgaslobodyanyuk@quinnemanuel.com>; Ray Zado <rayzado@quinnemanuel.com>;
Sam Stake <samstake@quinnemanuel.com>; Scott Cole
<scottcole@quinnemanuel.com>; Todd Briggs <toddbriggs@quinnemanuel.com>;
cjia@kasowitz.com; djones@kasowitz.com; hkim@kasowitz.com;
hstern@kasowitz.com; jsutliff@kasowitz.com; jdowning@kasowitz.com;
jonathan.hicks@dlapiper.com; jwaldrop@kasowitz.com; jwhitehill@kasowitz.com;
jlaporte@kasowitz.com; ldartevelle@kasowitz.com; mbarber@kasowitz.com;

mlawrence@kasowitz.com; ndorman@kasowitz.com; pwilliams@kasowitz.com;
ryan@etheridgelaw.com; rmadden@kasowitz.com; tnguyen@kasowitz.com;
travis@etheridgelaw.com; brett@etheridgelaw.com; brian@etheridgelaw.com;
greg@swclaw.com; jhuang@etheridgelaw.com; mark@swclaw.com;
jim@etheridgelaw.com; jfischer@kasowitz.com
**Cc:** Morgan Pietz <morgan@pstrials.com>; Julie Goerlinger <julie@pstrials.com>;
Thomas Burke <tom@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** WSOU Investments LLC v. Dell Technologies Inc. et al

<mark>**[EXTERNAL EMAIL from mandy@pstrials.com]**</mark>

---

All,

Please see attached:

**RESPONSES AND OBJECTIONS TO REQUESTS FORPRODUCTION AND
DEPOSITION TOPICS**

Regards,

Mandy Chen
**PIETZ & SHAHRIARI, LLP**
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
Tel.: (310) 424-5557
Fax: (310) 597-4626
E-mail: mandy@pstrials.com
www.pstrials.com

The information in this electronic mail message is confidential and for use of only the
named recipient. The information may be protected by privilege, work product
immunity or other applicable law. If you are not the intended recipient the retention,
dissemination, distribution or copying of this e-mail message is strictly prohibited. If you
receive this message in error please notify me immediately at (310) 424-5557 or by e-
mail at mandy@pstrials.com.

# EXHIBIT 27

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| [PLAINTIFF][, et al.,] | § | |
| | § | |
| v. | § | Case No. 6:00-CV-000-ADA |
| | § | |
| [DEFENDANT][, et al.] | § | |

## SAMPLE PROTECTIVE ORDER FOR PATENT CASES

WHEREAS, Plaintiff _____ and Defendant _____ , hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.      Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material").   Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL."  The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought.   For deposition and hearing transcripts, the

word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2.  Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.  With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.  All copies, reproductions, extracts,

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," individually and collectively.

digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.     A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may be made at any time.  Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment.    Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated.    The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5.     "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 15 herein:

(a)     Outside counsel of record in this Action for the Parties.

(b)     Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

(c)     In-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action.

(d)     Up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent.

(e)     Outside consultants or experts retained for the purpose of this litigation, provided that:  (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert, including a list of other cases in which the individual has provided a report or testified (at trial or deposition) and a list of companies that the individual has been employed by or provided consulting services pertaining to the field of the invention of the patent(s)-in-suit or the products accused of infringement within the last four years and a brief description of the subject matter of the consultancy or employment, at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert.   The Parties agree to promptly confer and use good faith to resolve any such objection.  If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure.   The objecting Party shall have the burden of proving the need for a protective order.  No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)     Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(g)     The Court and its personnel.

6.     A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7.      Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.   Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.   Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.      To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9.      For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–c) and (e–g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10.     For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals

listed in paragraphs 5(a–b) and (e–g); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel designated pursuant to paragraph 5(c) who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.

11.     For Protected Material designated CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

    (a)    Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 11(h and k) below. Additionally, except as provided in paragraph 11(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel or its vendors.

    (b)    The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

    (c)    The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

    (d)    The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above.

    (e)    Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a

---

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the

Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above.   A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

(f)      To the extent portions of Source Code Material are quoted in a Source Code Exhibit, either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE.

(g)      Except as set forth in paragraph 11(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents that, pursuant to the Court's rules, procedures, and order, must be filed or served electronically.

(h)      The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, which shall presumptively be a total of ten (10), all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.

(i)      Should such printouts or photocopies be permissibly transferred back to electronic media, such media shall be labeled "CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such.

(j)      If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition).

(k)      A producing Party's Source Code Material may only be transported by the receiving

---

analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(e).

Party at the direction of a person authorized under paragraph 11(e) above to another person authorized under paragraph 11(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express, or other similarly reliable courier.   Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet.

12. Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.   To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.   Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

13. Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.   If documents, information, or

other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.   Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material.    The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

14.    There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

15.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee,

or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL.    DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

16.   Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order.   Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.   Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

17.   Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court.   The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing.    Exhibits to a filing shall conform

to the labeling requirements set forth in this Order.    If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

18.     The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

19.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn.    If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief.   Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.   Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.   In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.  Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

20.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order.  A copy of the acknowledgment form is attached as

Appendix A.

21. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

22. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL - SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

23. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24. The failure to designate documents, information, or material in accordance with this Order

and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25. Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27. Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| [PLAINTIFF][, et al.,] | § | |
| | § | |
| v. | § | Case No. 6:00-CV-000-ADA |
| | § | |
| [DEFENDANT][, et al.] | § | |

**APPENDIX A
UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING
PROTECTIVE ORDER**

I, _____, declare that:

1.　　My address is _____.

　　　My current employer is _____.

　　　My current occupation is _____.

2.　　I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.　　I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that is disclosed to me.

4.　　Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL -

1

SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

EXHIBIT 28

# EXHIBIT 29

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,** | **Civil Action No. 6:20-cv-01163-ADA-DTG** |
| | **Civil Action No. 6:20-cv-01164-ADA-DTG** |
| *Plaintiff,* | **Civil Action No. 6:20-cv-01165-ADA-DTG** |
| | **Civil Action No. 6:20-cv-01166-ADA-DTG** |
| **v.** | **Civil Action No. 6:20-cv-01167-ADA-DTG** |
| | **Civil Action No. 6:20-cv-01168-ADA-DTG** |
| **SALESFORCE.COM, INC.,** | **Civil Action No. 6:20-cv-01169-ADA-DTG** |
| | **Civil Action No. 6:20-cv-01170-ADA-DTG** |
| *Defendant.* | **Civil Action No. 6:20-cv-01171-ADA-DTG** |
| | **Civil Action No. 6:20-cv-01172-ADA-DTG** |

## <u>ORDER REGARDING DISCOVERY DISPUTES</u>

This Court, having considered disputes raised by Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development's ("Plaintiff") and Defendant Salesforce.com, Inc. ("Defendant") during the December 21, 2022, Discovery Hearing, hereby ORDERS the following:

1. Defendant's request to compel Plaintiff's production of operating agreements from WSOU Holdings, LLC ("Holdings") and WSOU Capital Partners, LLC ("Capital Partners"), and equivalent document (*e.g.*, corporate bylaws) from Orange Holdings ("Orange"), is DENIED-IN-PART and GRANTED-IN-PART. Plaintiff is ORDERED to produce such documents to the extent they are in its possession, custody, and control. Defendant's request for the production of funding agreements is DENIED. Documents that are relevant to Mr. Etchegoyen's control of WSOU, including control of WSOU Holdings, LLC ("Holdings"), WSOU Capital Partners, LLC ("Capital Partners"), and Orange Holdings, is GRANTED. Plaintiff shall search for and produce documents related to the ownership or control of Holdings, Capital Partners, and Orange Holdings (such documents including, but not limited to operating agreements or other corporate governance agreements, corporate bylaws, corporate resolutions, meeting minutes, and other documents

bearing on the control of these entities). Plaintiff should endeavor to produce these documents well in advance of the second day of the 30(b)(6) Shanus deposition.]

2. Defendant's request to compel Plaintiff's production of the Secured Note and Borrower Security Agreement incorporated by reference into the August 22, 2017 Patent Security Agreement with Omega Credit Opportunities, Loan Agreement and Security Agreement incorporated by reference into the May 16, 2019 Patent Security Agreement with BP Funding Trust, and Loan Agreement and Security Agreement incorporated by reference into the May 28, 2021 Patent Security Agreement with OT WSOU Terrier Holdings is DENIED.

3. Defendant's request to compel a second deposition of Plaintiff's 30(b)(6) witness, Mr. Stuart Shanus, for a total of 14 hours is GRANTED. The second deposition is not limited in scope.

4. Plaintiff's request to compel Defendant to respond to Interrogatories 24 through 30 to provide information regarding Defendant's source code is GRANTED-IN-PART and DENIED-IN-PART. Defendant shall supplement its responses to Plaintiff's Interrogatories 24 through 30 by January 13, 2023 by providing factual descriptions of the operation of source code and specific functionality referenced in these Interrogatories; Defendant need not supplement to the extent these Interrogatories call for patent claim interpretation or infringement analysis (e.g., comparing source code to patent claims) in its response.]

5. Plaintiff's request to compel Defendant to provide email discovery is GRANTED-IN-PART. Defendant is to use Plaintiff's proposed ESI terms ("Plaintiff's Original Terms")[1] on the accounts of Daniel Reed, Ray Zado, and Sam Stake to generate search count hit counts for Plaintiff's Original Terms and provide hit counts to Plaintiff by January 4, 2023. After provision

---

[1] Due to the potential confidential nature of the search strings, the Court will not reproduce them in this Order.

of the hit counts, the parties shall meet and confer regarding the hit counts, the extent to which further search term narrowing is warranted, and narrowing of the scope of documents that may need to be identified in a privilege log. If the parties are unable to reach an agreement, they shall request further assistance from the Court.

Signed this 18th day of January, 2023.

HON. DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE