## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC | ) | |
| | ) | PENDING BEFORE THE |
| Plaintiff, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TEXAS |
| | ) | |
| SALESFORCE, INC. | ) | C.A. Nos. 6:20-cv-1163 through |
| | ) | -1172 (ADA) |
| Defendant. | ) | |
| | ) | |
| | ) | |
| SALESFORCE, INC. | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:23-mc-00027-CFC |
| | ) | |
| WSOU HOLDINGS, LLC and WSOU | ) | **FILED UNDER SEAL** |
| CAPITAL PARTNERS, LLC | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

### WSOU HOLDINGS, LLC AND WSOU CAPTIAL PARTNERS, LLC'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER SALESFORCE'S MOTION TO COMPEL PURSUANT TO RULE 45(f)

Dated: February 22, 2023

OF COUNSEL:

Morgan E. Pietz (CA Bar #260629)*
Pietz & Shahriari, LLP
6700 S. Centinela Ave., Second Floor
Culver City, CA 90230

Sean J. Bellew (#4072)
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
Telephone: (302) 353-4951
sjbellew@bellewllc.com
*Attorneys for Subpoena Recipients
WSOU Holdings, LLC and WSOU
Capital Partners, LLC*

**CONFIDENTIAL – FILED UNDER SEAL**

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.     INTRODUCTION ..............................................................................1

II.    BACKGROUND ...............................................................................5

    (A)   Salesforce issues its third-party subpoenas six months after it first contemplates its supposedly case-dispositive license defense. .............5

    (B)   Salesforce and the Subpoenaed Parties confer about the subpoena, Salesforce first seeks relief in the wrong court, and then Salesforce finally moves to compel nearly a month after the fact discovery cutoff date. .......................................................................................7

III.   ARGUMENT AND AUTHORITIES ...........................................12

    (A)   Rule 45 provides only one proper venue for filing a motion to compel compliance with a subpoena in the first instance—the court where compliance is required—but allows for transfer with the consent of the commanded party. ........................................................12

    (B)   The other factors a court must consider—judicial economy, docket management, and the risk of inconsistent rulings—all favor transfer of Salesforce's motion to the Western District of Texas........................14

    (C)   Salesforce will not be prejudiced by transfer of the motion to the Western District and to the extent there has been any unreasonable delay in pursuing this discovery, it has been Salesforce's.................15

IV.   CONCLUSION...............................................................................17

**CONFIDENTIAL – FILED UNDER SEAL**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Cases</u>**

*Agincourt Gaming, LLC v. Zynga, Inc.*,
   2014 WL 4079555 (D. Nev. Aug. 15, 2014) ........................................................13

*N. Atl. Operating Co., Inc. v. Dunhuang Grp.*,
   2018 WL 3381300 (D. Del. July 11, 2018) ........................................................13

*Soto v. Castlerock Farming & Transp., Inc.*,
   282 F.R.D. 492 (E.D. Cal. 2012) ........................................................15

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
   228 F.R.D. 111 (D. Conn. 2005)........................................................12

**<u>Rules</u>**

Fed. R. Civ. P. (d)(2)(B)(i) ........................................................2

FED. R. CIV. P. 45(c)........................................................2

FED. R. CIV. P. 45(d)(1) ........................................................12

Fed. R. Civ. P. 45(d)(2)(B)(i) ........................................................12

Fed. R. Civ. P. 45(f) ........................................................ 1, 12, 16

FED. R. CIV. P. 45, advisory committee's notes........................................................14

ii

I.    **INTRODUCTION**

Non-parties WSOU Holdings, LLC and WSOU Capital Partners, LLC (the "Subpoenaed Parties") respectfully request that the Court transfer Salesforce, Inc.'s Motion to Compel Compliance with Subpoena *Duces Tecum* and *Ad Testificandum* to the Western District of Texas pursuant to its power to "transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." FED. R. CIV. P. 45(f). Here, the Subpoenaed Parties consent to the transfer of Salesforce's motion to the Western District of Texas. And the circumstances of the subpoena and the motion justify transfer as well: this motion is only one of three motions in three separate district courts seeking to compel four different non-parties to comply with burdensome and overbroad subpoenas[1]. Transfer of this motion to the Western District would promote judicial economy and reduce the risk of inconsistent rulings.

Further, in the underlying infringement actions in the Western District of Texas, the fact discovery cutoff elapsed on December 16, 2022. Salesforce has never moved to extend that deadline to allow the discovery requested by the instant

---

[1] Salesforce also filed similar motions against Orange Holdings, Inc. in the District of Nevada on January 13, 2023 (D. Nev. No. 3:23-cv-23-RCJ-CSD) and against OCO Capital Partners LP in the District of the District of Columbia on January 31, 2023 (D.D.C. No. 1:23-mc-00013-JDB).  All three motions involve largely identical subpoenas issued by Salesforce in the Underlying Cases to entities that do business with the plaintiff.

1

**CONFIDENTIAL – FILED UNDER SEAL**

subpoenas to proceed after the cutoff (and neither has any other party). So, if Salesforce's motions to compel are not denied outright (as they all should be, by the Western District of Texas), such that some kind of relief is afforded, then the requested further discovery would likely impact other scheduling order deadlines, including trial. Obviously, the Western District of Texas will be in a better position to manage discovery that might affect its scheduling order, and thus the expeditious management of its own docket.

Salesforce has indicated that it will oppose this motion to transfer. In so doing, Salesforce appears to be trying to blame the Subpoenaed Parties for Salesforce's own lack of diligence and obstinate conduct. Here is how Salesforce justifies its opposition,

> "Regarding the proposed motions to transfer, we [*i.e., counsel for Salesforce*] are unfortunately compelled to remind you that it was you that insisted that we bring these actions in the current locations. We would have been happy to work with you to schedule hearings before Judge Gilliland, but that was not what you wanted back then. As a result, Judge Gilliland ordered us to proceed as we are currently proceeding. To put it mildly, a third change of venue on this process is inefficient and wasteful. Therefore we oppose."

Declaration of Thomas P. Burke Jr. ("Burke Decl."), ¶ 11, Ex. I at 2.

First, it is not the Subpoenaed Parties or their counsel who "insisted" that Salesforce "bring these actions in the current locations." If anyone "insisted" on that, it was the Rules Committee and the Supreme Court, when they enacted the 2013 amendments to Rule 45. *See* FED. R. CIV. P. 45(c) and (d)(2)(B)(i) (motion to compel

2

**CONFIDENTIAL – FILED UNDER SEAL**

must be filed in the "district where compliance is required"). Or perhaps it was Judge Gilliland in the Western District of Texas, when he ruled at a December 21, 2022 hearing on various party discovery issues that issues related to WSOU Holdings, WSOU Capital Partners, and other third parties were not properly before him. *See* ECF No. 5 at 100 ("[S]ince you've got subpoenas to a third party, that seems more appropriate for a motion to compel wherever that needs to be appropriately filed . . . that way we can get the third party before whatever court that party needs to be before.").

Second, the assertion by counsel for Salesforce that "[w]e would have been happy to work with you to schedule hearings before Judge Gilliland" is plainly belied by the contemporaneous email record. Both during the period leading up to the close of fact discovery on December 16, 2022, and in the months since then, Salesforce has obstinately plowed ahead with its motions, while ignoring repeated requests by the Subpoenaed Parties to confer about where such motions should be heard. Counsel for the Subpoenaed Parties first tried to confer with Salesforce about where it intended to have a dispute heard related to the subpoenas on December 9, 2022. ECF No. 5 at 532 ("Which court did you have in mind, by the way?") Salesforce ignored that attempt to discuss that issue, and instead went ahead and served the Subpoenaed Parties with a "dispute chart" later that same night, initiating a discovery dispute before Judge Gilliland. *Id.* at 529.

3

In so doing, Salesforce was not only choosing the (plainly incorrect) venue, it was also demanding that the Subpoenaed Parties participate in an abbreviated procedure before Judge Gilliland, in which they would have only two days to respond to Salesforce's half of a dispute chart—even though the dispute chart was partially redacted, Salesforce did not explain the redacted portions to the Subpoenaed Parties, and Salesforce would not permit counsel for the Subpoenaed Parties to explain the details of Salesforce's theories to their clients. After Judge Gilliland unsurprisingly ruled at the hearing on December 21 that third-party subpoena issues were not properly before him, counsel for the Subpoenaed Parties again tried to confer about the broader issues, and about having properly filed motions to compel heard in the Western District of Texas. ECF No. 5 at 520 ("[A]fter my clients and I have reviewed your motions, we could also discuss whether it might make sense to agree to transfer the motions back to the issuing court."). Again, Salesforce plowed ahead and filed and served its papers, again without bothering to engage in the discussion about where the matter ought to be heard. *Id.*

Moreover, Salesforce should not be heard to complain that this transfer motion is a delay tactic by the Subpoenaed Parties: to the extent there has been any delay, the fault is Salesforce's own. It has known about its license defense since April 2022—at least six months before it subpoenaed WSOU Holdings (and seven months before it subpoenaed WSOU Capital Partners). Instead of diligently pursuing

4

discovery about the license defense during those months, Salesforce waited until shortly before the close of fact discovery to start burdening non-parties with its subpoenas, leaving it no time to move to compel before the fact discovery cutoff date. Indeed, fact discovery in the underlying litigations closed on December 16—over two months ago. Further, by opposing transfer, Salesforce is likely ensuring that there will need to be as many as four hearings in four different courts before all issues are resolved, instead of just one further hearing in the Western District of Texas, as the Subpoenaed Parties and the other third parties are proposing should be the case.

Salesforce is a sophisticated company represented by able counsel such that it is presumably thoroughly familiar with Rule 45. The best explanation for Salesforce's eleventh-hour submission of a "dispute chart" to a court that Salesforce knew did not have jurisdiction over the dispute, is that this maneuver was designed by Salesforce to give it cover, when it came time to insist—exactly as it is doing now—that it wants the disputes related to its expansive and plainly overbroad third-party subpoenas to be heard anywhere but in the Western District of Texas.

## II.  **BACKGROUND**

### (A)    Salesforce issues its third-party subpoenas six months after it first contemplates its supposedly case-dispositive license defense.

Salesforce's motion seeks compliance with subpoenas issued by the Western District of Texas in ten patent infringement lawsuits captioned *WSOU Investments,*

**CONFIDENTIAL – FILED UNDER SEAL**

*LLC v. Salesforce, Inc.*, Case Nos. 6:20-cv-1163-ADA to '1172-ADA, each of which is pending before Judge Albright. The Subpoenaed Parties are not parties to the underlying Texas litigations.

In the underlying Texas litigations, Salesforce has advanced a license defense, which it has described at pages 3 to 7 of its Motion to Compel (ECF No. 3). Salesforce seeks to support this license defense by digging into the ownership of various entities associated with WSOU Investments. In addition to the Subpoenaed Parties, Salesforce has also subpoenaed Orange Holdings, Inc. and OCO Capital Partners LP—*see* ECF No. 4, ¶ 5; *see also* Declaration of Thomas P. Burke Jr. ("Burke Decl."), Exs. A and B—and now seeks to compel compliance with these subpoenas in Delaware (for WSOU Holdings and WSOU Capital Partners) and the District of Columbia (for OCO Capital Partners). Burke Decl., Exs. C and D.  Apart from being directed to different entities, the subpoenas at issue to these four non-parties are nearly identical.

Notably, Salesforce has understood the broad strokes of its license defense since at least as early as April 2022. *See* ECF No. 4, ¶ 4 ("During the April 8, 2022 meet-and-confer, Salesforce explained to the Non-Parties in detail the basis of its license defense, including going through the exact provisions of the written settlement and patent license . . . and how they applied to give Salesforce a license to the asserted patents in the WSOU Patent Litigation. Salesforce also explained how

6

**CONFIDENTIAL – FILED UNDER SEAL**

the discovery sought by its subpoenas to the Non-Parties were relevant to its license defense."). Yet it did not issue its subpoena to WSOU Holdings until October 6, 2022 (*see* ECF No. 5 at 360), or its subpoena to WSOU Capital Partners until November 22, 2022. *Id.* at 379. Counsel for the Subpoenaed Parties served written objections to the subpoenas on October 20 and December 7, respectively. *Id.* at 453, 513.

**(B)** **Salesforce and the Subpoenaed Parties confer about the subpoena, Salesforce first seeks relief in the wrong court, and then Salesforce finally moves to compel nearly a month after the fact discovery cutoff date.**

On Tuesday **December 6, 2022**, counsel for the Subpoenaed Parties emailed counsel for Salesforce and requested additional information about Salesforce's license defense and raised other issues Burke Decl., Ex. H at 25.

On Friday **December 9, 2022**, after receiving no response all week, counsel for the Subpoenaed Parties emailed counsel for Salesforce as follows,

> Since you emailed me on Monday evening, I haven't heard from you or anyone else at your firm. Nobody has responded to my email from Tuesday morning asking you to provide me with information I can relay to my clients explaining why they should be burdened with your outstanding third party subpoenas.
>
> On Wednesday, our office served timely objections for WSOU Capital Partners, which we are also now representing. Those objections are similar to the ones we served for our other three clients discussed below, because the subpoenas request similar information. And they all suffer from the same relevancy and burden issues discussed in the email chain below.

I understand, based on what you told me previously, that your discovery cutoff is a week from today.

Can we consider these matters resolved?

Or, if your plan is to try and turn your own lack of diligence into my clients' and the courts' emergency over the course of the next week, then you had better please advise what you have in mind. My availability for next week is filling up fast.

*Id.* at 24.

On Friday evening **December 9, 2022**, Salesforce finally responded with a flurry of emails. In the first one, at 4:02 p.m., counsel for Salesforce indicated that disputes related to the third-party subpoenas were "by no means resolved. . . Please be advised that we are submitting a dispute chart on this issue later today." *Id.* at 23. Counsel for the Subpoenaed Parties responded promptly, at 4:05, asking "***Which court did you have in mind***"? *Id.* (emphasis added). At 6:20 p.m. Salesforce's counsel sent a lengthy email that notably both refused to reduce the details of the license defense to writing and refused to identify the court in which Salesforce planned to submit a dispute related to the subpoenas. *Id.* at 21–22. At 7:04 p.m., counsel for Salesforce served counsel for the Subpoenaed Parties with a "discovery dispute chart and exhibits" for decision by the Western District of Texas, and requested that "[p]ursuant to the procedures set forth in the OGP, please provide the responding parties' position by Wednesday, December 14th." Burke Decl., Ex. H at 20.

CONFIDENTIAL – FILED UNDER SEAL

In short, during the week before fact discovery closed, counsel for the Subpoenaed Parties was repeatedly following up trying to get clarity on Salesforce's arguments and intentions with respect to discovery dispute. Between Monday night and Friday evening of that week, Salesforce was radio silent; it did provide any information, answer any questions, or say anything at all. Then, Friday evening, after being asked where they intended to seek relief, counsel for Salesforce ignored that question and instead served a dispute chart later that night initiating an expedited discovery dispute resolution procedure before Judge Gilliland and insisted that the Subpoenaed Parties should respond within two business days, ahead of a hearing that their counsel could not attend. *Id.* at 52–54.

Further, it would have been nearly impossible for the Subpoenaed Parties to respond on the merits to Salesforce's attempt an expedited resolution, because Salesforce's explanation of its license defense (and 20 percent of its brief) was redacted and Salesforce refused to share the unredacted brief with counsel for the Subpoenaed Parties, and refused to allow counsel to pass along details of the license defense to the third-party client representatives. *Id.* at 19 (pressing Salesforce to share unredacted dispute chart); *id*. at 18 (Salesforce refusing to share the redacted information from its dispute chart with counsel for the Subpoenaed Parties).

Notwithstanding the fire-drill timing, the Texas court's plain lack of jurisdiction, and that Salesforce was seeking an order compelling the Subpoenaed

**CONFIDENTIAL – FILED UNDER SEAL**

Parties to take action by making arguments that were redacted and that Salesforce refused to share with the Subpoenaed Parties or their counsel, the Subpoenaed Parties did nevertheless submit their half of a dispute chart on December 14, as repeatedly demanded by Salesforce. In it, the Subpoenaed Parties argued as follows:

> Orange, Holdings, Capital Partners, and OCO (the "Non-Parties") are not parties to WSOU Investments' patent infringement litigation against Salesforce. Accordingly, the Non-Parties are not subject to the OGP's expedited discovery procedures. Rather, the subpoenas that Salesforce served on the Non-Parties are governed by Fed. R. Civ. P. 45. Which provides that the appropriate court in which Salesforce should have moved to compel was, for each subpoena, the "district where compliance is required." Fed. R. Civ. P. 45(c) and (d)(2)(B)(i).
>
> …
>
> Accordingly, to enforce the subpoenas to the Non-Parties, Salesforce was required to file motions to compel in federal courts in Nevada, New York [*sic*][2], and Delaware. Fed. R. Civ. P. 45(d)(2)(B)(i).
>
> Transfer of subpoena-related motions is possible via Rule 45(f), but only "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).
>
> ***At this time, Salesforce has not asked for, and none of the Non-Parties have provided, consent to a Rule 45(f) transfer***. Further, whether there are "exceptional circumstances" justifying transfer of a motion to compel from the court where compliance is required, back to the issuing court, is a decision that has to be made by the court where compliance is required. *Id*.
>
> In short, any dispute about the subpoenas to the Non-Parties is not properly before this Court for resolution ***at this time***.

---

[2] Although OCO is a Delaware entity with a principal place of business in New York, the subpoena inexplicably demands compliance in Washington D.C., which is where Salesforce moved to compel on January 31, 2023.

10

**CONFIDENTIAL – FILED UNDER SEAL**

Burke Decl., Ex. H at 52–53 (emphasis added).

Fact discovery closed on December 16, 2022. *Id.*, Ex. E. Salesforce finally got around to submitting its dispute chart to Judge Gilliland on December 19, 2022. *Id.*, Ex. H at 13.

Judge Gilliland held a hearing on December 21, 2022, during which the third-party subpoenas—and other issues—were discussed. *See* ECF No. 5 at 93–101. During the hearing, the court indicated to Salesforce that "since you've got subpoenas to a third party, that seems more appropriate for a motion to compel wherever that needs to be appropriately filed … that way we can get the third party before whatever court that party needs to be before." *Id.* at 100.

After the hearing, on December 27, 2022, counsel for the Subpoenaed Parties suggested that Salesforce prepare its motions to compel but that the parties confer further before Salesforce actually file the motions. ECF No. 5 at 520. At this time, Subpoenaed Parties once again raised the issue of transfer: "***after my clients and I have reviewed your motions, we could also discuss whether it might make sense to agree to transfer the motions back to the issuing court.***" *Id.* (emphasis added).

Once again, the Subpoenaed Parties' attempt to confer about venue was ignored, and Salesforce filed its motion to compel on January 20, 2023 (over a month after the fact discovery cutoff date in the underlying Texas actions).

## III.  ARGUMENT AND AUTHORITIES

**(A)   Rule 45 provides only one proper venue for filing a motion to compel compliance with a subpoena in the first instance—the court where compliance is required—but allows for transfer with the consent of the commanded party.**

Federal Rule of Civil Procedure 45 governs the issuance and enforcement of third-party subpoenas. Rule 45(d)(1) requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1); *see also Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) ("An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'").

Rule 45(d)(2)(B)(i) provides for only one proper venue when filing a motion to compel: "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Rule 45(f), however, provides that—after a motion to compel is filed in the court where compliance is required—the court may "transfer

**CONFIDENTIAL – FILED UNDER SEAL**

a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

It is only absent consent to transfer that "the 'proponent of transfer bears the burden of showing that [exceptional] circumstances are present.'" *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *6 (D. Nev. Aug. 15, 2014) (quoting FED. R. CIV. P. 45, advisory committee's notes); *see also N. Atl. Operating Co., Inc. v. Dunhuang Grp.*, No. CV 18-MC-154-LPS, 2018 WL 3381300, at *1 (D. Del. July 11, 2018) ("Federal Rule of Civil Procedure 45(f) authorizes the transfer of subpoena-related motions from the court where production is required to the court where the underlying action is pending … if the 'person subject to the subpoena consents or if the court finds exceptional circumstances.'").

Nevertheless, when considering whether such circumstances do exist, "the Court must consider the burden on the party responding to the subpoena in the event of a transfer. On the other hand, the Court must consider factors such as judicial economy, docket management, and the risk of inconsistent rulings." *Agincourt Gaming*, 2014 WL 4079555, at *6.

Here, the Subpoenaed Parties consent to the transfer of Salesforce's motion to compel to the Western District of Texas. The Subpoenaed Parties' consent alone should determine the issue, as "[t]he prime concern should be avoiding burdens on

**CONFIDENTIAL – FILED UNDER SEAL**

local nonparties subject to subpoenas … ." FED. R. CIV. P. 45, advisory committee's notes.

**(B)   The other factors a court must consider—judicial economy, docket management, and the risk of inconsistent rulings—all favor transfer of Salesforce's motion to the Western District of Texas.**

While it is unnecessary to show exceptional circumstances here, the other factors all favor transfer. Regarding judicial economy, it would certainly be more efficient to have one judge in one district court decide Salesforce's three motions to compel—presumably with one hearing and one order—rather than three different judges in three different jurisdictions—Nevada, Delaware, and the District of Columbia.

Docket management also favors transfer. As mentioned above, the underlying Texas litigations are now nearly two months past the fact discovery cutoff date of December 16, 2022. *See* Burke Decl., Ex. E. To the extent that the outcome of Salesforce's motions to compel will require amendment of or modification to the scheduling order to allow for discovery after the cutoff date, the judges of the Western District are best equipped to handle such changes. And the judges in the underlying litigations are in the best position to determine whether Salesforce's motion to compel is timely, given that Salesforce has understood its license defense, and the need for discovery from third parties about that defense, since as early as April 2022. *See* ECF No. 3, ¶ 4.

**CONFIDENTIAL – FILED UNDER SEAL**

And the risk of inconsistent rulings is minimized by transfer. If a transfer does not occur, then there will be at least three judges in three districts deciding similar motions to compel. This could result in conflicting rulings among the motions to compel and also with the court's decision about the ability of Salesforce to obtain similar information from the plaintiff in the underlying litigations. Transferring this motion back to the Western District would ensure that the motions to compel are decided consistently with each other and with Salesforce's obligation to obtain the information it seeks from the parties to the underlying litigations first. *See Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("When an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.").

**(C)    Salesforce will not be prejudiced by transfer of the motion to the Western District and to the extent there has been any unreasonable delay in pursuing this discovery, it has been Salesforce's.**

Finally, Salesforce will not be prejudiced by transfer. Salesforce may claim that a transfer will result in prejudicial delay, but such a claim is both speculative and unlikely. Simply transferring the fully briefed motions to compel back to the Western District would likely result in faster orders—after all, the parties would need to wait for only one court to issue its orders, rather than three courts across the country. And to the extent that Salesforce argues that the Subpoenaed Parties should have consented to its filing in the Western District in the first instance, that argument

15

should be rejected. Rule 45 does not provide a mechanism by which the subpoenaed party can consent to the filing of a motion to compel anywhere except the district court where compliance is required. Rather, it provides for the subpoenaed party to consent to transfer of the motion back to the issuing court after it is filed. FED. R. CIV. P. 45(f). That is what the Subpoenaed Parties have done here: simply followed the letter of the law.

Further, if Salesforce argues in opposition that this motion to transfer is a delay tactic, that argument should be treated with extreme skepticism. Again, Salesforce has known about its license defense since April 2022. Instead of diligently pursuing discovery about this defense, Salesforce waited until October and November 2022 to issue its subpoenas. The Subpoenaed Parties both served timely written objections by December 7, 2022.  Salesforce then took over six weeks to file its motion to compel here in the District of Delaware. This lag was not the Subpoenaed Parties' fault. A review of the correspondence between counsel for Salesforce and the Subpoenaed Parties shows counsel for the Subpoenaed Parties pushing repeatedly for responses from Salesforce's counsel after multiple lengthy delays. *See* ECF No. 5 at 533 (on Friday, December 9: "Since you emailed me on Monday evening, I haven't heard from you or anyone else at your firm."), at 524 (on Friday, December 16: "Since we sent you our half of a dispute chart on Wednesday,

**CONFIDENTIAL – FILED UNDER SEAL**

as you repeatedly insisted we do, I have not heard anything further from Salesforce related to the four non-party subpoenas at issue.").

Salesforce has never—until now—acted with any urgency toward obtaining the information that it seeks in its subpoena to the Subpoenaed Parties. It should not be heard to argue that a transfer of its motion to the Western District of Texas will cause unreasonable delay.

## IV.  CONCLUSION

For the foregoing reasons, the above captioned miscellaneous action should be transferred to the Western District of Texas.

CONFIDENTIAL – FILED UNDER SEAL

Respectfully Submitted,


Dated: February 22, 2023

OF COUNSEL:

Morgan E. Pietz (CA Bar #260629)*
Pietz & Shahriari, LLP
6700 S. Centinela Ave., Second Floor
Culver City, CA 90230
*Pro Hac Vice application forthcoming

/s/ Sean Bellew
Sean J. Bellew (#4072)
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
Telephone: (302) 353-4951
sjbellew@bellewllc.com

Attorneys for Subpoena Recipients
WSOU Holdings, LLC and WSOU
Capital Partners, LLC

CONFIDENTIAL – FILED UNDER SEAL

## CERTIFICATION OF COMPLIANCE WITH STANDING ORDER REGARDING BRIEFING IN ALL CASES

Counsel hereby certifies that this brief is in compliance with the type, font, and word limitations set forth in Court's Standing Order Regarding Briefing in All Cases (ECF No. 11 in this case; originally dated November 10, 2022). This brief is in 14-point Times New Roman typeface. As counted by Microsoft Word, the total word count for this brief is 4,166.

Dated: February 22, 2023

*/s/ Sean Bellew*
Sean J. Bellew (#4072)
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
Telephone: (302) 353-4951
sjbellew@bellewllc.com

OF COUNSEL:

Morgan E. Pietz (CA Bar #260629)*
Pietz & Shahriari, LLP
6700 S. Centinela Ave., Second Floor
Culver City, CA 90230
*Pro Hac Vice application forthcoming*

*Attorneys for Subpoena Recipients*
*WSOU Holdings, LLC and WSOU*
*Capital Partners, LLC*